JEFFREY R. MAKIN (SBN 252426)
jeffrey.makin@arentfox.com
ALEXANDER S. BIRKHOLD (SBN 304334)
alexander.birkhold@arentfox.com
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, California 90013-1065
Telephone: 213.629.7400
Facsimile:  213.629.7401

Attorneys for Defendant
OJAI VALLEY COMMUNITY HOSPITAL, a
d/b/a of COMMUNITY MEMORIAL HEALTH
SYSTEM, a California Nonprofit Public Benefit
Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. FRANK ADOMITIS, an individual,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>OJAI VALLEY COMMUNITY HOSPITAL; DOES 1 through 20, inclusive,<br><br>　　　　　　Defendant. | Case No.  CV17-06972 MWF (AGRx)<br><br>**DEFENDANT OJAI VALLEY COMMUNITY HOSPITAL'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Request for Judicial Notice and [Proposed] Order filed concurrently herewith]<br><br><br>Judge:　　Hon. Michael W. Fitzgerald<br>Date:　　 June 4, 2018<br>Time:　　 10:00 a.m.<br>Crtrm:　　5A |

1   **NOTICE OF MOTION AND MOTION TO DISMISS**

2   **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

3       PLEASE TAKE NOTICE that on Monday, June 4, 2018, at 10:00 a.m., or as

4   soon thereafter as counsel may be heard, before the Honorable Michael W.

5   Fitzgerald, in Courtroom 5A located at the First Street Courthouse at 350 West First

6   Street, Los Angeles, California 90012, Defendant Ojai Valley Community Hospital

7   ("OVCH") will and hereby does move to dismiss Counts I through IV of Relator

8   Frank Adomitis's Complaint for Violation of the Federal False Claims Act (the

9   "FCA").

10       This motion is made pursuant to Federal Rules of Civil Procedure 9(b),

11   12(b)(1), and 12(b)(6), and is based on the following grounds:

12       1.  OVCH was merged into Community Memorial Health System in 2006,

13           and OVCH therefore is not an operational entity and is not a proper

14           defendant;

15       2.  The Court lacks subject matter jurisdiction because Relator's claims are

16           subject to the FCA's public disclosure bar, and Relator is not an original

17           source;

18       3.  Relator failed to state any claim upon which relief can be granted;

19       4.  Relator lacks standing to bring non-FCA causes of action because the

20           government has not intervened; and

21       5.  Relator's claims sound in fraud and are therefore subject to the heightened

22           pleading requirements of Rule 9 of the Federal Rules of Civil Procedure.

23           However, Relator failed to plead his claims with particularity, as required.

24       This motion is made following the conference of counsel pursuant to L.R. 7-

25   3 which took place on April 10, 2018.

26       OVCH's motion to dismiss is based upon this notice of motion and motion,

27   the attached memorandum of points and authorities, the pleadings and other records

28   on file in this action, the concurrently filed request for judicial notice, and on such

1  further evidence and arguments as the Court may consider at or before the hearing

2  on this motion.

3  Dated:  April 19, 2018                    **ARENT FOX LLP**

4

5                                    By: /s/ Jeffrey R. Makin

6                                        JEFFREY R. MAKIN
                                         ALEXANDER S. BIRKHOLD

7                                        Attorneys for Defendant
                                         OJAI VALLEY COMMUNITY

8                                        HOSPITAL, a d/b/a of COMMUNITY
                                         MEMORIAL HEALTH SYSTEM, a

9                                        California Nonprofit Public Benefit
                                         Corporation

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................... 8

II.     BACKGROUND AND STATEMENT OF FACTS ..................................... 9

    A.    Procedural Background ................................................................... 9

    B.    Relator's Allegations About the Medicare Reimbursement Program and the Critical Access Hospital Framework ....................... 9

    C.    Department of Health and Human Services' 2013 Report: Most Critical Access Hospitals Do Not Meet the Location Requirements ................................................................................. 10

    D.    Procedures for CAH Approval and Recertification ........................... 11

    E.    Relator's Allegations Regarding Ojai Valley Community Hospital ...................................................................................... 13

    F.    Relator's Nearly Identical Complaint Against San Bernardino Mountains Community Hospital District ......................................... 14

