# State Operations Manual
## Chapter 2 - The Certification Process

**Table of Contents**
*(Rev. 164, 11-04-16)*

[Transmittals for Chapter 2](#)

**Identification of Providers and Suppliers and Related Presurvey Activities**

2000 - Certification Surveys - Citations and Responsibility
2002 - Meaning of Providers and Suppliers
2003 - SA Identification of Potential Providers and Suppliers
2003A - Assisting Applicant Providers and Suppliers
2003B - Initial Certification "Kits"
2003C - Deemed Status Providers/Suppliers, Excluding CLIA
2004 - Provider-Based Determinations
2005 - Medicare Health Care Provider/Supplier Enrollment
2005A - Approval or Denial
    2005A1 - Enrollment Denial Based on MAC Review
    2005A2 - Approval or Denial of Certification Based on Survey Findings
    2005A3 - Reconsideration of Denial
    2005A4 - Deemed Providers/Suppliers, Excluding CLIA
2005B - Deemed Providers/Suppliers Except CLIA - Additional Information
2005C - Clinical Laboratory Improvement Amendments of 1988 (CLIA) Laboratories
2005D - Supplementary Applications
    2005D1 - Forms CMS-855A or the CMS-855B for Changes in Provider/Supplier Information
    2005D2 - Form CMS-855R
2005E - Changes of Ownership
    2005E1 - CHOW Occurs
    2005E2 - Change in Intermediary as Result of CHOW
    2005E3 - CHOWs Involving Multi-Regional Chain Organizations
    2005E4 - Change of Owners, but Not CHOW
2005F - Voluntary Terminations
2008 - Prioritizing SA Survey Workload - Initial Surveys and Recertifications
2008A - Surveys of New Providers and Suppliers

sends a letter to the CAH, see (Exhibit 134) "Transmitting Materials to Critical Access Hospitals."

A current Medicare provider who is requesting a change of status to a CAH sends an amended Form CMS-855A to the FI with specific information required by the FI.

Within 30 days, the intermediary will notify the SA indicating if the Form CMS-855A was approved or not approved. The State survey agency verifies that the facility has been properly designated as a CAH by the State government entity responsible for CAH designation prior to forwarding the application to the RO.

## 2255B - Pre-Survey Activity

**(Rev. 1, 05-21-04)**

The SA follows the procedures outlines in Appendix W, Survey Protocol for CAH Providers. The SA verifies requirements in the CAH CoPs in 42 CFR 485.608, 485.610, and 485.612 from facility files and any other documentation available at its office. If the prospective CAH has swing-bed approval, the SA determines that the swing-bed approval is current.

## 2255C - Arranging a CAH Survey

**(Rev. 1, 05-21-04)**

After the RO has authorized a survey, the SA follows the procedures outlined in Appendix W, Survey Protocol for CAH Providers. All CAH surveys are unannounced surveys.

## 2255D - Onsite Survey Activity

**(Rev. 1, 05-21-04)**

The SA follows the guidelines for the survey process in Appendix W.

## 2255E - Preparing a Statement of Deficiencies

**(Rev. 1, 05-21-04)**

The SA uses the "Statement of Deficiencies and Plan of Correction," Form CMS-2567, when citing deficiencies, and refers to Exhibit 7A, "Principles of Documentation," for procedural guidance. The SA sends the completed Form CMS-2567 to the facility. If there are deficiencies cited, the SA sends a letter, see Exhibit 151, "Request for a Plan of Correction Following an Initial CAH Survey." If there are swing-bed deficiencies, a separate Form CMS-2567 must be prepared.

## 2256 - RO Procedures for CAH Approval

**(Rev. 1, 05-21-04)**

A prospective CAH must be surveyed by the SA and be in compliance with the CoPs for CAHS at 42 CFR Part 485 subpart F, before it can be approved for participation in Medicare as a CAH provider. The change from hospital to CAH is considered a change in status. A new provider agreement is not needed unless there is a change in ownership (CHOW) without the assumption of debt.

