JEFFREY R. MAKIN (SBN 252426)
jeffrey.makin@arentfox.com
ALEXANDER S. BIRKHOLD (SBN 304334)
alexander.birkhold@arentfox.com
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, California 90013-1065
Telephone: 213.629.7400
Facsimile:  213.629.7401

Attorneys for Defendant
OJAI VALLEY COMMUNITY HOSPITAL, a
d/b/a of COMMUNITY MEMORIAL HEALTH
SYSTEM, a California Nonprofit Public Benefit
Corporation

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. FRANK ADOMITIS, an individual,<br><br>                    Plaintiff,<br><br>v.<br><br>OJAI VALLEY COMMUNITY HOSPITAL; DOES 1 through 20, inclusive,<br><br>                    Defendant. | Case No.  CV17-06972 JGB (KKx)<br><br>**DEFENDANT OJAI VALLEY COMMUNITY HOSPITAL'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Request for Judicial Notice and [Proposed] Order filed concurrently herewith]<br><br>Judge:    Hon. Jesus G. Bernal<br>Date:     July 30, 2018<br>Time:     9:00 a.m.<br>Crtrm:    1 |

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on Monday, July 30, 2018, at 9:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable Jesus G. Bernal, in Courtroom 1 located at the United States Courthouse at 3470 Twelfth Street, Riverside, California 92501, Defendant Ojai Valley Community Hospital ("OVCH") will and hereby does move to dismiss Counts I through III of Relator Frank Adomitis's First Amended Complaint for Violation of the Federal False Claims Act (the "FCA").

This motion is made pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6), and is based on the following grounds:

1.  The Court lacks subject matter jurisdiction because Relator's claims are subject to the FCA's public disclosure bar, and Relator is not an original source;

2.  Relator failed to state any claim upon which relief can be granted; and

3.  Relator's claims sound in fraud and are therefore subject to the heightened pleading requirements of Rule 9 of the Federal Rules of Civil Procedure, but Relator failed to plead his claims with particularity.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place via email on May 16, 2018, and by telephone on May 22, 2018.

OVCH's motion to dismiss is based upon this notice of motion and motion, the attached memorandum of points and authorities, the pleadings and other records on file in this action, the concurrently filed request for judicial notice, and on such

///

///

///

///

1   further evidence and arguments as the Court may consider at or before the hearing

2   on this motion.

3   Dated:  May 29, 2018                    **ARENT FOX LLP**

4

5                                    By: /s/ Jeffrey R. Makin
                                     JEFFREY R. MAKIN
6                                    ALEXANDER S. BIRKHOLD
                                     Attorneys for Defendant
7                                    OJAI VALLEY COMMUNITY
                                     HOSPITAL, a d/b/a of COMMUNITY
8                                    MEMORIAL HEALTH SYSTEM, a
                                     California Nonprofit Public Benefit
9                                    Corporation

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................. 7

II. BACKGROUND AND STATEMENT OF FACTS ...................................... 8

    A.  Procedural Background ................................................................. 8

    B.  Relator's Allegations About the Medicare Reimbursement Program and the Critical Access Hospital Framework ..................... 9

    C.  Department of Health and Human Services' 2013 Report: Most Critical Access Hospitals Do Not Meet the Location Requirements ............................................................................ 10

    D.  Procedures for CAH Approval and Recertification ...................... 10

    E.  Relator's Allegations Regarding Ojai Valley Community Hospital .................................................................................... 12

III. LEGAL STANDARD ......................................................................... 13

    A.  Rule 12(b)(1): Lack of Subject Matter Jurisdiction ..................... 13

    B.  Rule (12)(b)(6): Failure to State a Claim ................................... 14

IV. ARGUMENT ................................................................................... 15

    A.  The Court Lacks Subject Matter Jurisdiction .............................. 15

        1.  The FCA's Public Disclosure Bar ..................................... 15

        2.  Relator's FCA Claims Were Publicly Disclosed ................ 16

        3.  The Claims in the Report and First Amended Complaint are Close Enough in Kind and Degree to Have Put The Government on Notice to Investigate ................................. 16

        4.  Relator Is Not an Original Source ..................................... 18

    B.  Relator Failed to Plead Any Claims ........................................... 19

        1.  False Certification (Counts I and II) ................................. 19

        2.  Reverse False Claim (Count III) ...................................... 21

    C.  Relator Failed to Plead Any of His Claims With Particularity .......... 22

    D.  Relator Should Not Be Given Leave to Amend Again ................. 23

V.  CONCLUSION ................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) ................................................................. 15

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) .................................................................... 15

