NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DAVID K. BARRETT
Assistant United States Attorney
Chief, Civil Fraud Section
KENT A. KAWAKAMI
Assistant United States Attorney
California State Bar No. 149803
     Room 7516, Federal Building
     300 N. Los Angeles Street
     Los Angeles, California 90012
     Tel: (213) 894-4858
     Fax: (213) 894-7819
     Email: kent.kawakami@usdoj.gov

Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. FRANK ADOMITIS,<br><br>        Plaintiffs,<br><br>        v.<br><br>OJAI VALLEY COMMUNITY HOSPITAL,<br><br>        Defendant. | No. CV 17-06972 JGB(KKx)<br><br>UNITED STATES' STATEMENT OF INTEREST REGARDING ISSUES RAISED IN DEFENDANT'S MOTION TO DISMISS RELATOR'S FIRST AMENDED COMPLAINT<br><br>Date:  July 30, 2018<br>Time:  9:00 am<br>Court:  Hon. Jesus G. Bernal<br>          Riverside, Courtroom 1 |

## I.     INTRODUCTION

Relator Frank Adomitis ("Relator") brought this *qui tam* action under the False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA"), alleging that the defendant violated the FCA by filing cost reports with Medicare for reimbursement for health care services at rates authorized for critical access hospitals ("CAHs"), when it did not meet the requirements for CAH certification.  The United States declined to intervene in the action (Dkt. No. 6) and Relator elected to proceed.  *See* 31 U.S.C. § 3730(b)(4).  On April 19, 2018, the defendant filed a Motion to Dismiss Relator's Complaint (Dkt. No. 12), and the United States filed a Statement of Interest (Dkt. No. 16) regarding that motion.  On May 14, 2018, Relator filed the First Amended Complaint ("FAC") (Dkt. No. 17).  On May 29, 2018, the defendant filed a Motion to Dismiss Relator's FAC ("Motion") (Dkt. No. 18) without leave to amend and with prejudice as to Relator.

The United States respectfully submits this Statement of Interest, pursuant to 28 U.S.C. § 517,[1] to address an issue raised by the Motion.  Namely, in the Ninth Circuit, implied false certification liability under the FCA does not require a defendant to submit a claim with specific representations about services provided.

The United States is responsible for enforcement of the FCA, the primary tool in the United States' ongoing effort to combat fraud affecting the public fisc.  *See, e.g., U.S. ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 745 (9th Cir. 1993).  While the United States has declined to intervene in this case, it remains the real party in interest, entitled to the majority of any damages and penalties that may be recovered on its behalf.  31 U.S.C. § 3730(d); *see also U.S. ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1217 n.8 (9th Cir. 1996).  The United States also has a substantial interest in the legal contentions advanced in the Motion because the Court's rulings with respect to such contentions may affect the development of FCA law.  The United States is not taking a position on any

---

[1] 28 U.S.C. § 517 authorizes the Attorney General of the United States to attend to the interests of the United States in any action in federal or state court.

- 1 -

1   arguments or issues raised in connection with the Motion other than those addressed in

2   this Statement of Interest.

3   **II.     ARGUMENT**

4       **A.     Implied False Certification Liability Does Not Require Specific**

5           **Representations**

6       The Ninth Circuit has held that claims for payment, without more, impliedly

7   certify that the claimant has complied with all material conditions of payment.  In *Ebeid*

8   *ex rel. U.S. v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010), the Ninth Circuit stated,

9       Implied false certification occurs when an entity has previously undertaken

10      to expressly comply with a law, rule, or regulation, and that obligation is

11      *implicated by submitting a claim* for payment even though a certification of

12      compliance is not required in the process of submitting the claim.

13  *Id.* at 998 (emphasis added).

14      In its Motion, the defendant argues that the "FCA also recognizes an implied false

15  certification theory as a basis for liability where two conditions are satisfied: First, the

16  defendant 'must not merely request payment, but also make *specific representations*

17  about the goods or services provided.'"  Motion*,* at 19:15-18 (emphasis added), citing

18  *U.S. ex rel. Campie v. Gilead Scis., Inc.,* 862 F.3d 890, 902 (9th Cir. 2017) (citing *Univ.*

19  *Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2001 (2016)).

