Esperanza Cervantes Anderson | SBN 197953
**LAW OFFICE OF ESPERANZA CERVANTES ANDERSON**
1037 North Allen Avenue
Pasadena, California 91104
Tel.:  (626) 219-6773
Fax:   (626) 389-8911

Attorney for Plaintiff Relator
FRANK ADOMITIS

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. FRANK ADOMITIS, an individual,<br><br>    Relator,<br><br>    v.<br><br>OJAI VALLEY COMMUNITY HOSPITAL; DOES 1 through 20, inclusive,<br><br>    Defendants. | Case No. 17-06972 JGB (KKx)<br><br>(Hon. Jesus G. Bernal)<br><br>**OPPOSITION OF PLAINTIFF-RELATOR FRANK ADOMITIS TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

# TABLE OF CONTENTS

**Page(s)**

I.   PRELIMINARY STATEMENT ................................................................... 4

II.  PROCEDURAL STATUS .......................................................................... 4

III. LEGAL STANDARD ................................................................................. 5

IV. ARGUMENT .............................................................................................. 5

    A.   Relator's Claims Are Not Barred by 'Public Disclosure' ...................... 5

    B.   Although Not Applicable, Relator Is An 'Original Source' ................. 10

    C.   Relator's Fraud Claims Are Adequately Framed .................................. 11

        1.   Relator Adequately Pleaded Scienter ......................................... 11

        2.   The Allegations of Fraud Are Particular ................................... 12

        3.   False Certification And '*Materiality*' ........................................ 13

    D.   Relator Adequately Pleaded Reverse FCA Violations .......................... 17

V.   RELATOR'S CONDITIONAL MOTION TO AMEND ................................ 18

VI. CONCLUSION .......................................................................................... 19

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Baylor County Hospital District v. Burwell*, 163 F.Supp.3d 372, 375 (N.D. Tex. 2016) ) .................................................................................................................... 17

*Bell Atlantic* v. *Twombly,* 550 U.S. 544 (2007) ............................................................... 5

*Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) ............... 12

*Foman v. Davis*, 371 U.S. 178 (1962) .................................................................... 18, 19

*In re GlenFed Inc. Sec. Litig.,* 42 F.3d 1541 (9th Cir. 1994) ........................................ 12

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) .............................................. 12

*Padilla* v. *Yoo,* 633 F. Supp. 2d 1005 (N.D. Cal. 2009) ................................................. 5

*Thomas v. Furness (Pac.) Ltd.*, 171 F.2d 434, 435 (9th Cir. 1948) ............................... 5

*Tuley v. Heyd*, 482 F.2d 590 (5th Cir. 1973) ............................................................... 19

*U.S. ex rel. Booker v. Pfizer, Inc.*, 9 F.Supp.3d 34 (D. Mass. 2014) ........................... 11

*U.S. ex rel. Rosales v. San Francisco Housing Authority*, 173 F.Supp.2d 987 (N.D. Cal. 2001) ............................................................................................................... 12

*U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.,* 532 F.3d 496 (6th Cir. 2008) ................... 5

*U.S. v. Kiewit Pacific Co.*, 41 F. Supp. 3d 796 (N.D. Cal. 2014) ................................. 11

*United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 110 (1st Cir. 2016) ................................................................................................................ 15

*United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1420 (9th Cir. Cal. 1991) ................................................................................................. 10

*United States ex rel. Hendow v. Univ. of Phx.*, 461 F.3d 1166, 1170 (9th Cir. 2006) .. 14

*United States ex rel. Lee v. Corinthian Colls*., 655 F.3d at 991 (9th Cir. 2011) .......... 12

*United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 916 (4th Cir. 2013) .......................................................................................................................... 9

*United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 2016 U.S. App. LEXIS 1729, *10 (3d Cir. Del. Feb. 2, 2016) .......................................... 9

*Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1416 (9th Cir. 1992) ....... 10

*Waste Control Specialists v. Envirocare of Texas, Inc.*, 199 F.3d 781 (5th Cir. 2000) ........................................................................................................................ 18