III.    LEGAL STANDARD ............................................................................. 14

    A.    Rule 12(b)(1): Lack of Subject Matter Jurisdiction .......................... 14

    B.    Rule (12)(b)(6): Failure to State a Claim ........................................ 15

IV.     ARGUMENT ......................................................................................... 16

    A.    OVCH Was Merged Out and Is Not an Operational Entity ............... 16

    B.    Relator's Allegations Are Subject to the Public Disclosure Bar ........ 16

    C.    Relator Is Not an Original Source ................................................... 18

    D.    Relator Failed to Plead Any Claims ................................................ 18

    E.    Relator Failed to Plead Any of His Claims With Particularity ........... 22

    F.    Relator Should Not Be Given Leave to Amend ................................ 23

V.      CONCLUSION ...................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*U.S. ex rel Adomitis v. San Bernardino Mountains Community*
*Hospital District,*
  Case No. CV17-00002 (C.D. Cal.)......................................................... 14

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937 (2009) ........................................................................... 15

*Balistreri v. Pacifica Police Dep't.,*
  901 F.2d 696, 699 (9th Cir. 1990).......................................................... 15

*United States ex rel. Barrett v. Columbia/HCA Healthcare Corp.,*
  251 F. Supp. 2d 28 (D.D.C. 2003) .......................................................... 22

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................... 15

*Bly–Magee v. California,*
  236 F.3d 1014, 1018 (9th Cir. 2001)....................................................... 15

*United States ex rel. Brooks v. Trillium Cmty. Health Plan, Inc.,*
  No. 6:14-CV-01424-AA, 2016 WL 1725300 (D. Or. Apr. 29, 2016) ............... 19

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.,*
  637 F.3d 1047 (9th Cir. 2011)........................................................... 15, 22

*United States ex rel. Campie v. Gilead Scis., Inc.,*
  862 F.3d 890 (9th Cir. 2017)............................................................. 18, 19

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
  598 F.3d 1115 (9th Cir. 2010)................................................................. 14

*United States ex rel. Hendow v. Univ. of Phoenix,*
  461 F.3d 1166 (9th Cir. 2006)................................................................. 20

*Kendall v. Visa U.S.A., Inc.,*
  518 F.3d 1042 (9th Cir. 2008)................................................................. 23

*Kokkonen v. Guardian Life Ins. Co.,*
  511 U.S. 375, 377 (1994) ........................................................................ 14

*Malhotra v. Steinberg*,
   770 F.3d 853 (9th Cir. 2014) ................................................................. 16, 17

*U.S. ex rel. Mateski v. Raytheon Co.*,
   816 F.3d 565 (9th Cir. 2016) ................................................................. 16, 17

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008) ................................................................... 15

*United States ex rel. Rockefeller v. Westinghouse Elec. Co.*,
   274 F. Supp. 2d 10 (D.D.C. 2003) ............................................................ 22

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ................................................................... 15

*U.S. v. Corinthian Colleges*,
   655 F.3d 984 (9th Cir. 2011) ..................................................................... 18

*United States v. Celgene Corp.*,
   226 F. Supp. 3d 1032 (C.D. Cal. 2016) .................................................... 20

*United States v. Scan Health Plan*,
   Case No. CV-09-5013, 2017 WL 4564722 (C.D. Cal. Oct. 5, 2017)
   (J. Walter) ................................................................................................. 21

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
   136 S. Ct. 1989 (2016) ....................................................................... 19, 20

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................... 22

**Statutes**

31 U.S.C. § 3729 ....................................................................... 16, 19, 20, 21

31 U.S.C. § 3730 ............................................................................. 16, 17, 18

**Other Authorities**

Federal Rule of Civil Procedure 4 ..................................................................9

Federal Rule of Civil Procedure Rule 9.................................................9, 15, 19, 22

Federal Rule of Civil Procedure Rule 12.......................................................2, 14, 15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Relator Frank Adomitis's Complaint for Violation of the Federal False Claims Act ("FCA") against Ojai Valley Community Hospital ("OVCH") should be dismissed for lack of subject matter jurisdiction, failure to state a claim, and failure to plead fraud with particularity. Relator alleges that OVCH does not meet the requirements to qualify for Critical Access Hospital ("CAH") certification. From that premise, Relator incorrectly concludes that OVCH must have made unidentified false representations and submitted unidentified false claims to and/or was overpaid by the government in violation of the FCA. But Relator's general, conclusory allegations do not withstand scrutiny, and his Complaint should be dismissed without leave to amend.

First, the FCA's public disclosure bar deprives this Court of subject matter jurisdiction. Relator's allegations were publicly disclosed years before he filed his Complaint, and Relator is not an original source. Relator contends that OVCH does not meet the location and distance requirements to qualify as a CAH. However, in 2013—four years before Relator filed his Complaint—the U.S. Department of Health and Human Services issued a report explaining that the majority of CAHs did not meet the location and distance requirements to be a CAH. Relator's Complaint is based on the framework of that 2013 report and otherwise publicly available information. Moreover, Relator is not the original source of any of the information. Accordingly, the public disclosure bar applies and deprives this Court of subject matter jurisdiction.