## 2256A - Verification Criteria
**(Rev. 143, Issued: 07-31-15, Effective: 07-31-15, Implementation: 07-31-15)**

If the provider is a hospital, CAH verification requires that the RO review the facility file to determine if the prospective CAH is in compliance with the hospital CoPs in 42 CFR Part 482 at the time it made application for designation as a CAH (see 42 CFR 485.612). If the provider is a closed hospital or a downsized hospital, it is not necessary that they meet hospital CoPs at the time of application or on conversion.

The RO will reverify compliance with 42 CFR 485.610(a) and (b) and has primary responsibility to verify compliance with 42 CFR 485.610(c) and (d).

**NOTE**: A hospital applying for CAH certification should **not** be surveyed until after the RO determined that the applicant is compliant with the CAH location and distance requirements. If the survey is conducted prior to the RO making a determination regarding the applicant's compliance with the location and distance requirements, and the RO finds that the applicant is noncompliant, the application must be denied. The applicant may submit a reapplication for CAH certification in connection with the initial enrollment application – using the guidance in Chapter 2 of the SOM, §2005A2.

**Rural location**

Among other requirements, pursuant to 42 CFR 485.610(b), all CAH applicants and existing CAHs, including necessary provider CAHs, must either be:

- Located in a rural area; or
- Treated as rural in accordance with 42 CFR 412.103

in order to be eligible for CAH designation and certification.

Only the CMS Regional Office makes the determination whether a CAH applicant or existing CAH meets the rural location requirement, following the instructions below. However, State Survey Agencies (SA) may wish to make informal assessments prior to conducting a survey. If the SA's informal assessment suggests the CAH applicant or existing CAH is not rural, it should consult with the RO before conducting a survey.

- **Located in a rural area – i.e., outside a Metropolitan Statistical Area (MSA)**

Under 42 CFR 485.610(b)(1)(i), a rural area is any area that is outside a MSA, as defined by the Federal Office of Management and Budget (OMB). In making a determination regarding the rural status of a CAH, the CMS RO first consults the latest OMB MSA delineations that have been adopted by CMS.

OMB conducts a comprehensive review of its MSA delineations once a decade and also conducts periodic updates between decennial censuses based on Census Bureau data. When OMB releases revised statistical area delineations, typically CMS adopts the new delineations in the next hospital Inpatient Prospective Payment System (IPPS) rule, which is usually proposed in April of each year, published as a final rule in August and effective on October 1st following the final rule publication date. If an IPPS final rule has been released during a time when OMB has not released revised statistical area delineations, the most recently-released OMB delineations adopted by CMS remain in effect. Accordingly, the RO must consult the MSA delineations used for the purpose of the final IPPS rule that is in effect at the time of:

- The Medicare Administrative Contractor's (MAC) determination that a hospital has submitted a complete application to convert to CAH certification; or
- At the time of the RO's recertification review of an existing CAH.

The most recent final IPPS rules can be found on CMS' Acute Inpatient PPS webpage:

http://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/AcuteInpatientPPS/index.html

ROs may use the following instructions to locate the OMB MSA delineations in effect at the applicable time for a rural location determination:

1. Go to the Acute Inpatient PPS webpage noted above.
2. Select the link for the IPPS final rule in effect at the applicable time for the initial applicant or at the time of the recertification decision for an existing CAH. For example, if a CAH is up for recertification and the RO is evaluating the CAH's compliance with the rural location requirement on February 1, 2016, the most recent OMB MSA delineations adopted by CMS would be those effective October 1, 2015 and the RO would select "FY 2016 IPPS Final Rule Home Page" from the list of IPPS rules on the left-hand column. On the other hand, if the RO is evaluating the existing CAH's compliance on September 10, 2015, it would select the FY 2015 IPPS Final Rule Home Page, since the FY 2016 rule would not go into effect until October 1, 2015.
3. Select the link for final rule data files. For example, on the FY 2015 IPPS Final Rule Home Page, select the link titled "FY 2015 Final Rule Data Files."
4. In the Downloads section at the bottom of the page, select the link for the "County to CBSA Crosswalk File."
5. Select the Excel file. For example, for the FY 2015 IPPS final rule, select the file titled "CBSAtoCountycrosswalk_FY15_FR.xlsx."