*United States ex rel. Brooks v. Trillium Cmty. Health Plan, Inc.,*
No. 6:14-CV-01424-AA, 2016 WL 1725300 (D. Or. Apr. 29, 2016) ............... 21

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.,*
637 F.3d 1047 (9th Cir. 2011) ........................................... 15, 23, 24

*United States ex rel. Campie v. Gilead Scis., Inc.,*
862 F.3d 890 (9th Cir. 2017) ........................................................ 20

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
598 F.3d 1115 (9th Cir. 2010) ................................................ 14, 15

*Foman v. Davis,*
371 U.S. 178 (1962) .................................................................... 24

*United States ex rel. Hendow v. Univ. of Phoenix,*
461 F.3d 1166 (9th Cir. 2006) ...................................................... 22

*Kendall v. Visa U.S.A., Inc.,*
518 F.3d 1042 (9th Cir. 2008) ...................................................... 24

*Malhotra v. Steinberg,*
770 F.3d 853 (9th Cir. 2014) ........................................................ 16

*U.S. ex rel. Mateski v. Raytheon Co.,*
816 F.3d 565 (9th Cir. 2016) .................................................. 16, 19

*Mendiondo v. Centinela Hosp. Med. Ctr.,*
521 F.3d 1097 (9th Cir. 2008) ...................................................... 15

*Safe Air for Everyone v. Meyer,*
373 F.3d 1035 (9th Cir. 2004) ...................................................... 15

*United States ex rel. Solis v. Millennium Pharm., Inc.,*
885 F.3d 623 (9th Cir. 2018) .................................................. 17, 18

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*U.S. v. Corinthian Colleges*,
  655 F.3d 984 (9th Cir. 2011) ...................................................................... 20

*Ebeid ex rel. U.S. v. Lungwitz*,
  616 F.3d 993 (9th Cir. 2010) ...................................................................... 20

*United States v. Celgene Corp.*,
  226 F. Supp. 3d 1032 (C.D. Cal. 2016) ...................................................... 22

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
  136 S. Ct. 1989 (2016) .......................................................................... 20, 22

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .................................................................... 23

**Statutes**

31 U.S.C. § 3729(a)(1)(A) ............................................................................ 16

31 U.S.C. § 3729 (a)(1)(B) ........................................................................... 16

31 U.S.C. § 3729(a)(1)(G) ............................................................................ 23

31 U.S.C. § 3729(b)(4) .................................................................................. 22

31 U.S.C. § 3730 (b)(1) ................................................................................. 16

31 U.S.C. § 3730(e)(4)(A) ....................................................................... 16, 17

31 U.S.C. § 3730(e)(4)(B) ....................................................................... 19, 21

**Other Authorities**

Federal Rule of Civil Procedure 4(m) ............................................................. 9

Federal Rules of Civil Procedure Rule 9 .......................................... 9, 15, 21, 23

Rule 12(b)(1) ............................................................................................ 14, 15

Rule 12(b)(6) .................................................................................................. 15

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Relator Frank Adomitis's First Amended Complaint for Violation of the Federal False Claims Act ("FCA") against Community Memorial Health System, dba Ojai Valley Community Hospital[1] ("OVCH") should be dismissed for lack of subject matter jurisdiction, failure to state a claim, and failure to plead fraud with particularity. Although Relator filed a First Amended Complaint in response to OVCH's Motion to Dismiss his original Complaint, he failed to correct the deficiencies in his original Complaint. In his First Amended Complaint, Relator still contends that OVCH does not meet the requirements to qualify for Critical Access Hospital ("CAH") certification. From that premise, Relator incorrectly concludes that OVCH must have made unidentified false representations and submitted unidentified false claims to and/or was overpaid by the government in violation of the FCA. But Relator's general, conclusory allegations do not withstand scrutiny, and the First Amended Complaint should be dismissed without leave to amend and with prejudice as to Relator.

First, the FCA's public disclosure bar deprives this Court of subject matter jurisdiction. Relator's allegations were publicly disclosed years before he initiated this action against OVCH, and Relator is not an original source. Relator contends that OVCH does not meet the location and distance requirements to qualify as a CAH. However, in 2013—four years before Relator filed the First Amended Complaint—the U.S. Department of Health and Human Services issued a report explaining that the majority of CAHs did not meet the location and distance requirements to be a CAH. Relator's First Amended Complaint follows the framework of that 2013 report and relies on otherwise publicly available

---

[1] In 2006, Ojai Valley Community Hospital, a California Corporation, was merged with Community Memorial Health System. Community Memorial Health System is the surviving corporation following the merger.

information. Moreover, Relator does not allege, and cannot allege, that he is the original source of any of the information. Accordingly, the public disclosure bar applies and deprives this Court of subject matter jurisdiction.