20      To the contrary, the Supreme Court in *Escobar* did not abrogate *Ebeid* and did not

21  require specific representations in the claims for payment.  The panel in *Campie* did not

22  consider or address the language in *Escobar* reserving judgment on the requirements for

23  implied certification claims.  That was at least in part because the *Campie* panel found

24  that the relator's claims satisfied the "two conditions" set forth in *Escobar* and the panel

25  thus had no occasion to consider this issue further.  Furthermore, *Campie* did not

26  impliedly overrule *Ebeid* and impose a rigid, two-part test for application of the implied

27  certification theory.

28

### 1. *Escobar* Did Not Overrule Ninth Circuit Precedent and Impose a "Specific Representation" Requirement for Implied Certification Claims

In *Escobar*, the Supreme Court validated the implied false certification theory of liability under the False Claims Act, confirming that a statement may be "false or fraudulent" under the FCA if it omits information necessary to keep it from being misleading, even if the statement itself contains no express untruths. The Court held that where "a defendant makes representations in submitting a claim but omits its violations of statutory, regulatory, or contractual requirements, those omissions can be a basis for liability if they render the defendant's representations misleading with respect to the goods or services provided." *Escobar*, 136 S. Ct. at 1999.

The parties in *Escobar*, and the United States as amicus curiae, vigorously disputed the circumstances under which an omission renders a claim misleading and therefore actionable under the FCA. On the one hand, the United States and the relators invoked the common-law rule that "'[a] representation stating the truth so far as it goes but which the maker knows or believes to be materially misleading because of his failure to state additional or qualifying matter' is actionable." *Id*. at 1999 (citing Restatement (Second) of Torts § 529, at 62 (Am. Law Inst. 1976)). Because "every submission of a claim for payment implicitly represents that the claimant is legally entitled to payment," the United States and the relators argued that "failing to disclose violations of material legal requirements renders the claim misleading." *Id*. at 1999-2000. On the other hand, the defendant in *Escobar* argued "that submitting a claim involves no representations," and thus relied on a different common-law rule: that "nondisclosure of legal violations is not actionable absent a special duty to exercise reasonable care to disclose the matter in question." *Id*. at 2000 (internal quotation marks omitted) (quoting Restatement (Second) of Torts § 551(1), at 119).

The Supreme Court found it unnecessary to decide which of these competing common-law principles most naturally applies to claims for payment submitted to the

1    government.  The Court stated that it "need not resolve whether all claims for payment

2    implicitly represent that the billing party is legally entitled to payment," because it found

3    that the claims in that case "d[id] more than merely demand payment."  *Escobar*, 136 S.

4    Ct. at 2000.  The Court explained that the defendant had "submitt[ed] payment codes

5    that corresponded to specific counseling services," and that its staff had submitted

6    "National Provider Identification numbers corresponding to specific job titles."  *Id.*

7    Those representations "were clearly misleading in context," because they suggested

8    (falsely) that the defendant was complying with the basic legal requirements governing

9    the payment of Medicaid claims for mental health counseling services.  *Id.*  The Court

10   thus ruled narrowly, holding

11             that the implied certification theory can be a basis for liability *at least where*

12             two conditions are satisfied:  first, the claim does not merely request

13             payment, but also makes specific representations about the goods or services

14             provided; and second, the defendant's failure to disclose noncompliance

15             with material statutory, regulatory, or contractual requirements makes those

16             representations misleading half-truths.

17   *Id.* at 2001 (emphasis added).

18        The Supreme Court did not establish a rigid, two-part test for application of the

19   implied certification theory.  While the Court made clear that the two conditions it

20   identified were sufficient for application of that theory, it had no need to resolve, and

21   therefore did not resolve, whether they were necessary.  In short, *Escobar* did not call

22   into question, much less overrule, Ninth Circuit precedent, *i.e.*, *Ebeid*, which previously

23   adopted the implied certification theory without requiring any "specific representations"

24   in the claims for payment.

25                    **2.    *Campie* Did Not Claim to Overrule *Ebeid***

26        In July 2017, after the Supreme Court's decision in *Escobar*, the Ninth Circuit

27   decided *Campie*.  *Campie* did not purport to overrule *Ebeid*, nor did *Campie* address the

28   Supreme Court's express statement in *Escobar* that it was not deciding whether a claim

for payment, without more, impliedly represents that the claimant has satisfied all conditions of payment, and is therefore actionable. *Escobar*, 136 S. Ct. at 2000. The parties in *Campie* never raised this issue, and thus *Campie* never considered or addressed *Escobar's* reservation language. This was the issue that *Ebeid* decided in the affirmative, and which remains unchanged by *Escobar*.