## **STATUTES**

31 United States Code
　　Section 3729..........................................................................................................1, 7, 9, 13

32 United States Code
　　Section 3740......................................................................................................................6

42 United States Code
　　Section 1320a..................................................................................................................13

42 United States Code
　　Section 1396......................................................................................................................9

## **RULES**

Federal Rule of Civil Procedure
　　Rule 12................................................................................................................. 1, 13, 14

Federal Rule of Civil Procedure
　　Rule 15.............................................................................................................................14

Federal Rule of Civil Procedure
　　Rule 9................................................................................................................................7

## **OTHER AUTHORITIES**

The 2010 amendments, P.L. 111-148, Title X, Subtitle A, § 10104(j)(2), 124 Stat.
　　90, substantially rewrote the public disclosure provision of §3730(e)(4)(A)..........................4

## I. PRELIMINARY STATEMENT

This is a claim under three sections of the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"). Defendant Ojai Valley Community Hospital's ("Ojai Hospital") motion challenges Plaintiff/Relator Frank Adomitis' claims of fraud within the meaning of the FCA related to its claimed status as a Critical Access Hospital ("CAH") by raising legal arguments pertaining to public disclosure[1], falsity, scienter, materiality, and a catch-all argument regarding particularity. But Relator's allegations satisfy each of the pleading requirements for FCA claims.

Ojai Hospital's motion should be denied.

## II. PROCEDURAL STATUS

Defendant describes late service of the initial complaint as required under Federal Rule of Civil Procedure 4(m), because service was *not* achieved within 90 days of filing. Yet Ojai Hospital does not seek expressly seek dismissal under 4(m) anywhere, nor in its prior motion to dismiss (ECF, Doc #12) and waived this issue. Perhaps this is because 4(b) permits the Court to alternatively order service within a fixed time period instead of dismissal – "*or* order that service be made within a specified time." *Id*.

As Defendant concedes service as effective on March 29, 2018, 99 days after filing of the initial complaint, or 9 days beyond a 4(m) dismissal. But this is not dispositive, as it must be "without prejudice" to Relators claims. Civil Rule 4(m) mandates that, if the court dismisses the action for failure to comply with the rule, it must be dismissed "without prejudice." It would be error for the Court to dismiss the original complaint "with prejudice" for insufficient service of process. *Thomas*

---

[1] As addressed *infra*, Public Disclosure Bar does *not* implicate this Court's subject matter jurisdiction. Where applicable, it only provides an affirmative defense to which ordinary Rule 12(b)(6) standards apply.

*v. Furness (Pac.) Ltd.*, 171 F.2d 434, 435 (9th Cir. 1948). This follows the general rule that a dismissal for insufficient service of process under Civil Rule 12(b)(5) is not a dismissal on the merits. 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1353, at 345-46 (3d. ed. 2004).

Ojai Hospital does not seek dismissal under 4(m), and there is no apparent or actual prejudice claimed. Justice is better served by proceeding now, and not dismissing *without prejudice*, which would only delay resolution.

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint need not provide detailed factual allegations. *Padilla* v. *Yoo,* 633 F. Supp. 2d 1005, 1018 (N.D. Cal. 2009) (citing *Bell Atlantic* v. *Twombly,* 550 U.S. 544 (2007)). Plaintiff's burden in opposing a motion to dismiss is limited: "A plaintiff need only plead enough facts to raise a reasonable expectation that discovery will reveal evidence'" and that "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* at 1019.

In a *qui tam* action, these same principles apply: "[T]he court must construe a complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.,* 532 F.3d 496, 502 (6th Cir. 2008).