Second, Relator failed to allege the required elements to state a claim upon which relief can be granted under the FCA. He failed to identify any false statements or fraudulent conduct. Relator also failed to allege the required scienter, and he failed to allege materiality.

Third, Relator further failed to allege his claims with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure. Relator merely makes general, unspecified, conclusory allegations. Such allegations are insufficient to state any claim based on allegations of fraud, including claims under the FCA.

Finally, Relator's allegations against OVCH are nearly identical to allegations that he leveled against San Bernardino Mountains Community Hospital District just ninth months before filing the present Complaint. Those claims were dismissed. Relator's claims against OVCH should similarly be dismissed.

## II.   BACKGROUND AND STATEMENT OF FACTS

### A.   Procedural Background

Relator filed his Complaint on September 21, 2017, and the government quickly declined to intervene. *See* Dkt. No. 5. Subsequently, on December 19, 2017, the Court issued an order unsealing the case and ordering the Relator to serve the Complaint on OVCH. *See* Dkt. No. 6. Under Federal Rule of Civil Procedure 4(m), Relator then had 90 days—i.e., until March 19, 2018—to effect service. But Relator did not request that the clerk issue a summons until March 20, 2018. Relator then served OVCH on March 29, 2018.

### B.   Relator's Allegations About the Medicare Reimbursement Program and the Critical Access Hospital Framework[1]

Relator's core allegation is that OVCH should not have been certified as a CAH under the CAH framework. *See* Dkt. No. 1, Compl. ¶¶ 13-24. The U.S. Department of Health and Human Services, through the Centers for Medicare and Medicaid Services ("CMS"), administers the Medicare program, including the CAH framework. *Id.* ¶ 13. In 1997, the Balanced Budget Act created a CAH "certification to ensure that hospital care is accessible to beneficiaries in rural

---

[1] For purposes of its Motion to Dismiss only, and within the confines of the legal standard for a motion to dismiss, OVCH recounts—*but does not admit that they are accurate or concede to*—Relator's allegations.

communities." *Id.* ¶ 14. "CAHs are reimbursed differently by Medicare than other acute care hospitals. CAHs receive federal reimbursement incentives designed to attract hospital providers to communities that would otherwise have difficulty receiving hospital care." *Id.* ¶ 15.

Relator alleges that "[h]ospitals must meet specific requirements in order to qualify for the CAH certification and receive the favorable Medicare reimbursements." *Id.* ¶ 17. According to Relator, two of the requirements that CAHs must meet are location-related. CAHs must be both (1) a minimum distance from other hospitals and (2) in a rural area or in an area that is treated as rural. *Id.* ¶¶ 18-20. Relator contends that hospitals can meet the minimum distance requirement "by being located more than a 35-mile drive from a hospital or another CAH or … by being located more than a 15-mile drive from a hospital or another CAH in areas of mountainous terrain or areas where only secondary roads are available." *Id.* ¶ 19. Relator further alleges that CAHs must meet additional requirements, including, for example, that "CAHs cannot have more than 25 beds that are used for acute care or 'swing-bed' patients." *Id.* ¶ 21.

C.     **Department of Health and Human Services' 2013 Report: Most Critical Access Hospitals Do Not Meet the Location Requirements**

Because of a U.S. Department of Health and Human Services' public August 2013 report, it is well known that the majority of CAHs did not meet the alleged location requirements that Relator addresses in his Complaint. In August 2013, the Department of Health and Human Services, Office of Inspector General issued a report that most CAHs do not meet the location requirements. *See* Request for Judicial Notice ("Req. Jud. Not."), Ex. A. The report found: "Nearly two-thirds of CAHs would not meet the location requirements …. The vast majority of these CAHs would not meet the distance requirement." *Id.* at 12.

Based on its findings, the report recommended that "CMS should ensure that the only CAHs to remain certified would be those that serve beneficiaries who

1  would otherwise be unable to reasonably access hospital services." *Id.* at

2  "Executive Summary" (second page). In other words, as of August 2013, it was

3  public knowledge that the majority of CAHs did not meet the location requirements

4  outlined above, but the Department of Health and Human Services recognized that

5  CMS may still want to certify a hospital as a CAH even if it did not meet the

6  location requirements.

7       **D.**    **Procedures for CAH Approval and Recertification**

8         Hospitals like OVCH do not determine whether they meet the

9  requirements—including the location and distance requirements—to be a CAH.