6. Search for the county in which the CAH is located. If the IPPS rule has adopted revised OMB statistical delineations, the revised information will be found in column "G", which is titled, "New CBSA" (Blanks are Rural)." Column G includes the CBSA code for each county. If the cell is blank, the county is a rural county. If all of Column G is blank, this means that the final IPPS rule did not include adoption of revised OMB statistical delineations, and that the delineations from a prior final rule remain in effect.

- **Even if the existing CAH or CAH applicant is located outside an MSA and therefore is in a rural area, it is also necessary to determine that it is also <u>not</u>:**

    - Located in an area that has been recognized as urban in accordance with 42 CFR 412.64(b), excluding §412.64(b)(3);

    - Classified as an urban hospital in accordance with 42 CFR 412.230(d) (NOTE: 42 CFR 412.230(d) became 412.230(d) in 2001); or

    - Redesignated to an adjacent urban area in accordance with 42 CFR 412.232.

    Financial staff in the RO should be able to provide information on whether the CAH applicant falls in one of the above three categories, since 42 CFR Part 412 are regulations developed primarily for payment purposes.

- **Located within an MSA, but treated as rural**

    Even if the CAH applicant is located in an MSA, it may nevertheless qualify to be "treated" as rural if it is a hospital that has been reclassified as rural in accordance with 42 CFR 412.103, i.e., it was reclassified based on:

    - Being located in a rural census tract of a MSA per the most recent version of the Goldsmith Modification or the Rural-Urban Commuting codes, as determined by the Office of Rural Health in the Health Resources and Services Administration. (See http://www.hrsa.gov/ruralhealth/policy/definition_of_rural.html);

    Or

    - It would qualify as a rural referral center or a sole community hospital if it were located in a rural area;

    Or

    - It is located in an area designated under any State law (including State regulation) as a rural area, or has been designated as a rural hospital under State law (including regulation).

    Rural reclassifications are handled by the CMS RO Office of Financial Management. RO survey and certification staff should consult with their financial management counterparts

to determine whether a reclassification has been made that would permit a CAH applicant or existing CAH to be treated as rural.

**In the case of an initial application for CAH status** by a hospital, the application must be denied if the hospital applicant is located within an MSA or has not been reclassified in a manner that allows it to be treated as rural. If the applicant subsequently succeeds in being reclassified as rural, it may submit a reapplication for CAH certification in connection with the initial enrollment application – using the guidance in Chapter 2 of the SOM, §2005A2 – on or after the effective date of its reclassification. If the hospital was surveyed for compliance with the CAH CoPs as part of its prior denied application, it must nevertheless be surveyed again; however, this survey does not require an on-site visit if the hospital is otherwise in substantial compliance with the CAH CoPs. (NOTE: This should be a rare occurrence as a hospital applying for CAH certification should **not** be surveyed until the RO has determined that the applicant is in compliance with the CAH location and distance requirements). The effective date of its CAH conversion must be no earlier than the date when the applicant demonstrates compliance with all requirements to be certified as a CAH.

**In the case of an existing CAH that is being recertified**, the RO first determines whether the CAH is outside of an MSA, using the OMB MSA delineations adopted by CMS and in effect at the time the RO is processing the CAH's recertification. If the CAH is no longer outside an MSA, the RO must consult with the RO Office of Financial Management to determine whether there is a reclassification in effect that permits the CAH to be treated as rural.