Second, Relator failed to allege the required elements to state a claim upon which relief can be granted under the FCA. He failed to identify any false statements or fraudulent conduct. He also failed to allege the required scienter and materiality.

Third, Relator failed to allege his claims with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure. Relator merely makes general, unspecified, conclusory allegations. Such allegations are insufficient to state any claim based on allegations of fraud, including claims under the FCA.

For these reasons, and as discussed more fully below, Relator's First Amended Complaint should be dismissed without leave to amend and with prejudice as to Relator.

## II.    BACKGROUND AND STATEMENT OF FACTS

### A.    Procedural Background

Relator filed his original Complaint on September 21, 2017, and the government quickly declined to intervene. *See* Dkt. No. 5. Subsequently, on December 19, 2017, the Court issued an order unsealing the case and ordering the Relator to serve the Complaint on OVCH. *See* Dkt. No. 6. Under Federal Rule of Civil Procedure 4(m), Relator then had 90 days—i.e., until March 19, 2018—to effect service. But Relator did not request that the clerk issue a summons until March 20, 2018. Relator then served OVCH on March 29, 2018. OVCH filed a Motion to dismiss on April 19, 2018. Dkt. No. 12. Rather than contest the Motion, Relator filed the First Amended Complaint on May 14, 2018.  Dkt. No. 17. In the First Amended Complaint, Relator abandoned his unjust enrichment claim, but the core substance of the remaining claims are unchanged.

**B.      Relator's Allegations About the Medicare Reimbursement Program and the Critical Access Hospital Framework**[2]

Relator's core allegation is that OVCH should not have been certified as a CAH under the CAH framework. *See* Dkt. No. 17, First Am. Compl. ¶¶ 13-23. The U.S. Department of Health and Human Services, through the Centers for Medicare and Medicaid Services ("CMS"), administers the Medicare program, including the CAH framework. *Id.* ¶ 13. In 1997, the Balanced Budget Act created a CAH "certification to ensure that hospital care is accessible to beneficiaries in rural communities." *Id.* ¶ 14. "CAHs are reimbursed differently by Medicare than other acute care hospitals. CAHs receive federal reimbursement incentives designed to attract hospital providers to communities that would otherwise have difficulty receiving hospital care." *Id.* ¶ 15.

Relator alleges that "[h]ospitals must meet specific requirements in order to qualify for the CAH certification and receive the favorable Medicare reimbursements." *Id.* ¶ 17. According to Relator, two of the requirements that CAHs must meet are location-related. CAHs allegedly must be both (1) a minimum distance from other hospitals and (2) in a rural area or in an area that is treated as rural. *Id.* ¶¶ 18-20. Relator contends that hospitals can meet the minimum distance requirement "by being located more than a 35-mile drive from a hospital or another CAH or … by being located more than a 15-mile drive from a hospital or another CAH in areas of mountainous terrain or areas where only secondary roads are available." *Id.* ¶ 19. Relator further alleges that CAHs must meet additional requirements, including, for example, that "CAHs cannot have more than 25 beds that are used for acute care or 'swing-bed' patients." *Id.* ¶ 21.

---

[2] For purposes of its Motion to Dismiss only, and within the confines of the legal standard for a motion to dismiss, OVCH recounts—but does not admit that they are accurate or concede to—Relator's allegations.

### C.  Department of Health and Human Services' 2013 Report: Most Critical Access Hospitals Do Not Meet the Location Requirements

Because of a U.S. Department of Health and Human Services' public August 2013 report (the "Report"), it is well known that the majority of CAHs do not meet the alleged location requirements that Relator addresses in his First Amended Complaint. In August 2013, the Department of Health and Human Services, Office of Inspector General issued a report that most CAHs do not meet the location requirements. *See* Request for Judicial Notice ("Req. Jud. Not."), Ex. A. The Report found: "Nearly two-thirds of CAHs would not meet the location requirements …. The vast majority of these CAHs would not meet the distance requirement." *Id.* at 12.

Based on its findings, the Report recommended that "CMS should ensure that the only CAHs to remain certified would be those that serve beneficiaries who would otherwise be unable to reasonably access hospital services." *Id.* at "Executive Summary" (second page). In other words, as of August 2013, it was public knowledge that the majority of CAHs did not meet the location requirements outlined above, but the Department of Health and Human Services recognized that CMS may still want to certify a hospital as a CAH even if it did not meet the location requirements.