Thus, given that (1) *Campie* did not mention *Ebeid's* holding that the implied certification theory does not require any "specific representations" in the claims for payment; (2) the Supreme Court in *Escobar* reserved the issue decided in *Ebeid*; and (3) the parties in *Campie* did not brief whether *Ebeid* remained good law after *Escobar*, *Campie* should not be interpreted to have overruled *Ebeid*.

### 3. The Relator in *Campie* Met *Escobar's* Two-Part Test, So the *Campie* Panel Never Considered *Escobar's* Reservation of Judgment on the Requirements for Implied Certification Claims

Indeed, the Ninth Circuit in *Campie* did not consider or address the language in *Escobar* reserving judgment on the requirements for implied certification claims. Moreover, *Campie's* entire discussion of the conditions necessary for the implied certification theory was dicta. In *Campie*, that Ninth Circuit panel concluded that the relators "adequately satisfied the falsity requirement under a theory of implied false certification" when they alleged that the defendant made false statements about its compliance with Food and Drug Administration regulations regarding certain HIV drugs. *Campie*, 862 F.3d at 902. Further, the *Campie* relators adequately alleged that the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements made those representations misleading half-truths. *Id*. Because the relators met *Escobar's* two-part test, the *Campie* panel thus had no occasion to consider whether *Escobar* limited that theory to circumstances where a claim makes specific representations about the goods or services provided, much less to consider whether *Escobar* overruled *Ebeid*. In short, although there is language in *Campie* suggesting that *Escobar* established two conditions for implied certification claims, dicta in a case where the relevant issue was never squarely presented does not bind this Court.

On the contrary, to the extent *Campie* is inconsistent with *Ebeid*, the latter decision controls absent a finding (never made in *Campie*) that *Ebeid* is "clearly irreconcilable" with *Escobar*.

### 4. To Conclude that *Campie* Impliedly Overruled *Ebeid* Would Raise a Significant *Stare Decisis* Issue

Moreover, recognizing that *Campie* did not impliedly overrule *Ebeid* avoids a *stare decisis* problem that would otherwise arise: a Ninth Circuit panel cannot overrule a prior Ninth Circuit decision absent intervening higher authority that is clearly irreconcilable (i.e., either an intervening *en banc* Ninth Circuit decision or a Supreme Court decision). *Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (*en banc*); *see also Lair v. Bullock*, 798 F.3d 736, 745 (9th Cir. 2015) ("*Gammie* explained that three-judge panels are normally bound by the decisions of prior three-judge panels [except] 'where the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority.'") (quoting *Gammie*, 335 F.3d at 893).

Here, *Campie* did not purport to overrule *Ebeid*, and, in fact, only mentioned *Ebeid* once regarding a different point. *Campie*, 862 F.3d at 899. Nor is *Ebeid*'s holding "clearly irreconcilable" with intervening higher authority. To the contrary, there has been no intervening Ninth Circuit en banc decision that is inconsistent with *Ebeid*; and the Supreme Court in *Escobar* expressly reserved the issue decided in *Ebeid*, of whether claims for payment, without more, impliedly certify compliance with all material conditions of payment.

In fact, on January 18, 2017, the Ninth Circuit issued an order granting permission for an interlocutory appeal, from a case pending in the Northern District of California, of the specific issue: "Must the 'two conditions' identified by the Supreme Court in *Escobar* always be satisfied for implied false certification liability under the FCA, or does *Ebeid*'s test for implied false certification remain good law?" *Rose v. Stephens Institute*, 2016 WL 6393513 at *4 (N.D. Cal. Oct. 28, 2016) (order granting in part

motion to certify order for interlocutory appeal); permission to appeal granted *Rose v. Stephens Institute,* No. 16-80167 (9th Cir. Jan. 18, 2017) (Dkt. No. 8).

## III.    CONCLUSION

The United States respectfully requests that the Court find that *Ebeid* remains good Ninth Circuit law and that claims for payment, without more, impliedly certify that the claimant has complied with all material conditions of payment.

Dated: July 9, 2018                         Respectfully submitted,

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DAVID K. BARRETT
Assistant United States Attorney
Chief, Civil Fraud Section


     /s/ *Kent A. Kawakami*
KENT A. KAWAKAMI
Assistant United States Attorney
Attorneys for the United States of America