## IV. ARGUMENT

### A. Relator's Claims Are Not Barred by 'Public Disclosure'

The OIG publication flagged by Ojai Hospital falls short of a "public disclosure" within the meaning of the FCA. (ECF Doc #18 at p. 16). Ojai Hospital points only to a single document—a U.S. Department of Health and Human Services' OIG Report dated August of 2013, which observes that many Critical

- 5 -

Access Hospitals would not meet certain distance and location requirements essential for participation under federal law. This OIG Report was focused on the Necessary Provider loophole which closed in 2006 – and did *not* claim fraud by any Critical Access Hospital. Nor is the term "fraud" or any of its usual synonyms used to describe any CAH (specifically or generally) contained in the OIG Report. Instead, the OIG concluded that many hospitals would not meet the distance requirement if they were required to re-enroll. The OIG Report is qualitatively different from the allegations against Ojai Hospital. The OIG report recommends that location-related conditions of participation should be reassessed. CMS agrees and notes that "CAH accreditation programs will all be expected to adhere to [location criteria.]" OIG Report (ECF #18-1, p.40 of 71)

**OIG Recommendation #3**

Ensure that [CMS] periodically reassesses CAHs' compliance with all location-related conditions of participation.

**CMS Response**

The CMS concurs. On March 15, 2013 we issued a memorandum, Survey and Certification (S&C-13-20), which among other things removed language from the state Operations Manual that indicated that assessment of compliance with the CAH location criteria would be made only for initial applicants for CAH status. The revised guidance now represents standard CMS policy which CMS regional offices, state survey agencies and accrediting organizations with CMS-approved Medicare CAH accreditation programs will all be expected to adhere to when conducting their periodic re-evaluations of a CAH's compliance with the Conditions of Participation. We also agree with OIG that a CAH which faces de-certification needs lead time in order to prepare for and effect an orderly transition to hospital certification.

OIG Report (ECF #18-1, p.40 of 71)

This Court already considered—and rejected—that OIG Report argument as a public disclosure. Applying the public disclosure bar at the pleading stage was considered in *U.S. ex rel. Adomitis v. Mountains Community Hospital*, Case No. 5:17-cv-00002- JGB-KK—now pending before this Court—and a claim involving *qui tam* claims against a hospital and also involving the CAH distance requirement. Six months ago, this Court found the very same OIG Report now advanced by Defendants here as *insufficient* to trigger the public disclosure bar.

- 6 -

This Court held:

> The OIG Report implicitly discloses, at most, that [Hospital] is a CAH. The other necessary elements to complete the inference of fraud, that [Hospital] claimed reimbursements as a CAH, that it does not meet the requirements to be a CAH, and that it failed to refund the overpayments owed to the federal government, are not disclosed. No identified source makes a public allegation of fraud against [Hospital], and no source contains the misrepresented state of facts, that [Hospital] does not meet the CAH location requirements. Thus, Relator's allegations are not barred by the public disclosure bar. As the Court finds the allegations and transactions are not substantially similar to the publicly disclosed report, the Court need not determine whether Relator is an original source. [citation omitted]

*U.S. ex Rel. Adomitis v. Mountains Community Hospital*, Case No. 5:17-cv-00002-JGB-KK (ECF, Doc 23, p.7, January 29, 2018 Order on Motion to Dismiss). As a refresher, that OIG publication mentions no hospital by name, nor with any detail sufficient to identify any hospital, and does not mention defendant Ojai Hospital. The OIG Report also does not suggest that any hospital is purposefully defrauding the government. Indeed, almost all of the hospitals identified by the OIG Report as not meeting the distance requirement were still legally receiving CAH enhanced payments because had been properly designated as Necessary Providers, the only loophole in the CAH program.

Further, that Inspector General Report is a "study" as conducted: "We [OIG] plotted the locations of CAHs and other hospitals onto digital maps to determine whether CAHs would meet the location requirements if they were required to re-enroll in Medicare. Additionally, we calculated (using 2011 claims data) the potential savings to Medicare and beneficiaries if the Centers for Medicare &

Medicaid Services (CMS) were to decertify CAHs that would not meet the location requirements." *Id.* at p. 2. The Report also included a generalized finding that "[n]early two-thirds of CAHs would not meet the location requirements if required to re-enroll." *Id* at p.2.