10  Instead, there is a thorough application, survey, and approval process for a hospital

11  to become a CAH. CMS's regional offices, working with state agencies, determine

12  whether hospitals meet the requirements. "A prospective CAH must be surveyed by

13  the SA [state agency] and be in compliance with the CoPs [conditions of

14  participation] for CAHS at 42 CFR Part 485 subpart F, *before it can be approved*

15  *for participation in Medicare as a CAH provider.*" Req. Jud. Not., Ex. B § 2256

16  (RO Procedures for CAH Approval) (emphasis added).

17         CMS's State Operations Manual also provides specific procedures and

18  guidance regarding the regional office's verification of the location and distance

19  requirements *before* approving a hospital as a CAH:

20        A hospital applying for CAH certification should **not** be

21        surveyed until after the RO [regional office] determined

22        that the applicant is compliant with the CAH location and

23        distance requirements. If the survey is conducted prior to

24        the RO making a determination regarding the applicant's

25        compliance with the location and distance requirements,

26        and the RO finds that the applicant is noncompliant, the

27        application must be denied.

28  *Id.* § 2256A (Note to Verification Criteria) (emphasis in original).

1    Only after a thorough evaluation of a hospital—and only if it is found to
2    comply with the conditions of participation, including the location and distance
3    requirements—is a hospital notified that it has been approved as a CAH. The State
4    Operations Manual explains:

5              When the facility is found to be in full compliance with
6              the CoPs in 42 CFR Part 485, Subpart F, or has submitted
7              an acceptable Plan of Correction, the RO notifies the
8              facility in writing by sending letter … stating the facility
9              has been approved for participation.... Do not issue the
10             letter until the facility is in compliance with all the CoPs.

11   *Id.* § 2256B (Notification).

12   Further, there are specific requirements for recertifying a hospital as a CAH,
13   which include the regional office evaluating and verifying the CAH's compliance
14   with the location and distance requirements. A February 12, 2016, memorandum
15   from CMS explains that regional offices determine whether the CAH meets the
16   location and distance requirements:

17             Annually, the RO must request from each State
18             Agency (SA) a list of all CAHs expected to undergo a
19             recertification survey over the next 12 months…. Prior to
20             the date of an SA or Accrediting Organization (AO) CAH
21             recertification survey, the RO must determine whether the
22             CAH meets the status and location requirements.
23             Assessing the location requirements must include
24             evaluating the distance of any acute care facilities from
25             that of the CAH…. The RO must complete a CAH
26             Recertification Checklist: Rural and Distance or
27             Necessary Provider Verification (copy attached) for
28             evaluating, determining, and documenting compliance

1    with the CAH location-related Conditions of Participation
2    (CoPs)….
3          Once the RO has made the determination that a
4    particular CAH is in current compliance with the rural
5    status and distance requirements, it must contact the
6    SA/AO to advise them that a recertification or
7    reaccreditation survey may be conducted....
8    Req. Jud. Not., Ex. C at 2.

9    **E.    Relator's Allegations Regarding Ojai Valley Community Hospital**

10   Against this backdrop, Relater alleges that in February 2014—at least five
11   months after the August 2013 public report that the majority of CAHs did not meet
12   the location and distance requirements—OVCH was certified as a CAH. Dkt. No.
13   1, Compl. ¶ 24. And OVCH allegedly began holding "itself out to be a CAH
14   serving a rural area in Ojai Valley …." *Id.*

15   Because Relator believes that OVCH should not have been certified as a
16   CAH, Relator summarily concludes that OVCH must have committed fraud and
17   engaged in fraudulent practices in violation of the FCA. *Id.* ¶¶ 24-39. However,
18   Relator failed to allege anything about the application, survey, and approval process
19   that OVCH completed to become a CAH. Relator does not allege what OVCH
20   disclosed, the representations that it made, or the process that it went through before
21   it was approved as a CAH. *See generally id.* Relator also failed to allege who made
22   any allegedly fraudulent representations or when any allegedly fraudulent
23   representations were made. *Id.*

24   Without specificity, Relator generally alleges that OVCH is not designated as
25   a "necessary provider" CAH, "does not meet the distance requirements for CAH
26   certification," and has too many beds to be a CAH. *Id.* ¶¶ 24-28. Relator then
27   generally claims that some unnamed person or persons at OVCH filed allegedly
28   false cost reports and signed standard CMS certification and compliance forms with

unidentified false, material representations because OVCH allegedly did not meet

the distance requirements to be certified as a CAH. *Id.* ¶¶ 29-39. According to

Relator, OVCH thereby "substantially overcharged, or caused others to overcharge,

the Government for inpatient and outpatient services provided to Medicare

beneficiaries. As a result of this misrepresentation, the Government overpaid for

such services." *Id.* ¶ 37. Relator thus contends that OVCH not only violated the

FCA, but also was unjustly enriched. *Id.* ¶¶ 40-58.