If the existing CAH previously was outside an MSA, but is now in an MSA and has not been reclassified as rural, the CAH may continue to retain its CAH status up to two years after the effective date of CMS's adoption of the OMB MSA delineations that changed the CAH's rural status. The CAH is responsible at all times for ensuring that it meets the requirement at §485.610(b) to be considered rural. Therefore, in order to continue participating in the Medicare program, during the two-year grace period the CAH is expected either to successfully be reclassified to be treated as rural or to have completed conversion to a Medicare-certified hospital, including demonstrating compliance with the hospital CoPs at 42 CFR Part 482. Note that a recertification review of the CAH's status and location by the RO is triggered any time:

- An SA conducts a full survey of a CAH, whether for recertification of a non-accredited CAH, for a validation survey of a deemed status CAH, or when following up on a prior complaint survey and the RO requires a full survey; or

- An accrediting organization reaccredits a deemed status CAH and recommends to the RO continued deemed status.

If the recertification review of the CAH takes place more than two years after the effective date of the CMS adoption of revised OMB MSA delineations that resulted in the CAH's loss of rural status and the CAH has not been reclassified to be treated as rural, the CAH is

substantially noncompliant with the CAH Status and Location CoP (§485.610) and the RO takes action to terminate the CAH's Medicare agreement.

**Examples:**

- Example 1: The RO is conducting a recertification review of a CAH in January, 2016. When CMS initially certified the CAH, it determined that the CAH was located outside of an MSA. However, for the purposes of this example, the OMB MSA delineations that were adopted by CMS and effective October 1, 2014 resulted in the CAH being located within an MSA. The CAH had a maximum of two years – up to and including October 1, 2016 - to retain its CAH certification status. However, the CAH did not seek reclassification to be treated as rural. After conducting its January 2016 review, the RO would notify the CAH that it no longer satisfies the CAH rural status requirement and could remain certified as a CAH only until October 1, 2016. The CAH would then have 10 months to either be reclassified as rural or to complete conversion to CMS-certified hospital status in order to avoid termination of its Medicare agreement.

- Example 2: The CAH in Example 1 was not reviewed for recertification until January 2017, a date more than two years after the effective date of its changed MSA status. Additionally, the CAH had not been reclassified as rural and had not converted to hospital certification. In this situation, the CMS RO would determine that the CAH does not satisfy the CAH rural status requirement and would take action to terminate the CAH's Medicare agreement.

- Example 3: For the purposes of this example only, revised OMB MSA delineations were released in May 2014, proposed for adoption by CMS as part of the IPPS rule in April 2015, adopted by CMS August 8, 2015, and became effective October 1, 2015. Furthermore, a MAC determined that an initial CAH applicant's application was complete and could be recommended to the RO and SA for approval as of June 5, 2015, contingent upon the CAH being certified by CMS. Also the CAH applicant was recommended for deemed status by a CMS-approved Medicare CAH accreditation program, with an August 15, 2015 accreditation effective date. In this case, the RO would use the OMB MSA delineations that CMS had most recently adopted as of June 5, 2015, i.e., those adopted by CMS effective October 1, 2014, in making its determination about rural status, and found that the CAH was outside an MSA and certified it as a CAH effective August 15, 2015. The RO does this even though OMB released more recent delineations in May 2014 and CMS has already adopted a rule incorporating the later OMB MSA delineations. Since the adoption of the later delineations is not effective until October 1, 2015, the RO must use the MSA delineations previously adopted by CMS and applicable on June 5, 2015.

- Example 4: Finally, using the CAH in Example 3, the CAH is now located inside an MSA based on revised OMB MSA delineations adopted by CMS effective October 1, 2015. As a result, the CAH no longer meets the rural location requirement as of October 1, 2015, but may retain its CAH status until October 1, 2017. Note that in this case the CAH is not due for reaccreditation and recertification until August 2018,

which is after the end of the grace period. If the CAH has neither been successfully reclassified as rural nor converted to a hospital by October 1, 2017, the RO would take action to terminate the CAH's Medicare agreement.