### D.  Procedures for CAH Approval and Recertification

Hospitals like OVCH do not determine whether they meet the requirements—including the location and distance requirements—to be a CAH. Instead, there is a thorough application, survey, and approval process for a hospital to become a CAH. CMS's regional offices, working with state agencies, determine whether hospitals meet the requirements. "A prospective CAH must be surveyed by the SA [state agency] and be in compliance with the CoPs [conditions of participation] for CAHS at 42 CFR Part 485 subpart F, *before it can be approved*

1    *for participation in Medicare as a CAH provider.*" Req. Jud. Not., Ex. B § 2256

2    (RO Procedures for CAH Approval) (emphasis added).

3         CMS's State Operations Manual also provides specific procedures and

4    guidance regarding the regional office's verification of the location and distance

5    requirements *before* approving a hospital as a CAH:

6              A hospital applying for CAH certification should **not** be

7              surveyed until after the RO [regional office] determined

8              that the applicant is compliant with the CAH location and

9              distance requirements. If the survey is conducted prior to

10             the RO making a determination regarding the applicant's

11             compliance with the location and distance requirements,

12             and the RO finds that the applicant is noncompliant, the

13             application must be denied.

14   *Id.* § 2256A (Note to Verification Criteria) (emphasis in original).

15        Only after a thorough evaluation of a hospital—and only if it is found to

16   comply with the conditions of participation, including the location and distance

17   requirements—is a hospital notified that it has been approved as a CAH. The State

18   Operations Manual explains:

19             When the facility is found to be in full compliance with

20             the CoPs in 42 CFR Part 485, Subpart F, or has submitted

21             an acceptable Plan of Correction, the RO notifies the

22             facility in writing by sending [a] letter … stating the

23             facility has been approved for participation.... Do not

24             issue the letter until the facility is in compliance with all

25             the CoPs.

26   *Id.* § 2256B (Notification).

27        Further, there are specific requirements for recertifying a hospital as a CAH,

28   which include the regional office evaluating and verifying the CAH's compliance

1  with the location and distance requirements. A February 12, 2016, memorandum

2  from CMS explains that regional offices determine whether the CAH meets the

3  location and distance requirements:

4          Annually, the RO must request from each State

5  Agency (SA) a list of all CAHs expected to undergo a

6  recertification survey over the next 12 months…. Prior to

7  the date of an SA or Accrediting Organization (AO) CAH

8  recertification survey, the RO must determine whether the

9  CAH meets the status and location requirements.

10  Assessing the location requirements must include

11  evaluating the distance of any acute care facilities from

12  that of the CAH…. The RO must complete a CAH

13  Recertification Checklist: Rural and Distance or

14  Necessary Provider Verification (copy attached) for

15  evaluating, determining, and documenting compliance

16  with the CAH location-related Conditions of Participation

17  (CoPs)….

18          Once the RO has made the determination that a

19  particular CAH is in current compliance with the rural

20  status and distance requirements, it must contact the

21  SA/AO to advise them that a recertification or

22  reaccreditation survey may be conducted....

23  Req. Jud. Not., Ex. C at 2.

24      **E.**    **Relator's Allegations Regarding Ojai Valley Community Hospital**

25          Against this general backdrop, Relater alleges that in February 2014—at least

26  five months after the August 2013 public report that the majority of CAHs did not

27  meet the location and distance requirements—OVCH was certified as a CAH. Dkt.

28

No. 17, First Am. Compl. ¶ 24. And OVCH allegedly began holding "itself out to be a CAH serving a rural area in Ojai Valley …." *Id.*

Because Relator believes that OVCH should not have been certified as a CAH, Relator summarily concludes that OVCH must have committed fraud and engaged in fraudulent practices in violation of the FCA. *Id.* ¶¶ 24-39. However, Relator failed to allege anything about the application, survey, and approval process that OVCH completed to become a CAH. Relator does not allege what OVCH disclosed, the representations that it made, or the process that it went through before it was approved as a CAH. *See generally id.* Relator also failed to allege who made any allegedly fraudulent representations or when any allegedly fraudulent representations were made. *Id.*

Without specificity, Relator generally alleges that OVCH is not designated as a "necessary provider" CAH, "does not meet the distance requirements for CAH certification," and has too many beds to be a CAH. *Id.* ¶¶ 24-28. Relator then concludes that some unnamed person or persons at OVCH filed allegedly false cost reports and signed standard CMS certification and compliance forms with unidentified false, material representations because OVCH allegedly did not meet the distance requirements to be certified as a CAH. *Id.* ¶¶ 29-39. According to Relator, OVCH thereby "substantially overcharged, or caused others to overcharge, the Government for inpatient and outpatient services provided to Medicare beneficiaries. As a result of this misrepresentation, the Government overpaid for such services." *Id.* ¶ 37. Relator thus concludes that OVCH violated the FCA. *Id.* ¶¶ 40-53.