Therefore, the Inspector General Report Complaint is qualitatively different from the FAC on many levels:

- *Inspector General Report devotes focuses its study on the extent to which Critical Access Hospitals would (not) meet the location requirements if required to re-enroll in Medicare.* **Relator uncovered an actual scheme where despite failure to meet the geographical distance or rural requirements; failure to qualify as a Medicare "Necessary Provider"; and 3x too many swing-beds, Ojai Hospital factually and materially misrepresented compliance with CAH Medicare Requirements and submitted false claims to the Government.** FAC ¶¶ 24, 25, 28, 35, 42, & 43;
- *Inspector General Report's study involved a review of 1,329 CAH hospitals but did not involve Ojai Hospital*, **while Relator's claims exclusively involve Ojai Hospital**. FAC ¶¶ 24, 25, 28, 35, 42, & 43;
- *The only connection to Ojai Hospital in the Inspector General Report Complaint is conceptual — Ojai Hospital holds itself out as a CAH, but it is not named specifically, nor can any fair reading of the OIG Report infer the identity of Ojai Hospital,* **while all of Relator's fraud allegations specifically involve Ojai Hospital**;
- *Inspector General Report was issued in August of 2013*, **while Relator alleges the fraud occurred in 2014 and it follows that the disclosure cannot predate the fraud**.
- *Inspector General Report named only the apparent and prospective finding that "Medicare and beneficiaries could have saved more than*

- 8 -
Opposition to Motion to Dismiss FAC

*$1.3 million per decertified CAH in 2011. These savings would come from paying the decertified CAH at the rates set by prospective payment systems and fee schedules*," **while Relator's allegations of fraud to Medicare for the period of 2014-present.** FAC ¶ 41.

Summarizing, Ojai Hospital argues that Inspector General Report and Adomitis allege the same fraud because they allege of a failure to satisfy the location requirements for CAHs. Ojai Hospital's analysis is thin to non-existent. Under that broadly phrased argument, the Inspector General Report would prevent any relator from ever bringing a *qui tam* case against any CAH alleging a fraud related to the location requirements.

Defendant's argument on jurisdiction relies on outdated authority. While Ojai Hospital calls the public disclosure bar "jurisdictional," they quote from an outdated version of the public disclosure provision and cite only to cases pre-dating the 2010 PPACA amendments to the False Claims Act. The 2010 amendments, P.L. 111-148, Title X, Subtitle A, § 10104(j)(2), 124 Stat. 90, substantially rewrote the public disclosure provision of §3730(e)(4)(A). While previously the law stated that "[n]o court shall have jurisdiction . . ." the jurisdictional language was removed, and the Court is prevented from dismissing an action on public disclosure grounds over the government's objection. *See United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 2016 U.S. App. LEXIS 1729, *10 (3d Cir. Del. Feb. 2, 2016), citing *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 810 (11th Cir. 2015); *United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 916 (4th Cir. 2013) ("It is apparent . . . that the public-disclosure bar is no longer jurisdictional"). Defendant is simply relying on an old version of the law.

Under both the old and new version of the public disclosure provision, to determine whether an action is barred requires a two-step inquiry: first, it must be determined whether there was a qualifying public disclosure from one of the enumerated sources, and, second, if there was such a disclosure, whether the relator

- 9 -

Opposition to Motion to Dismiss FAC

was the "original source" of those public disclosures. "Where there has been no 'public disclosure' within the meaning of section 3730(e)(4)(A), there is no need for a *qui tam* plaintiff to show that he is the 'original source' of the information." *Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1416 (9th Cir. 1992). *See also United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1420 (9th Cir. Cal. 1991) ("There is, of course, no need for [relator] to show that he is 'the original source' of the information. That statutory phrase . . . comes into play only if a public disclosure exists").