### F.     Relator's Nearly Identical Complaint Against San Bernardino Mountains Community Hospital District

Relator's allegations and Complaint against OVCH are nearly identical to

another complaint that he filed against San Bernardino Mountains Community

Hospital District on January 3, 2017. *See generally U.S. ex rel Adomitis v. San

Bernardino Mountains Community Hospital District*, Case No. CV17-00002 (C.D.

Cal.) (pending before J. Bernal). The government also declined to intervene in that

case, and San Bernardino Mountains Community Hospital District moved to

dismiss the complaint. Rather than oppose the motion, Relator filed a first amended

complaint. San Bernardino Mountains Community Hospital District then moved to

dismiss the first amended complaint, and the court granted the motion. *See id.*, ECF

No. 23(Order Granting Motion to Dismiss). Relator then filed a second amended

complaint. San Bernardino Mountains Community Hospital District once again

moved to dismiss, and the hearing for that motion is set for April 30, 2018.

## III.    LEGAL STANDARD

### A.     Rule 12(b)(1): Lack of Subject Matter Jurisdiction

Relator, as the party asserting federal subject matter jurisdiction, "bears the

burden of proving its existence." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598

F.3d 1115, 1122 (9th Cir. 2010) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511

U.S. 375, 377 (1994)). Without subject matter jurisdiction, a federal district court

cannot adjudicate the case before it. *See generally id.*

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack is limited to the complaint, but a factual attack is not. When resolving a factual attack, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. The court need not presume the truthfulness of the plaintiff's allegations." *Id.* (citations omitted).

### B.   Rule (12)(b)(6): Failure to State a Claim

If a complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory," then it should be dismissed. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citing *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990)). Under Rule 12(b)(6), factual allegations must be enough to "raise a right to relief above a speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[L]abels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 545. "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009).

Additionally, "[t]he heightened pleading standard of Rule 9(b) governs FCA claims." *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011) (citing *Bly–Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001)). "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Id.* at 1055. Moreover, "claims of fraud or mistake—including FCA claims—must, in addition to pleading with particularity, also plead plausible allegations." *Id.*

1   **IV.    ARGUMENT**

2          **A.    OVCH Was Merged Out and Is Not an Operational Entity**

3          Although Relator named Ojai Valley Community Hospital as the defendant

4   in this action, no such corporate entity currently exists. In 2006, Ojai Valley

5   Community Hospital, a California Corporation, was merged with Community

6   Memorial Health System. *See* Req. Jud. Not., Ex. D. After the merger, Community

7   Memorial Health System was the surviving corporation. *Id.* Relator's Complaint

8   cannot stand against a corporate entity that is no longer operational and was merged

9   out long before the facts that Relator alleges.

10         **B.    Relator's Allegations Are Subject to the Public Disclosure Bar**

11         The FCA prohibits "knowingly present[ing], or caus[ing] to be presented, a

12   false or fraudulent claim for payment or approval; [or] knowingly mak[ing],

13   us[ing], or caus[ing] to be made or used, a false record or statement material to a

14   false or fraudulent claim" to the federal government. 31 U.S.C. § 3729(a)(1)(A),

15   (B). The FCA permits private individuals, referred to as "relators," to bring suit—

16   i.e., a qui tam suit—on the government's behalf against entities that have violated

17   the FCA's prohibitions. *Id.* § 3730 (b)(1).

18         "The FCA's public disclosure bar deprives federal courts of subject matter

19   jurisdiction when a relator alleges fraud that has already been publicly disclosed,

20   unless the relator qualifies as an 'original source.'" *U.S. ex rel. Mateski v. Raytheon

21   Co.*, 816 F.3d 565, 569 (9th Cir. 2016). The public disclosure bar is triggered if:

22   (1) the disclosure occurred via a means specified in the FCA[2]; (2) the disclosure

23   was public; and (3) the relator's action is based on the publicly-disclosed

24   information. *Id.* at 570; *see also Malhotra v. Steinberg*, 770 F.3d 853, 858 (9th Cir.

25   2014). "[F]or a relator's allegations to be 'based upon' a prior public disclosure,

26   _____

27   [2] The means of disclosure include: "(i) in a Federal criminal, civil, or administrative
    hearing in which the Government or its agent is a party; (ii) in a congressional,
28   Government Accountability Office, or other Federal report, hearing, audit, or
    investigation; or (iii) from the news media." 31 U.S.C. § 3730(e)(4)(A).