In all of the above examples, the CAH has primary responsibility for monitoring changes in its rural status resulting from CMS's adopted revised OMB MSA delineations, and taking appropriate action if it loses its rural status on the basis of the revised delineations.

**Necessary Provider Status and Rural Reclassification**

Necessary provider certification only provides an exemption from the CAH distance requirements relative to other CAHs and hospitals. Necessary provider CAHs are still required to meet the rural location requirement; therefore, if a necessary provider CAH is located within an MSA as a result of a change in the OMB MSA delineations adopted by CMS, it must follow the same procedures noted above as any other CAH.

**Location relative to other facilities or necessary provider certifications:**

In addition, the regulations at 42 CFR 485.610(c) specify that one of the following 3 minimum driving distances from other facilities requirements must be met:

- <u>35-Mile Distance</u>: The CAH must be located more than a 35-mile drive from any hospital or other CAH; or

- <u>15-Mile Distance</u>: In the case of mountainous terrain or in areas with only secondary roads available, the CAH must be located more than a 15-mile drive from any hospital or other CAH; or

- <u>No Distance Requirement</u>: In the case of a CAH that was designated by the State as being a necessary provider of health care services to residents in the area before January 1, 2006, there is no minimum distance requirement.

In determining whether a currently certified CAH or a CAH applicant meets the location requirements at §485.610(c), the proximity of IHS/Tribal hospitals or CAHs and non-IHS/Tribal hospitals or CAHs to each other is not considered.

The following examples clarify how determinations are to be made when IHS or Tribal hospitals or CAHs are in the vicinity of non-IHS or non-Tribal hospitals or CAHs:

- Example 1: Hospital A is seeking CAH certification and is a 10-mile drive from Hospital B, an IHS hospital. Hospital C is the next nearest hospital/CAH and is a 42-mile drive from Hospital A. The distance to Hospital B is not considered; Hospital A meets the minimum distance to another CAH or hospital requirement.

- Example 2: CAH A is a tribal facility that is being reviewed as part of the recertification process. It is a 17-mile drive from a non-tribal/non-IHS CAH (CAH B). It is also a 75-mile drive from an IHS hospital (Hospital C). The distance to CAH B is

not considered; CAH A continues to meet the minimum distance to another CAH or hospital requirement.

- Example 3: Hospital A is a tribal hospital seeking CAH certification and is a 33-mile drive along primary roads to an IHS hospital, Hospital B. It is also a 50-mile drive to Hospital C, a non-IHS/non-tribal hospital. The distance to Hospital B is considered; Hospital A does not meet the minimum distance to another CAH or hospital requirement.

If a CAH is located on an island and the location meets the following characteristics, the CAH is considered to be in compliance with the distance requirements relative to other hospitals and CAHs under §485.610(c):

- The island is entirely surrounded by water;
- The CAH is the only hospital or CAH on the island; and
- The island is not accessible by any roads.

CAHs located on islands that meet the criteria above are still required to comply with the rural location requirement under §485.610(b).

In demonstrating that it meets the standard for more than a <u>35-mile drive</u>, a CAH applicant must document that there is no driving route from the applicant to any other CAH or hospital that is 35 miles or less in length.