## III.   LEGAL STANDARD

### A.   Rule 12(b)(1): Lack of Subject Matter Jurisdiction

Relator, as the party asserting federal subject matter jurisdiction, "bears the burden of proving its existence." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511

1  U.S. 375, 377 (1994)). Without subject matter jurisdiction, a federal district court

2  cannot adjudicate the case before it. *See generally id.*

3  "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for*

4  *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack is limited

5  to the complaint, but a factual attack is not. When resolving a factual attack, "the

6  district court may review evidence beyond the complaint without converting the

7  motion to dismiss into a motion for summary judgment. The court need not

8  presume the truthfulness of the plaintiff's allegations." *Id.* (citations omitted).

9  ### B.  <u>Rule (12)(b)(6): Failure to State a Claim</u>

10  If a complaint "lacks a cognizable legal theory or sufficient facts to support a

11  cognizable legal theory," then it should be dismissed. *Mendiondo v. Centinela*

12  *Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citing *Balistreri v. Pacifica*

13  *Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990)). Under Rule 12(b)(6), factual

14  allegations must be enough to "raise a right to relief above a speculative level." *Bell*

15  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[L]abels and conclusions,

16  and a formulaic recitation of a cause of action's elements will not do." *Id.* at 545.

17  "[D]etermining whether a complaint states a plausible claim is context specific,

18  requiring the reviewing court to draw on its experience and common sense."

19  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009).

20  Additionally, "[t]he heightened pleading standard of Rule 9(b) governs FCA

21  claims." *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054

22  (9th Cir. 2011) (citing *Bly–Magee v. California*, 236 F.3d 1014, 1018 (9th Cir.

23  2001)). "To satisfy Rule 9(b), a pleading must identify 'the who, what, when,

24  where, and how of the misconduct charged,' as well as 'what is false or misleading

25  about [the purportedly fraudulent] statement, and why it is false.'" *Id.* at 1055.

26  Moreover, "claims of fraud or mistake—including FCA claims—must, in addition

27  to pleading with particularity, also plead plausible allegations." *Id.*

28

## IV.   ARGUMENT

### A.   The Court Lacks Subject Matter Jurisdiction

#### 1.   The FCA's Public Disclosure Bar

The FCA prohibits "knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim for payment or approval; [or] knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim" to the federal government. 31 U.S.C. § 3729(a)(1)(A), (B). The FCA permits private individuals, referred to as "relators," to bring suit—i.e., a qui tam suit—on the government's behalf against entities that have violated the FCA's prohibitions. *Id.* § 3730 (b)(1).

"The FCA's public disclosure bar deprives federal courts of subject matter jurisdiction when a relator alleges fraud that has already been publicly disclosed, unless the relator qualifies as an 'original source.'" *U.S. ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 569 (9th Cir. 2016). The public disclosure bar is triggered if: (1) the disclosure occurred via a means specified in the FCA[3]; (2) the disclosure was public; and (3) the relator's action is based on the publicly-disclosed information. *Id.* at 570; *see also Malhotra v. Steinberg*, 770 F.3d 853, 858 (9th Cir. 2014). "[F]or a relator's allegations to be 'based upon' a prior public disclosure, 'the publicly disclosed facts need not be identical with, but only substantially similar to, the relator's allegations.'" *Mateski*, 816 F.3d at 573 (quoting *United States ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1199 (9th Cir. 2009), *overruled on other grounds by U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1128 n.6 (9th Cir. 2015)); *see also Malhotra v. Steinberg*, 770 F.3d 853, 858 (9th Cir. 2014) (stating that the phrase "based upon" means "substantially similar to").

---

[3] The means of disclosure include: "(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media." 31 U.S.C. § 3730(e)(4)(A).

2.      **Relator's FCA Claims Were Publicly Disclosed**

Relator's FCA claims here were publicly disclosed and are therefore barred. Relator filed his initial Complaint on September 21, 2017—more than four years after the U.S. Department of Health and Human Services' public August 2013 Report about CAHs that purportedly did not meet the distance and location requirements to be CAHs. *See* Req. Jud. Not., Ex. A. The Report fits squarely within the FCA's public disclosure requirements. *See* 31 U.S.C. § 3730(e)(4)(A) (stating that a Federal report, hearing, audit, or investigation qualifies as a public disclosure under the FCA).

The Report is the basis and framework for Relator's FCA claims, and Relator does not possess any non-public information to support his claims. Relator does not allege, and cannot allege, that he worked at OVCH or has any insider information. He simply has not made any allegations that are not based on publicly available and disclosed information.