### B.   Although Not Applicable, Relator Is An 'Original Source'

Ojai Hospital's suggestion that Adomitis is not an "original source" of the allegations made is misplaced and unavailing. There is no FCA requirement that a whistleblower be an existing or former employee. Under the FCA, a *qui tam* plaintiff need show only himself to be an "original source" if a defendant can demonstrate that, prior to her complaint, the government already had *another* source for the fraud allegations, in disclosing those allegations in one of a list of specific public fora. Defendants fail to identify such a prior public disclosure here; there was none. Absent showing a qualifying public disclosure, there is simply no call to analyze the FCA's "original source" exception.

Finally, Relator qualifies as an "original source." That is so because, throughout the FAC, he demonstrates his knowledge, and close observation of Ojai Hospital's fraudulent acts, which he discovered through his own research, and observations. The original source definition was greatly expanded in the 2010 Amendments. Prior to the Amendments, to qualify as an original source, the relator had to know of the publicly disclosed allegations. Now, the relator no longer needs to have direct knowledge. The definition of "original source" now reads: "(B) For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are

based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section."

At least one Court in this Circuit has recognized that the 2010 Amendment broadened the original source exception and make it less demanding. *See U.S. v. Kiewit Pacific Co.*, 41 F. Supp. 3d 796, 807 (N.D. Cal. 2014) ("Though few courts have addressed the 2010 amendments to the definition of "original source," the removal of the word "direct" appears to broaden the exception and permit a relator to qualify as an "original source" of information even if that information was obtained indirectly."), citing *U.S. ex rel. Booker v. Pfizer, Inc.*, 9 F.Supp.3d 34, 45-46, (D. Mass. 2014) (noting 2010 amendments to False Claims Act render "original source" exception "less demanding"; the removal of the "direct" requirement).

Mr. Adomitis has readily met the prior more strenuous requirements, let alone the new less demanding ones. He is an original source because he knows of the allegations which materially added to the allegations that Mountains Hospital now argues were publicly disclosed, and which he voluntarily disclosed to the Government before commencing this action. 32 U.S.C. § 3740(e)(4)(B).

### C. Relator's Fraud Claims Are Adequately Framed

#### 1. Relator Adequately Pleaded Scienter

Ojai Hospital argues that Mr. Adomitis does not allege with particularity Ojai Hospital's knowledge of the fraud—because the FAC does not detail fraudulent intent by Ojai Hospital management. Ojai Hospital Br. at 19-20. In making this argument, Ojai Hospital ignores Rule 9(b) that while the circumstances constituting fraud must be pled with particularity, "knowledge and other conditions of a person's mind may be alleged generally." *See also Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007) ("While the factual circumstances of the fraud itself must be alleged with particularity, the state of mind—or scienter—of the defendants may be alleged more generally"); *In re GlenFed Inc. Sec. Litig.,* 42 F.3d 1541, 1547 (9th

- 11 -

Cir. 1994) ("We conclude that plaintiffs may aver scienter generally, just as the rule states— that is, simply by saying that scienter existed"). Ojai Hospital's argument also directly contradicts the False Claims Act, which requires only deliberate ignorance or reckless disregard and requires "no proof of specific intent to defraud." 31 U.S.C. § 3729(b). Further, in a False Claims Act action, a company's knowledge can be imputed from its employee's actions. *U.S. ex rel. Rosales v. San Francisco Housing Authority*, 173 F.Supp.2d 987, 1003 (N.D. Cal. 2001).

Mr. Adomitis has properly pleaded that Ojai Hospital knowingly submitted false claims simply by pleading generally the same. FAC at ¶¶41, 46 ["Defendants, with actual knowledge, reckless disregard, or deliberate ignorance, made, used, and/or caused to be made or used, false records, statements, and certifications material to false or fraudulent claims…"]

### 2. **The Allegations of Fraud Are Particular**

Under FRCP Rule 8, the Court assumes the veracity of a complaint's factual allegations and then determine whether they plausibly give rise to an entitlement to relief. *See United States ex rel. Lee v. Corinthian Colls*., 655 F.3d at 991 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Under Rule 9(b), a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This means the plaintiff must allege "the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Knowledge, however, may be pled generally. *See Corinthian Colls*., 655 F.3d at 996.