1    'the publicly disclosed facts need not be identical with, but only substantially

2    similar to, the relator's allegations.'" *Mateski*, 816 F.3d at 573 (quoting *United*

3    *States ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1199 (9th Cir. 2009),

4    *overruled on other grounds by U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792

5    F.3d 1121, 1128 n.6 (9th Cir. 2015)); *see also Malhotra v. Steinberg*, 770 F.3d 853,

6    858 (9th Cir. 2014) (stating that the phrase "based upon" means "substantially

7    similar to").

8         Relator's FCA claims here were publicly disclosed and are therefore barred.

9    Relator filed his Complaint on September 21, 2017—more than four years after the

10   U.S. Department of Health and Human Services' public August 2013 report about

11   CAHs that purportedly did not meet the distance and location requirements to be

12   CAHs. *See* Req. Jud. Not., Ex. A. The August 2013 report fits squarely within the

13   FCA's public disclosure requirements. *See* 31 U.S.C. § 3730(e)(4)(A) (stating that a

14   Federal report, hearing, audit, or investigation qualifies as a public disclosure under

15   the FCA). When OVCH was approved as a CAH in 2014, the government thus

16   knew about, and publicly disclosed, the alleged issues that Relator raises. Dkt. No.

17   1, Compl. ¶ 24.

18        Additionally, pursuant to CMS's policies and procedures, OVCH would have

19   been approved as a CAH only after the regional office and state agency

20   independently confirmed that OVCH met all the conditions of participation—

21   including distance and location requirements. *See* Req. Jud. Not., Ex. B § 2256 (RO

22   Procedures for CAH Approval). Moreover, during every recertification, the

23   regional office determines whether a CAH like OVCH "is compliant with the CAH

24   location and distance requirements." *Id.* § 2256A; *see also* Req. Jud. Not., Ex. C.

25   This all occurs within the context and backdrop of the August 2013 report.

26        Here, Relator's allegations are not merely substantially similar to the

27   Department of Health and Human Services' August 2013 report; they are nearly

28   identical. The publicly-disclosed report is the basis and framework for Relator's

1  Complaint. Accordingly, the public disclosure bar deprives this Court of subject

2  matter jurisdiction over Relator's Complaint unless he qualifies as an original

3  source.

4  **C.    Relator Is Not an Original Source**

5        To be an original source, Relator must meet the requirements of 31 U.S.C.

6  § 3730(e)(4)(B), but he does not. An "original source" is an individual who either

7  (1) before a public disclosure, voluntarily disclosed to the government the

8  information on which FCA allegations or transactions are based, or (2) has

9  knowledge that is independent of and materially adds to the publicly disclosed

10  allegations or transactions. *See* 31 U.S.C. § 3730(e)(4)(B).

11        Relator wholly failed to allege any facts that could give rise to the conclusion

12  that he is an original source. He has not alleged, and cannot allege, that he has any

13  knowledge of the application, survey, and approval process that resulted in

14  OVCH's approval as a CAH. He has not alleged, and cannot allege, anything about

15  the specific disclosures and representations that OVCH made when it was approved

16  as a CAH. Relator has not alleged anything but generally available, public

17  information. Accordingly, Relator is not an original source.

18  **D.    Relator Failed to Plead Any Claims**

19  **1.    False Certification (Counts I and II)**

20        Relator failed to allege false certification claims under the FCA against

21  OVCH. *See* Dkt. No. 1, Compl. ¶¶ 40-49. "The essential elements of an FCA claim

22  are (1) a false statement or fraudulent course of conduct, (2) made with requisite

23  scienter, (3) that was material, causing (4) the government to pay out money or

24  forfeit moneys due." *U.S. v. Corinthian Colleges*, 655 F.3d 984, 992 (9th Cir.

25  2011). The FCA also recognizes an implied false certification theory as a basis for

26  liability where two conditions are satisfied: First, the defendant "must not merely

27  request payment, but also make specific representations about the goods or services

28  provided." *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 902

(9th Cir. 2017) (citing *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2001 (2016)). Second, the defendant's "failure to disclose noncompliance with material statutory, regulatory, or contractual requirements must 'make[] those representations misleading half-truths.'" *Id.* at 903 (quoting *Escobar*, 136 S. Ct. at 2000).

Here, Relator failed to allege any FCA false certification claim against OVCH for at least the following three reasons.