**Application of the more than 15-mile drive standard, based on mountainous terrain**

Slope and ruggedness of the terrain around the CAH, together with absolute altitude (the distance above sea level), determine many of the fundamental characteristics of mountainous terrain.[1] However, being located at a high elevation does not, in and of itself, constitute "mountainous terrain," nor does being located at the foot of a mountain or where mountains can be viewed. Further, the absolute altitude required to constitute mountainous terrain will vary in different regions. For example, the altitude of the Appalachian Mountains is considerably lower than that of the Rocky Mountains, yet the slope and ruggedness of the terrain in many portions of the Appalachians is mountainous. Furthermore, roads passing through mountainous terrain are characterized by certain typical engineering features. For the purposes of determining a CAH's eligibility for the 15-mile drive standard based on mountainous terrain, the roads on the travel route(s) to hospitals or other CAHs must meet the following criteria:

- Over 15 miles of the roads on the travel route(s) from the CAH to any hospital or another CAH must be located in a mountain range, identified as such on any official maps or other documents prepared for and issued to the public;

**and**

---

[1] United Nations Environment Programme World Conservation Monitoring Centre. (2002). *Mountain Watch*. Retrieved August 11, 2010, from http://www.unep-wcmc.org/mountains/mountain_watch/pdfs/.

- Since being located within a mountain range in and of itself does not mean that the drive to any other hospital or CAH includes travel through "mountainous terrain," the roads on the travel route(s) from the CAH to any other hospital or CAH must have either of the following characteristics:

    - Extensive sections of roads with steep grades (i.e., greater than 5 percent), continuous abrupt and frequent changes in elevation or direction, or any combination of horizontal and vertical alignment that causes heavy vehicles to operate at crawl speeds for significant distances or at frequent intervals.[2] (Horizontal alignment refers to the "straightness" of the roadway, vertical alignment refers to the roadway's "flatness," and crawl speed is the speed at which a truck has no power to accelerate on long, steep grades.[3,4] Thus, roads in mountainous terrain are commonly described as winding and steep);

  or

    - Be considered mountainous terrain by the State Transportation or Highway agency, based on significantly more complicated than usual construction techniques that were originally required to achieve compatibility between the road alignment and surrounding rugged terrain. For example, because the changes in elevation and direction are abrupt in mountainous terrain, roadbeds may require frequent benching, side hill excavations, and embankment fills. [5]

A letter from the State Transportation or Highway agency specific to the travel route(s) in question is required to support the claim of mountainous terrain based on either of these sets of road characteristics.

It is not uncommon for there to be roads (or sections of roads) through mountainous areas that do not meet the criteria for "mountainous terrain." A CAH would qualify for application of the mountainous terrain criterion if there is a combination of mountainous and non-mountainous terrain between it and any other hospital or CAH, so long as there is no route to any hospital or other CAH with 15 or fewer miles of roads in mountainous terrain. When calculating the mountainous terrain travel distance to any hospital/other CAH, subtract the total distance represented by those sections of the travel route that are not considered "mountainous terrain." For example, if the route to the nearest hospital consisted of 12 miles in mountainous terrain, followed by 5 miles in non-mountainous terrain, followed by 4 miles in mountainous terrain, then the requirement for a total of more than 15 miles would be met (12 miles plus 4 miles – or 21 miles minus 5 miles – yield 16 total miles of mountainous terrain).

---

[2] Mannering, F. L., Washburn, S. S., & Kilareski, W. P. (2009). *Principles of Highway Engineering and Traffic Analysis.* Hoboken, NJ: John Wiley and Sons, Inc
[3] *Highway Capacity Manual: 2000 (U. S. Customary Units)* by Transportation Research Board (Dec. 2000). p 23-9.
[4] Donnell, E. T., Ni, Y., Adolini, M., & Elefteriadou, L. (2001). *Speed prediction models on two-lane rural highways.* Transportation Research Record, 1751, 44-55.
[5] Mannering, F. L., Washburn, S. S., & Kilareski, W. P. (2009). *Principles of Highway Engineering and Traffic Analysis.* Hoboken, NJ: John Wiley and Sons, Inc.