3.      **The Claims in the Report and First Amended Complaint are Close Enough in Kind and Degree to Have Put The Government on Notice to Investigate**

Given the 2013 Report, when OVCH was approved as a CAH in 2014, the government knew about, and publicly disclosed, the alleged issues that Relator raises in his First Amended Complaint. Dkt. No. 17, First Am. Compl. ¶ 24. "A prior disclosure and an allegation may be substantially similar when the prior public disclosure put the government 'on notice to investigate the fraud before the relator filed his complaint.'" *United States ex rel. Solis v. Millennium Pharm., Inc.*, 885 F.3d 623, 626 (9th Cir. 2018) (quoting *U.S. ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 574 (9th Cir. 2016)).

Here, Relator's claims in the First Amended Complaint are substantially similar to the prior public disclosures. In addition to the Report, the Regional Inspector General, Office of Evaluation and Inspections, spoke with the Report's

1   legal program analyst, Brian Jordan, in a public interview in 2013. *See* Req. Jud.

2   Not., Ex. D (Transcript for audio podcast: Critical Access Hospital Designations).

3   Because nearly two-thirds of existing CAHs would not have met the CAH location

4   requirements in 2011, Mr. Jordan noted "Medicare and beneficiaries could have

5   saved more than 1.3 million dollars for each dedesignated critical access hospital.

6   By dedesignating critical access hospitals less than 15 miles from the nearest

7   hospital, Medicare would have saved 449 million dollars." *Id*. Mr. Jordan also

8   "recommend[ed] that CMS periodically check if each critical access hospital still

9   provides services that rural beneficiaries can't easily get somewhere else, and

10  therefore deserves the increased financial support from Medicare and

11  beneficiaries." *Id*. Finally, Mr. Jordan told the Regional Inspector General that

12  necessary providers be required to meet the distance requirement. *Id*.

13      The claims in the Report and interview, and in the First Amended Complaint

14  are "close enough in kind and degree to have put the government on notice to

15  investigate"—before Relator filed his First Amended Complaint and even before

16  the government approved OVCH as a CAH in 2014. *United States ex rel. Solis v.*

17  *Millennium Pharm., Inc.*, 885 F.3d 623, 627 (9th Cir. 2018). Moreover, "[t]he

18  absence of any explicit allegation of wrongdoing in the prior public disclosure 'is

19  simply of no moment' so long as 'the material transactions giving rise to the

20  [defendant's] allegedly unlawful . . . schemes were publicly disclosed.'" *Id*.

21  (quoting *A-1 Ambulance Serv., Inc. v. California*, 202 F.3d 1238, 1245 (9th Cir.

22  2000)).

23      Relator's allegations are not "different in kind" from the disclosures in the

24  Report. The Report directly and explicitly alerted the government to allegations of

25  the same specific area of alleged fraud, namely that hospitals that did not meet the

26  distance requirements for CAH certification nonetheless benefited from CAH's

27

28

reimbursement rate.[4] Relator's allegations concerning OVCH are not "genuinely new" and do not contain "material information of fraud" never before publicly alleged. *Mateski*, 816 F.3d at 579.

Additionally, pursuant to CMS's policies and procedures, OVCH would have been approved as a CAH only after the regional office and state agency independently confirmed that OVCH met all the conditions of participation to the government's satisfaction—including distance and location requirements. *See* Req. Jud. Not., Ex. B § 2256 (RO Procedures for CAH Approval). Moreover, during every recertification, the regional office determines whether a CAH like OVCH "is compliant with the CAH location and distance requirements." *Id.* § 2256A; *see also* Req. Jud. Not., Ex. C. This all occurs within the context and backdrop of the August 2013 Report.

Here, Relator's allegations are not merely substantially similar to the Department of Health and Human Services' August 2013 Report; they are nearly identical. The publicly-disclosed Report is the basis and framework for Relator's First Amended Complaint. Accordingly, the public disclosure bar deprives this Court of subject matter jurisdiction over Relator's First Amended Complaint unless he qualifies as an original source.

### 4.     Relator Is Not an Original Source

To be an original source, Relator must meet the requirements of 31 U.S.C. § 3730(e)(4)(B), but he does not. An "original source" is an individual who either (1) before a public disclosure, voluntarily disclosed to the government the information on which FCA allegations or transactions are based, or (2) has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions. *See* 31 U.S.C. § 3730(e)(4)(B).

---

[4] *See* Req. Jud. Not., Ex. D (Transcript for audio podcast: Critical Access Hospital Designations) (explaining CAH-designated hospitals receive higher Medicare reimbursements for most services compared to regular hospitals and are paid 101 percent of their costs).