Here, the FAC contains the who, what, when, and how. In a sentence—Ojai Hospital does not and never did qualify for the enhanced Medicare reimbursement as a CAH, because it is geographically too close to an adjacent medical facility, but

also because it employs an excess number of swing beds, and Ojai Hospital falsified its Medicare Cost Reports between 2014 to the present when it claimed CAH status, as each Medicare Cost Report was authorized, approved and executed by an Ojai Hospital officer or administrator. Form 2552 – which is referenced in the FAC – specifically asks Ojai to state whether it presently qualifies as a CAH every time that Ojai submits a bill for the enhanced payment available only to CAH hospitals.

More specifically, Relator alleged Ojai Hospital claims CAH status to recover 101% of costs from CMS. FAC, ¶¶ 1, 15, 24. Ojai Hospital has done so since 2014. FAC ¶¶ 1, 29, 41, 46, & 51. However, Ojai Hospital does not meet the distance requirement under 42 USC §485.610(c), the swing-bed requirements under 42 CFR §485.620(a) FAC ¶¶ 19, 21, 25, 26, 27 & 28. Instead of exceeding the distance requirement of 35 miles to the adjacent medical facility which has existed for many years, the distance is 18.3 miles FAC ¶¶ 25, 26. Despite the geographic failure Ojai Hospital filed Medicare cost report using CMS Form 2552-10 representing compliance, which contains a conspicuous warning in title caps. "MISREPRESENTATION OR FALSIFICATION OF ANY INFORMATION CONTAINED IN THIS COST REPORT MAY BE PUNISHABLE BY CRIMINAL, CIVIL AND ADMINISTRATIVE ACTION, FINE AND/OR IMPRISONMENT UNDER FEDERAL LAW." FAC ¶¶ 30, 32. This Medicare cost reports were signed by Ojai Hospital officers or administrators warranting the contents as true and correct. FAC ¶¶ 31, 32. CMS relied on the Medicare cost reports and paid Ojai Hospital based on same. FAC ¶¶35, 36. Ojai Hospital acted with actual knowledge, reckless disregard, or deliberate ignorance, indifference when it presented the claims for reimbursement. FAC ¶41, 46, and 51.

### 3. False Certification And '*Materiality*'

Ojai Hospital assumes an implied certification theory *only* – which Relator does not concede. As noted above, each cost report submitted so that Ojai can get the enhanced payment available only to CAH hospitals specifically required Ojai to

verify that it qualified as a CAH hospital, not that it was previously designated as one. Thus, first theory of liability is factual falsity—that Ojai Hospital applied for CAH status, willfully ignoring the geographical reality that an adjacent 242-bed hospital is a mere 18.3 miles away, with 5.5 miles of that distance consisting of non-secondary roads, and also employing 3x the number permissible number of swing-beds, with the singular goal and purpose to *overcharge* the Government for healthcare rendered to Medicare beneficiaries. This intentional departure from the truth is plainly material to whether Ojai Hospital's medical services at the higher "CAH" rate were reimbursable because—as the Ninth Circuit explained in a similar context, regulatory "approval is the *sine qua non* of federal funding."[2] Here, by making factually false representations on Form 2552 on compliance with the distance requirement, Ojai Hospital misrepresented its services and fraudulently obtained government payment—a false claim that is the "*sine qua non* of receipt of state funding," *Ebied ex rel. United States v. Lungwitz,* 616 F.3d 993, 998 (9th Cir. 2010).

At the outset, it is unclear that *Escobar*'s materiality standard, which serves the particular function of limiting implied certification claims, applies to claims of factual *falsity*. The statutory text creates liability for a "false or fraudulent" claim.