First, Relator failed to identify and allege any specific false statements, "misleading half-truths," or fraudulent conduct by OVCH. *See generally* Dkt. No. 1, Compl. ¶¶ 40-49. "The false statement element is the heart of the FCA claim: 'Violations of laws, rules, or regulations alone do not create a cause of action under the FCA. It is the false *certification* of compliance which creates liability when certification is a prerequisite to obtaining a government benefit.'" *United States ex rel. Brooks v. Trillium Cmty. Health Plan, Inc.*, No. 6:14-CV-01424-AA, 2016 WL 1725300, at *6 (D. Or. Apr. 29, 2016) (quoting *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996)) (emphasis in original). The Complaint does not allege any details regarding when OVCH made certifications to the federal government, how they were made, or what they contained. Relator fails to properly plead the FCA claims and, as discussed below, cannot meet the Rule 9(b) pleading requirements.

Second, Relator failed to allege that any false statement, misleading half-truth, or fraudulent conduct was made or carried out with the required scienter. To satisfy the FCA's scienter requirement, a relator must allege that the defendant acted "knowingly." *See* 31 U.S.C. § 3729(a)(1)(A), (B). Knowingly means the entity "has actual knowledge of the information" or "acts in deliberate ignorance" or "in reckless disregard" of the truth or falsity of that information." *Id.* § 3729(b)(1)(A). Knowledge does not require "proof of specific intent to defraud." *Id.* § 3729(b)(1)(B). Here, Relator failed to allege that OVCH was aware or should

be been aware that it allegedly did not meet the requirements to be a CAH, especially given the thorough application, survey, and approval process that OVCH went through to become a CAH. *See generally* Dkt. No. 1, Compl.; Req. Jud. Not., Ex. B § 2256 (RO Procedures for CAH Approval).

Third, Relator failed to allege that any false statement, misleading half-truth, or fraudulent conduct by OVCH was material to the government. Under the FCA "'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). To establish materiality, the false statement or conduct must be "material to the government's decision to pay out moneys to the claimant." *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1172 (9th Cir. 2006). The "key question is whether the government is likely to attach significance to the [statutory, regulatory, or contractual] requirement in deciding whether to tender payment." *United States v. Celgene Corp.*, 226 F. Supp. 3d 1032, 1049 (C.D. Cal. 2016) (citing *Escobar*, 136 S. Ct. at 2002-03).

Here, Relator failed to allege how OVCH's unidentified representations were material, especially given the 2013 report that indicates that CMS may decide to maintain CAHs that do not meet the location and distance requirements. *See generally* Dkt. No. 1, Compl. ¶¶ 40-49; Req. Jud. Not., Ex. A, at 12. Instead, Relator alleges only that Form 2252 certifications that OVCH submitted were material to Medicare's decision to reimburse OVCH at CAH rates. *Id.* ¶¶ 29-35, 40-49. But this is insufficient to support a conclusion of materiality. As the U.S. Supreme Court explained in *Escobar*: "The materiality standard is demanding…. A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Escobar*, 136 S. Ct. at 2003. Accordingly, Relator failed to sufficiently allege materiality.

1    In sum, Relator failed to allege the essential elements of a false certification

2    claim under the FCA. Accordingly, Counts I and II of the Complaint should be

3    dismissed.

4                    **2.      Reverse False Claim (Count III)**

5    Relator also failed to allege a reverse false claim for OVCH's purported

6    failure to refund overpayments to the government. Dkt. No. 1, Compl. ¶¶ 50-53.

7    The FCA imposes liability on a person or entity who "knowingly makes, uses, or

8    causes to be made or used, a false record or statement material to an obligation to

9    pay or transmit money or property to the Government, or knowingly conceals or

10   knowingly and improperly avoids or decreases an obligation to pay or transmit

11   money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). Relator

12   purports to allege a reverse false claim for OVCH's purported failure to refund

13   overpayments owed to the government. Dkt. No. 1, Compl. ¶¶ 50-53. But because

14   Relator failed to allege any false certification claim, he also failed to allege the

15   government overpaid OVCH. Moreover, Relator failed to allege that there was any

16   false statement, misleading half-truth, or fraudulent conduct by OVCH with the

17   required scienter that was material to the government, and resulted in any alleged

18   failure by OVCH to refund overpayments to the government. *See generally id.*

19   Accordingly, Count III of the Complaint should be dismissed.

20                   **3.      Unjust Enrichment (Count IV)**

21   Relator's unjust enrichment claim fails for the same reasons as his FCA

22   claims. The claim for unjust enrichment is premised on, and merely restates, his

23   FCA claims. *See, e.g.*, *id.* ¶ 54. For the same reasons outlined above, Relator also

24   failed to allege that OVCH was unjustly enriched. *See, e.g.*, *United States v. Scan*

25   *Health Plan*, Case No. CV-09-5013, 2017 WL 4564722 (C.D. Cal. Oct. 5, 2017) (J.