**Application of the more than 15-mile drive standard, based on secondary roads**

To be eligible for the lesser distance standard due to the <u>secondary road criteria</u> under §485.610(c) the CAH must document that there is a drive of more than 15 miles between the CAH and any hospital or other CAH where there are no primary roads. A primary road is:

- Any US highway, including any road:
    - In the National Highway System, as defined in 23 US Code §103(b); or
    - In the Interstate System, as defined in US Code §103(c); or
    - Which is a US-Numbered Highway (also called "US Routes" or "US Highways") as designated by the American Association of the State Highway and Transportation Officials (AASHTO), regardless of whether it is also part of the National Highway System;

All US highways are readily identified via signage along the roads and on maps by the presence of "US" or "I" above the highway number, with the letters and number appearing on a distinctive, uniform shield background that is called the six point shield, with five points above and one below. Note: Although the National Highway System and the U.S. Numbered Highway system largely overlap, they are not identical. According to the American Association of the State Highway and Transportation Officials (AASHTO), which is responsible for designation of roads in the U.S. Numbered Highway system, the system is intended to facilitate the movement of interstate traffic in two or more States with the use of uniform markings.[6]

Given the role all US highways are intended to play in interstate commerce, they are, by definition, primary roads.

OR

- A numbered State highway with 2 or more lanes each way;

OR

- A road shown on a map prepared in accordance with the U.S. Geological Survey's Federal Geographic Data Committee (FGDC) Digital Cartographic Standard for Geologic Map Symbolization as a "primary highway, divided by median strip."

A CAH may qualify for application of the "secondary roads" criterion if there is a combination of primary and secondary roads between it and any hospital or other CAH, so long as more than 15 of the total miles from the hospital or other CAH consists of areas in which only secondary roads are available. To apply the secondary roads criterion, measure the total driving distance between the CAH and each hospital or CAH located within a 35-mile drive and subtract the portion of that drive in which primary roads are

---

[6] *AASHTO Special Committee on U.S. Route Numbering. Retrieved June 17, 2014, from: http://route.transportation.org/Documents/H01_Policy_Establ_Develop_USRN.pdf*

available. If the result is more than 15 miles for each drive to a hospital or CAH facility, the 15-mile criterion is met.

The RO will review Web-based map servers, such as Google Maps, or NationalAtlas.gov for example, to determine whether the provider meets the requirements of 42 CFR 485.610(c). The RO will also review any documentation the provider may submit to demonstrate that it meets either the mountainous terrain or secondary roads criterion of §485.610(c), but such documentation must satisfy the requirements discussed above. For example, CMS does not consider any issues raised by CAH applicants or other parties concerning the physical features of any specific US highway, or portion thereof, when making a CAH location determination. Therefore, documentation submitted by the applicant indicating that a particular portion of a US highway has numerous curves, or a weight limitation, or narrow shoulders, etc. would not affect the RO's determination that the highway is a primary road.

## 2256B - Notification

**(Rev. 1, 05-21-04)**

When the facility is found to be in full compliance with the CoPs in 42 CFR Part 485, Subpart F, or has submitted an acceptable Plan of Correction, the RO notifies the facility in writing by sending letter, see Exhibit 150, "CAH Approval Notification," stating the facility has been approved for participation. A copy of the notice letter is sent to the FI and SA. Do not issue the letter until the facility is in compliance with all the CoPs.

## 2256C - Effective Dates

**(Rev. 1, 05-21-04)**

After the RO has reviewed and approved the SA recommendation for Medicare participation, the effective date for participation by a CAH will be one of the following:

- The last date of the initial survey by the SA, provided the prospective CAH is in full compliance with the CAH CoPs on that date; or

- The date that the prospective CAH submits an acceptable plan of correction to the SA.

## 2256D - RO Processing Complaints Against a CAH

**(Rev. 1, 05-21-04)**

When the RO or SA receives a complaint against a CAH regarding the CoPs in 42 CFR Part 485 subpart F, including the SNF requirements for a swing-bed CAH, the RO follows the normal complaint process for non-accredited hospitals.

## 2256E - RO Processing Denials or Terminations of a CAH