1    Relator wholly failed to allege any facts that could give rise to the conclusion

2    that he is an original source. He has not alleged, and cannot allege, that he has any

3    knowledge of the application, survey, and approval process that resulted in

4    OVCH's approval as a CAH. He has not alleged, and cannot allege, anything about

5    the specific disclosures and representations that OVCH made when it was approved

6    as a CAH. Relator has not alleged anything but generally available, public

7    information. Accordingly, Relator is not, and cannot be, an original source.

8        **B.    Relator Failed to Plead Any Claims**

9            **1.    False Certification (Counts I and II)**

10   Relator also failed to allege false certification claims under the FCA against

11   OVCH. *See* Dkt. No. 17, First Am. Compl. ¶¶ 40-49. "The essential elements of an

12   FCA claim are (1) a false statement or fraudulent course of conduct, (2) made with

13   requisite scienter, (3) that was material, causing (4) the government to pay out

14   money or forfeit moneys due." *U.S. v. Corinthian Colleges*, 655 F.3d 984, 992 (9th

15   Cir. 2011). The FCA also recognizes an implied false certification theory as a basis

16   for liability where two conditions are satisfied: First, the defendant "must not

17   merely request payment, but also make specific representations about the goods or

18   services provided." *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890,

19   902 (9th Cir. 2017) (citing *Universal Health Servs., Inc. v. United States ex rel.*

20   *Escobar*, 136 S. Ct. 1989, 2001 (2016)). Second, the defendant's "failure to

21   disclose noncompliance with material statutory, regulatory, or contractual

22   requirements must 'make[] those representations misleading half-truths.'" *Id.* at 903

23   (quoting *Escobar*, 136 S. Ct. at 2001).[5]

24   Here, Relator failed to allege any FCA false certification claim against

25   OVCH for at least the following three reasons.

26   ――――――――――――――――

27   [5] The United States' Statement of Interest (Dkt. No. 16) concerning the Supreme
     Court's ruling in *Escobar* and its impact on *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d

28   993 (9th Cir. 2010) has no bearing on whether Relator properly alleged materiality
     and scienter in his FCA claims, as discussed more fully below.

First, Relator failed to identify and allege any specific false statements, "misleading half-truths," or fraudulent conduct by OVCH. *See generally* Dkt. No. 17, First Am. Compl. ¶¶ 40-49. "The false statement element is the heart of the FCA claim: 'Violations of laws, rules, or regulations alone do not create a cause of action under the FCA. It is the false *certification* of compliance which creates liability when certification is a prerequisite to obtaining a government benefit.'" *United States ex rel. Brooks v. Trillium Cmty. Health Plan, Inc.*, No. 6:14-CV-01424-AA, 2016 WL 1725300, at *6 (D. Or. Apr. 29, 2016) (quoting *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996)) (emphasis in original). The First Amended Complaint does not allege any details regarding when OVCH made certifications to the federal government, how they were made, or what they contained. Relator fails to properly plead the FCA claims and, as discussed below, cannot meet the Rule 9(b) pleading requirements.

Second, Relator failed to allege that any false statement, misleading half-truth, or fraudulent conduct was made or carried out with the required scienter. To satisfy the FCA's scienter requirement, a relator must allege that the defendant acted "knowingly." *See* 31 U.S.C. § 3729(a)(1)(A), (B). Knowingly means the entity "has actual knowledge of the information" or "acts in deliberate ignorance" or "in reckless disregard" of the truth or falsity of that information." *Id.* § 3729(b)(1)(A). Knowledge does not require "proof of specific intent to defraud." *Id.* § 3729(b)(1)(B). Here, Relator failed to allege that OVCH was aware or should be been aware that it allegedly did not meet the requirements to be a CAH, especially given the thorough application, survey, and approval process that OVCH went through to become a CAH. *See generally* Dkt. No. 17, First Am. Compl.; Req. Jud. Not., Ex. B § 2256 (RO Procedures for CAH Approval).

Third, Relator failed to allege that any false statement, misleading half-truth, or fraudulent conduct by OVCH was material to the government. Under the FCA "'material' means having a natural tendency to influence, or be capable of

influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). To establish materiality, the false statement or conduct must be "material to the government's decision to pay out moneys to the claimant." *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1172 (9th Cir. 2006). The "key question is whether the government is likely to attach significance to the [statutory, regulatory, or contractual] requirement in deciding whether to tender payment." *United States v. Celgene Corp.*, 226 F. Supp. 3d 1032, 1049 (C.D. Cal. 2016) (citing *Escobar*, 136 S. Ct. at 2002-03).