---

[2] FDA approval is the "*the sine qua non*" of federal funding here. *United States ex rel. Hendow v. Univ. of Phx.*, 461 F.3d 1166, 1170 (9th Cir. 2006)   Eligibility for federal funding and reimbursement is conditioned on FDA approval under Medicaid, 42 U.S.C. § 1396r-8. An analogue regulatory scheme to the provision of medicine under the FDA is the request for, approval of, and ongoing compliance with the Critical Access Hospital framework to make available medical care to rural areas. 42 USC §1396i-4(c)(2) [CAHs must be located at least a minimum distance from other hospitals and must be located in rural areas.]

31 U.S.C. § 3729(a)(1)(A). While the word "fraudulent" implies materiality, the word "false" may not. Assuming *Escobar*'s materiality standard applies, Relator's allegations meet the test because they mirror those in *Escobar* itself. Although the Supreme Court left the "materiality" analysis to the District court for determination, it noted that the requirements the defendant violated were "so central to the provision of mental health counseling that the Medicaid program would not have paid these claims had it known of these violations." 136 S. Ct. at 2004. The fraud was apparent: "by submitting claims for payment using payment codes that corresponded to specific counseling services, Universal Health represented that it had provided [those services]." *Id.* at 2000. Universal Health further implicitly represented that the services were of approved quality and performed by licensed staff. *Id.* The psychological services delivered, however, were substandard and unapproved because the services were provided by persons who were not licensed to do so. On remand, the First Circuit concluded that the complaint adequately pleaded materiality—even though Universal Health argued that the government knew about the alleged fraud when it made the payments. *United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 110 (1st Cir. 2016).

Ojai Hospital's conduct is indistinguishable: it overcharged the Government by misrepresenting its eligibility and compliance with the CAH framework—a program designed to provide federal reimbursement incentives to attract hospital providers to communities that would otherwise have difficulty receiving hospital care—*not to reward profiteers*. Like the misconduct in *Escobar*, noncompliance with Medicare Cost Report—especially affecting the reimbursement schedule--is "so central" to the provision of health care that the government plausibly would not pay if it knew that a hospital flouted those requirements. 136 S. Ct. at 2004. As stated above, each CMS Form 2552-10 specifically asks the Hospital to state at question No. 105 "Does this hospital qualify as a Critical Access Hospital (CAH)?"

Any argument that discounts the language of CMS Form 2552, which states: "MISREPRESENTATION OR FALSIFICATION OF ANY INFORMATION CONTAINED IN THIS COST REPORT MAY BE PUNISHABLE BY CRIMINAL, CIVIL AND ADMINISTRATIVE ACTION" and the concurrent Certification By Officer Or Administrator Of Provider, which affirms "I am familiar with the laws and regulations regarding the provision of the health care services, and that the services identified in this cost report were provided in compliance with such laws and regulations" as *immaterial* is facially absurd at the motion to dismiss stage. A claim has been adequately pleaded.

Location is material for payment.[3] As stated above, each CMS Form 2552-10 specifically asks: "Does this hospital qualify as a Critical Access Hospital (CAH)?" Had Ojai Hospital affirmed it did not meet the distance requirement, the government would not pay Ojai Hospital the enhanced rate available only to CAHs. CMS has determined the location requirements for CAH status to be material for payment of the enhanced rates. See *Baylor County Hospital District v. Burwell*, 163 F.Supp.3d 372, 375 (N.D. Tex. 2016) ) affirmed *Baylor County Hospital District v. Price*, 850 F.3d 257 (5th Cir. 2017) (CAH status denied to hospital that did not meet the distance requirement).

---

[3] Ojai has not raised the argument in its Motion that it has continued to receive payment of the enhanced CAH costs, but to the extent it argues in its reply that it continues to receive payment for services despite the filing of this lawsuit, such an argument would be without merit and unavailing. CMS pays the enhanced CAH funds only once per year. The Form 2552 Cost Report is submitted at the end of the year, or around November of each calendar year. Ojai has not submitted any Form 2552 Cost Reports since the government declined to intervene, or since it was served with this lawsuit in March of this year.