26   Walter) (dismissing FCA claims and a claim for restitution/unjust enrichment).

27   Accordingly, Relator's claim for unjust enrichment should be dismissed.

28

1  Moreover, where the government has not intervened in a FCA case, a
2  plaintiff lacks standing to bring non-FCA causes of action—including a common
3  law claim for unjust enrichment—on behalf of a government. *See United States ex*
4  *rel. Rockefeller v. Westinghouse Elec. Co.*, 274 F. Supp. 2d 10, 14 (D.D.C. 2003)
5  (in non-intervened False Claims Act case, plaintiff "does not have standing to assert
6  common law claims based on injury sustained by the United States"); *United States*
7  *ex rel. Barrett v. Columbia/HCA Healthcare Corp.*, 251 F. Supp. 2d 28, 37 (D.D.C.
8  2003) (dismissing plaintiff's causes of action for unjust enrichment and conspiracy
9  because such claims were personal to United States and plaintiffs could not allege
10  that they suffered any injury in fact). Here, the government declined to intervene,
11  yet Relator brings "[t]his … claim by the United States for unjust enrichment under
12  the common law …." Dkt. No. 1, Compl. ¶ 54. Because the United States has not
13  intervened in this action, Relator lacks standing to bring a common law cause of
14  action for unjust enrichment.

15  **E.     Relator Failed to Plead Any of His Claims With Particularity**

16  All of Relator's claims (Counts I through IV) sound in fraud and therefore
17  must meet the heightened pleading standards of Rule 9 of the Federal Rules of Civil
18  Procedure. *See Cafasso,* 637 F.3d at 1054 ("The heightened pleading standard of
19  Rule 9(b) governs FCA claims."); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,
20  1107 (9th Cir. 2003) ("When an entire complaint, or an entire claim within a
21  complaint, is grounded in fraud and its allegations fail to satisfy the heightened
22  pleading requirements of Rule 9(b), a district court may dismiss the complaint or
23  claim."). "To satisfy Rule 9(b), a pleading must identify 'the who, what, when,
24  where, and how of the misconduct charged,' as well as 'what is false or misleading
25  about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso*, 637
26  F.3d at 1055 (affirming dismissal of FCA complaint).

27  Relator failed to allege Counts I through IV of the Complaint with
28  particularity, as required. Relator generally alleges that OVCH does not qualify for

1    CAH certification, submitted CMS Form 2252, received reimbursement as a CAH,

2    and charged the government. *See generally* Dkt. No. 1, Compl. Relator has not

3    alleged, and cannot allege, the required who, what, when, where, and how of the

4    alleged fraud. Relator's allegations are devoid of the required details and

5    particularity. He does not allege what representations OVCH made when it was

6    approved as a CAH or why any representations were allegedly false. He does not

7    allege who made any allegedly false representations or half-truths, or when such

8    statements were made. He also does not allege who engaged in some unstated,

9    allegedly fraudulent conduct, when that unstated conduct occurred, and why it was

10   fraudulent. He also failed to allege that any false claims were actually submitted or

11   any details of any allegedly false claims. *See generally id.* Because Relator failed to

12   allege any claims with the required specificity and particularity, his Complaint

13   should be dismissed in its entirety.

14              **F.    Relator Should Not Be Given Leave to Amend**

15              Relator cannot save his Complaint through amendment. "Dismissal without

16   leave to amend is proper if it is clear that the complaint could not be saved by

17   amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). As

18   discussed above, the Court lacks subject matter jurisdiction. Relator's Complaint

19   should therefore be dismissed without leave to amend.

20   **V.    CONCLUSION**

21              For the reasons set forth above, Relator's Complaint should be dismissed for

22   lack of subject matter jurisdiction, failure to state a claim, and failure to plead fraud

23   ///

24   ///

25   ///

26   ///

27   ///

28

1    with particularity. OVCH respectfully requests that the Court dismiss the

2    Complaint without leave to amend.

3

4    Dated:        April 19, 2018            **ARENT FOX LLP**

5

6                                           By: /s/ Jeffrey R. Makin
                                               JEFFREY R. MAKIN
7                                              ALEXANDER S. BIRKHOLD
                                               Attorneys for Defendant
8                                              OJAI VALLEY COMMUNITY
                                               HOSPITAL, a d/b/a of COMMUNITY
9                                              MEMORIAL HEALTH SYSTEM, a
                                               California Nonprofit Public Benefit
10                                             Corporation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28