Here, Relator failed to allege how OVCH's unidentified representations were material, especially given the 2013 Report that indicates that CMS may decide to maintain CAHs that do not meet the location and distance requirements. *See generally* Dkt. No. 17, First Am. Compl. ¶¶ 40-49; Req. Jud. Not., Ex. A, at 12. Instead, Relator alleges only that Form 2252 certifications that OVCH submitted were material to Medicare's decision to reimburse OVCH at CAH rates. *Id.* ¶¶ 29-35, 40-49. But this is insufficient to support a conclusion of materiality. As the U.S. Supreme Court explained in *Escobar*: "The materiality standard is demanding…. A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Escobar*, 136 S. Ct. at 2003. Accordingly, Relator failed to allege materiality.

In sum, Relator failed to allege the essential elements of a false certification claim under the FCA. Accordingly, Counts I and II of the First Amended Complaint should be dismissed.

## 2.   Reverse False Claim (Count III)

Relator also failed to allege a reverse false claim for OVCH's purported failure to refund overpayments owed to the government. Dkt. No. 17, First Am. Compl. ¶¶ 50-53. The FCA imposes liability on a person or entity who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an

obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). Relator purports to allege a reverse false claim for OVCH's purported failure to refund overpayments owed to the government. Dkt. No. 17, First Am. Compl. ¶¶ 50-53. But because Relator failed to allege any false certification claim, he also failed to allege that the government overpaid OVCH. Moreover, Relator failed to allege that there was any false statement, misleading half-truth, or fraudulent conduct by OVCH with the required scienter that was material to the government, and resulted in any alleged failure by OVCH to refund overpayments to the government. *See generally id.* Accordingly, Count III of the First Amended Complaint should be dismissed.

### C.   Relator Failed to Plead Any of His Claims With Particularity

All of Relator's claims (Counts I through III) sound in fraud and therefore must meet the heightened pleading standards of Rule 9 of the Federal Rules of Civil Procedure. *See Cafasso,* 637 F.3d at 1054 ("The heightened pleading standard of Rule 9(b) governs FCA claims."); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) ("When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim."). "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso*, 637 F.3d at 1055 (affirming dismissal of complaint).

Relator failed to allege Counts I through III of the First Amended Complaint with particularity, as required. Relator generally alleges that OVCH does not qualify for CAH certification, submitted CMS Form 2252, received reimbursement as a CAH, and charged the government. *See generally* Dkt. No. 17, First Am.

Compl. Relator has not alleged, and cannot allege, the required who, what, when, where, and how of the alleged fraud. Relator's allegations are devoid of the required details and particularity. Relator does not, and cannot, allege that he ever worked at OVCH or observed practices, policies, or procedures at the hospital. He does not, and cannot, allege what representations OVCH made when it was approved as a CAH or why any representations were allegedly false. And Relator does not, and cannot, allege who made any allegedly false representations or half-truths, or when such statements were made. He also does not, and cannot, allege who engaged in some unstated, allegedly fraudulent conduct, when that unstated conduct occurred, and why it was fraudulent. He also failed to allege that any false claims were actually submitted or any details of any allegedly false claims. *See generally id.* Because Relator failed to allege any claims with the required specificity and particularity, his First Amended Complaint should be dismissed in its entirety.

## D. <u>Relator Should Not Be Given Leave to Amend Again</u>

As discussed above, the Court lacks subject matter jurisdiction. Further, Relator has amended his claims once already in response to OVCH's original Motion to Dismiss. Through this voluntary amendment, Relator revealed that he does not have a sufficient bases to state any FCA claims against OVCH. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining district courts should consider repeated failure to cure deficiencies by previous amendment when deciding whether to grant leave to amend). "Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). Accordingly, Relator's First Amended Complaint should be dismissed without leave to amend and with prejudice as to Relator.

1  **V.      <u>CONCLUSION</u>**

2          For the reasons set forth above, Relator's First Amended Complaint should

3  be dismissed for lack of subject matter jurisdiction, failure to state a claim, and

4  failure to plead fraud with particularity. OVCH respectfully requests that the Court

5  dismiss the First Amended Complaint without leave to amend and with prejudice as

6  to Relator.

7
8  Dated:      May 29, 2018               **ARENT FOX LLP**

9
10                                        By: /s/ Jeffrey R. Makin
                                          JEFFREY R. MAKIN
11                                        ALEXANDER S. BIRKHOLD
                                          Attorneys for Defendant
12                                        OJAI VALLEY COMMUNITY
                                          HOSPITAL, a d/b/a of COMMUNITY
13                                        MEMORIAL HEALTH SYSTEM, a
                                          California Nonprofit Public Benefit
14                                        Corporation

15

16

17

18

19

20

21

22

23

24

25

26

27

28