Since the OIG's Report in August 2013, CMS publicly identified certain CAHs and released in the Federal Register a list of counties and parishes that will lose their rural designation that allows acute care facilities within their boundaries to receive extra payments as critical access hospitals. The CMS list includes 72 counties and parishes in over 30 states or Puerto Rico. Refer to the table "Counties That Will Lose Rural Status and Become Urban" on pages 49953 through 49955 of the August 22, 2014 Federal Register (79 FR 49953 through 49955) for a list of counties that would lose rural status and become urban effective October 1, 2014. Because CMS does not resurvey all hospitals annually —given the lack of sufficient resources to do so—and because decertification is not automatic but CMS allows hospitals to appeal the decision and present information disputing the original findings, more decertifications will follow as CMS re-certification process continues.

### D.   Relator Adequately Pleaded Reverse FCA Violations

The False Claims Act imposes liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government. 31 U.S.C. § 3729(a)(1)(G). This is known as the reverse False Claims Act provision. Recipients of Medicare and Medicaid funds who have "received an overpayment" must "report and return the overpayments" to HHS or the State. *See* 42 U.S.C. § 1320a-7k(d)(1) The ACA defines "overpayment" to mean "any funds that a person receives or retains under [the Medicare or Medicaid programs] to which the person, after applicable reconciliation, is not entitled." 42 U.S.C. § 1320a-7k(d)(4)(B). Relator pleaded both that Ojai Hospital submitted false claims that resulted in overpayments and failed to return those overpayments. FAC ¶¶ 50-53. Therefore, Relator sufficiently pleaded separate reverse False Claims Act violations.

## V. RELATOR'S CONDITIONAL MOTION TO AMEND

Plaintiff-Relator Adomitis has pleaded his claims, and those of the United States Government, in the manner required by the Federal Rules of Civil Procedure and, as a matter of both substance and procedure, has stated plausible claims upon which relief may be granted. However, should the Court disagree and grant Defendant's Motion to Dismiss, in whole or in part, the Relator Adomitis should be allowed to amend its First Amended Complaint. A dismissal under FRCP Rule 12(b)(6) should not be final, and any court purporting to dismiss a plaintiff's complaint, in whole or in part, should simultaneously grant that plaintiff leave to amend the complaint, under FRCP Rule 15(a)(2).[4]

This practice obtains, in the usual case, for at least three major reasons: (1) the Federal Rules evidence a policy of deciding cases based on the substantive rights involved,[5] (2) the Federal Rules expressly provide that leave to amend a complaint should be "freely" given "when justice so requires,"[6] and (3) real practical problems

---

[4] *See, e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Waste Control Specialists v. Envirocare of Texas, Inc.*, 199 F.3d 781, 786 (5th Cir. 2000) ("the usual course of action upon granting a defendant's Rule 12(b)(6) motion to dismiss is to allow a plaintiff to amend his or his complaint.").

[5] *See, e.g., Tuley v. Heyd*, 482 F.2d 590, 595 (5th Cir. 1973); see also *Foman*, 371 U.S. at 182 ("if the underlying facts relied upon by a plaintiff may be a proper subject for relief, he ought to be afforded an opportunity to test his claim on the merits").

[6] *See* Fed. R. Civ. P. 15(a). Rule 15(a)(2), like all of the Federal Rules, is to be "construed and administered" to secure, *inter alia*, the "just" determination of "every action and proceeding." Given that premise, and Rule 15(a)(2)'s own concern with what "justice" "requires," this Court should grant leave to amend.

exist when dealing with complaints filed before any meaningful discovery has taken place, as those complaints are drafted with less than perfect knowledge. All three reasons support Relator's conditional request for leave to amend.

## VI. CONCLUSION

*Qui tam* Plaintiff Frank Adomitis respectfully requests that Defendant's motion to dismiss his First Amended Complaint be denied.

DATED: July 9, 2018

**LAW OFFICE OF ESPERANZA CERVANTES ANDERSON**

By: /s/ *Esperanza C. Anderson*
Esperanza Cervantes Anderson, Esq.
Attorney for Plaintiff/relator
FRANK ADOMITIS