UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 17-6972 JGB (KKx)** | Date | July 30, 2018 |
| Title | *United States of America, et al. v. Ojai Valley Community Hospital, Inc.* | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| MAYNOR GALVEZ | Adele C. Frazier |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Esperanza Cervantes Anderson | Jeffrey Robert Makin<br>Alexander Stephenson Birkhold |

**Proceedings:** Order (1) GRANTING Defendant's Motion to Dismiss (Dkt. No. 18);

Before the Court is Defendant Ojai Valley Community Hospital's motion to dismiss. ("Motion," Dkt. No. 18.) On July 30, 2018, the Court held a hearing on the Motion. After considering the oral argument and papers filed in support of, and in opposition to, the Motion, the Court GRANTS the Motion.

## I. BACKGROUND

### A. Procedural Background

On September 21, 2017, Relator Frank Adomitis filed a False Claims Act complaint against Defendant Community Memorial Health system d/b/a Ojai Valley Community Hospital ("Ojai"). (Dkt. No. 1.) On December 19, 2017, the United States declined to intervene. (Dkt. No. 6.)

Then, on May 14, 2018, Relator filed his first amended complaint. ("FAC," Dkt. No. 17.) Relator's FAC alleges three causes of action: (1) presentation of false claims under the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)(A); (2) using false statements or records to receive false payments under the FCA, 31 U.S.C. § 3729(a)(1)(B); and (3) failing to refund overpayments owed to the government in violation of 31 U.S.C. § 3729(a)(1)(G). (See FAC.)

On April 19, 2018, Defendant filed the instant Motion. (Dkt. No. 18.)[1] The United States filed a statement of interest on July 9, 2018. (Dkt. No. 19.) Also on July 9, 2018, Relator opposed the Motion. ("Opposition," Dkt. No. 20.) Defendant replied on July 16, 2018. ("Reply," Dkt. No. 23.)

**B. Overview of Medicare Reimbursement Program**

The United States Department of Health and Human Services, through its Centers for Medicare and Medicaid Services ("CMS"), administers the Medicare program. (FAC ¶ 13.) CMS pays Medicare claims received from hospitals, such as Ojai, and all such claims are paid with federal funds. (Id.)

In 1997, the Balanced Budget Act ("BBA") created the Critical Access Hospital (CAH) certification. (Id. ¶ 14.) CAHs are reimbursed differently by Medicare than other acute care hospitals. (Id. ¶ 15.) CAHs receive 101% of Medicare's share of their reasonable and allowable costs for outpatient, inpatient, laboratory, "swing bed," and ambulance services. (Id. (citing 42 C.F.R. §§ 413.70, 413.114).) Conversely, traditional hospital facilities are paid under Prospective Payment Systems, which feature fixed and capped Medicare reimbursement. (Id.) CAH payments are based on each CAH's reasonable and allowable costs and the share of those costs allocated to Medicare patients. (Id.) Medicare reimbursement rates for CAHs are computed for inpatient services at an average cost per day, based on historical data, multiplied by 101%, and

---

[1] Along with its Motion, Defendant filed a request for judicial notice. ("Request," Dkt. No. 18-1.) Relator opposed the Request. (Dkt. No. 21.) Defendant addressed the objections in its Reply. (Reply at 16-17.) Defendant asks the Court take judicial notice of (1) an August 2013 Office of Inspector General report on Critical Access Hospitals ("CAHs") ("OIG Report") (Ex. A.), (2) excerpts from the ("CMS") State Operations Manual (Ex. B), (3) the CMS February 2016 recertification checklist for CAHs (Ex. C), and (4) a transcript of a 2013 audio podcast on CAH designations by the OIG (Ex. D). (See Request.) Relator objects to all exhibits on grounds of authentication, and exhibit 4 on grounds of relevance, hearsay, and/or not generally known facts. (See Dkt. No. 21.)

A court may take judicial notice of an adjudicative fact not subject to "reasonable dispute," either because it is "generally known within the territorial jurisdiction of the trial court," or it is capable of accurate and ready determination by resort to sources whose "accuracy cannot reasonably be questioned." Fed. R. Evid. 201. The Court finds that Exhibits A-D are proper subjects of judicial notice, as these are government agency documents in the public record and their accuracy "cannot reasonably be questioned." See, e.g., Paralyzed Veterans of America v. McPherson, 2008 WL 4183981, at *6 (N.D. Cal. Sep. 9, 2008) (taking judicial notice of documents on the California Secretary of State's website); United States ex rel. Dingle v. BioPort Corp., 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003) (citation omitted) ("Public records and government documents are generally considered not to be subject to reasonable dispute . . . This includes public records and government documents available from reliable sources on the Internet."). However, the Court takes judicial notice only of the existence of exhibit D, but not for the truth of the matters asserted within the podcast.

paid on an interim basis. (Id. ¶ 16.) For outpatient services, the billed charge of each claim is multiplied by the CAH's cost-to-charge ratio and then adding 1% to that amount. (Id.)

Hospitals must meet specific requirements to qualify for CAH certification and receive the CAH Medicare reimbursement rates. (Id. ¶ 17.) Two of the requirements CAHs must meet are location-related. (Id. ¶ 18.) CAHs must be located a minimum distance from other hospitals, and be in a rural area. (Id.) For the minimum distance requirement, hospitals can be either (1) more than a 35-mile drive from another hospital or CAH, or (2) more than a 15-mile drive from another hospital or CAH in a mountainous area or area with only secondary roads available. (Id. ¶ 19 (citing 42 C.F.R. § 485.610(c)).) Prior to January 1, 2006, states could designate hospitals that did not meet this distance requirements as necessary provider ("NP") CAHs. (Id. ¶ 22.) These NP CAHs are permanently exempt from meeting the distance requirement, unless they relocate, but they still must meet all other CAH requirements. (Id. ¶ 23.) CAHs must also either be located in rural areas or areas that are treated as rural. (Id. ¶ 20 (citing 42 C.F.R. § 485.610(b)).)

## C. Allegations Regarding Ojai

Ojai, operated since the 1960s, is a 91-bed facility located in Ojai, California. (FAC ¶ 8.) Ojai was certified as a CAH in February 2014. (Id. ¶ 24.) Ojai is not designated as an NP CAH, nor was it designated as an NP CAH prior to January 1, 2006. (Id.)

Relator alleges Ojai does not meet the location requirements for CAH certification. (Id. ¶ 25.) First, Relator claims the most direct route between Ojai and the nearest hospital is 18.3 miles, according to Google Maps. (Id. ¶ 26.) Relator alleges the route "travels over California state highway 33," which has "2 or more lanes each way for most of the way." (Id.) Thus, there are not more than 15 miles on secondary roads. (Id.) Relator also alleges the "majority of the route is flat and reasonably straight," so it does not qualify as mountainous terrain. (Id.) Moreover, Relator alleges Ojai has too many beds under Medicare's conditions of payment requirement that a CAH have 25 or fewer beds. (Id. ¶ 28.)

Nonetheless, from 2014 to the present, Ojai has filed cost reposts for reimbursement for health care services provided to Medicare beneficiaries using CMC Form 2552, at the rates authorized for CAHs. (Id. ¶ 29.) Form 2552 contains certification statements that the information provided is truthful and in compliance with the laws and regulations. (Id. ¶¶ 30-31.) In addition, Ojai was required to enter into an agreement with CMS through form CMS-855A wherein Ojai swore it understood the payment of a claim by Medicare was conditioned upon complying with its laws, regulations, program instructions, and applicable conditions of participation. (Id. ¶ 33.)

Relator alleges that by submitting Form 2552, Ojai has overcharged the government for its services to Medicare beneficiaries. (Id. ¶ 37.) Relator claims Ojai was aware or should have been aware they did not meet the distance requirements given the absence of mountainous terrain and the presence of primary roads between it and the nearest hospital. (Id. ¶ 38.)

## II. LEGAL STANDARD

Defendant moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Rule 12(b)(1) motions challenge the court's subject matter jurisdiction, without which, a federal district court cannot adjudicate the case before it. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375 (1994). The party asserting federal subject matter jurisdiction bears the burden of proving its existence. Chandler v. State Farm. Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010.)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Factual allegations must be enough to "raise a right to relief above a speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Id.; see Horosny v. Burlington Coat Factory, Inc., 2015 WL 12532178, at *3 (C.D. Cal. Oct. 26, 2015). In considering a Rule 12(b)(6) motion to dismiss, a court accepts the plaintiff's factual allegations in the complaint, and construes the pleadings in the light most favorable to the nonmoving party. See Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

Claims brought under the FCA must be pleaded pursuant to Federal Rule of Civil Procedure Rule 9(b). Rule 9(b) requires that circumstances constituting a claim for fraud or mistake be pleaded with particularity. Fed. R. Civ. P. 9(b). Rule 9(b) applies also where the claim is "grounded in fraud" or "sound[s] in fraud." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003). Rule 9(b) requires a plaintiff to "identify the 'who, what, when, where and how of the misconduct charged," as well as "what is false or misleading about [the purportedly fraudulent conduct], and why it is false." Shimono v. Harbor Freight Tools USA, Inc., 2016 WL 6238483 at *5 (C.D. Cal. Oct. 24, 2016) (quoting Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011)).

## III. DISCUSSION

Defendant argues Relator's claims should be dismissed because they are subject to the public disclosure bar, he fails to plead any claims, and he fails to plead his claims with the requisite particularity. (See Mot.)

**A. Public Disclosure Bar**

The FCA prohibits "knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim for payment or approval; [or] knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim" to the federal government." 31 U.S.C. § 3729(a)(1)(A), (B). The FCA permits private individuals, referred to as "relators," to bring suit on the Government's behalf against entities that have violated the Act's prohibitions. 31 U.S.C. § 3730 (b)(1). However, the FCA's public disclosure bar deprives federal courts of subject matter jurisdiction when a relator alleges fraud that has already been publicly disclosed, unless the relator qualifies as an "original source." United States ex rel. Mateski v. Raytheon Co., 816 F.3d 565, 569 (9th Cir. 2016) (citing United States ex rel. Hartpence v. Kinetic Concepts, 792 F.3d 1121, 1123 (9th Cir. 2015) (en banc)); see also 31 U.S.C. § 3730(e)(4)(A).

The public disclosure bar is triggered if: (1) the disclosure at issue occurred through one of the channels specified in the statute; (2) the disclosure was "public"; and (3) the relator's action is "based upon" the allegations or transactions publicly disclosed. Mateski, 816 F.3d at 570 (quoting Malhotra v. Steinberg, 770 F.3d 853, 858 (9th Cir. 2014)). The parties do not dispute the first two elements. The OIG Report, on which Defendant relies to invoke the bar, is a channel specified in the statute and was publicly disclosed. Thus, whether Relator's action was based upon the information already disclosed is the key element in dispute.

For a relator's allegations to be "based upon" a prior public disclosure, the "publicly disclosed facts need not be identical with, but only substantially similar to, the relator's allegations." Mateski, 816 F.3d at 573. In deciding whether allegations have been publicly disclosed, the Ninth Circuit warns against reading qui tam complaints at the highest level of generality. See id. at 578.

Relator alleges Ojai does not qualify as a CAH, yet from 2014 to the present it has filed for reimbursement from Medicare at rates authorized for CAHs. (FAC ¶¶ 24-29.) Defendant argues Relator's allegations were publicly disclosed prior to the present lawsuit in the OIG Report, and the government was on notice to investigate the alleged fraudulent activity. (Mot. at 17-18.) Defendant relies on United States ex rel. Solis v. Millennium Pharmaceuticals, Inc., 885 F.3d 623 (9th Cir. 2018), a recent Ninth Circuit qui tam case. In Solis, the plaintiff alleged the defendant promoted off-label uses of the drugs Integrilin and Avelox and engaged in illegal kickbacks with physicians. 885 F.3d at 625. The Ninth Circuit held that earlier complaints that alleged that the same defendants were negligent in marketing and promoting Integrilin in the same manner that caused the same risk and that they engaged in a kickback scheme were "close enough in kind and degree to have put the government on notice to investigate the alleged fraud before [the plaintiff] filed his complaint." Id. at 626-27.

Here, the Court concludes Relator's allegations are not substantially similar to the 2013 OIG Report. Although the OIG Report discusses how almost two-thirds of CAHs would not meet the location requirements if required to undergo recertification and estimates potential savings to

Medicare if some of the non-conforming CAHs were decertified, it does not contain allegations of fraudulent overcharging to Medicare or that CAHs used fraudulent documents to receive the designation. Moreover, the 2013 OIG Report was released prior to Ojai's designation as a CAH. Defendant argues CMS would have had "the context and backdrop" of the OIG Report when it considered Ojai's CAH application, including whether it met the distance requirements. (Mot. at 18.) While that may be true, if Ojai misrepresented its compliance with the CAH requirements when it submitted its application, CMS may not have had the requisite information to determine whether Ojai actually met the requirements for certification. Therefore, the OIG Report does not contain allegations close "in kind and degree" to put the government on notice to investigate Ojai. Solis, 885 F.3d at 626-27.

This case is similar to United States ex rel. Baltazar v. Warden, 635 F.3d 866 (7th Cir. 2011) in which the Seventh Circuit considered whether a qui tam plaintiff's claims were subject to the public disclosure bar. In Baltazar, a report released prior to relator's suit had concluded that 75% of chiropractors' claims in the sampled population were for services not covered by the Medicare program and another 16% were for services that were miscoded. 635 F.3d at 867. The court held the plaintiff's claims supplied "vital facts that were not in the public domain," that the chiropractor defendants were submitting false claims knowing them to be false and was thus committing fraud. Id. at 869. The court noted that the relator's suit was based on the defendant-specific facts from her own knowledge, "not on the public information that false or mistaken claims are common." Id. Similarly here, the 2013 OIG Report identifies that the majority of CAHs do not meet the location requirements, and decertifying them would result in cost-savings to Medicare. However, Relator's allegations against Ojai concern its submission of false claims, and extend beyond the general disclosures in the 2013 OIG Report.

Industry-wide allegations of fraud can be sufficient to invoke the public disclosure bar. See, e.g., United States ex rel. Fine v. Sandia Corp., 70 F.3d 568, 571-72 (10th Cir. 1995) (finding that prior disclosures barred FCA action despite not naming the potential defendants because they limited the number of potential defendants and they were "easily identifiable."). Here, however, the OIG Report did not place the government on notice to investigate Ojai, nor could it, because Ojai was not yet designated as a CAH. Thus, Relator's allegations are not barred by the public disclosure bar. As the Court finds the allegations and transactions are not substantially similar to the publicly disclosed report, the Court need not determine whether Relator is an original source. United States ex rel. Hagood v. Sonoma Cty. Water Agency, 929 F.2d 1416, 1420 (9th Cir. 1991).

### B. FCA Claims

Defendant asserts Relator fails to plead his FCA claims with sufficient particularity under Federal Rule of Civil Procedure 9(b). (Mot. at 22-23.) A complaint alleging implied false certification must plead with particularity allegations that "provide a reasonable basis to infer that (1) the defendant explicitly undertook to comply with a law, rule or regulation that is implicated in submitting a claim for payment and that (2) claims were submitted (3) even though the defendant was not in compliance with that law, rule or regulation." Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010). In the Ninth Circuit, it is sufficient to

allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." Id. at 999 (quoting United States ex rel. Grubbs v. Ravikumar Kanneganti, 565 F.3d 180, 190 (5th Cir. 2009)).  However, "[m]ere conclusory allegations of fraud are insufficient." United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1180 (9th Cir. 2016).

1. **Factually false theory**

In his Opposition, Relator argues his first theory of liability is one of factual falsity.  (Opp'n at 14.)  Specifically, Relator claims that Ojai applied for CAH status and in doing so "willfully ignored the geographical reality" that it did not meet the location requirements and has too many beds.  (Id.)  Hence, the representations on Form 2552 that Ojai is compliant with the distance requirements are factually false.  (Id.)  A factually false claim is one in which "the claim for payment is itself literally false or fraudulent, such as when the claim involves an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided." United States ex. rel. Silingo v. WellPoint, Inc., --F.3d. --, 2018 WL 3341038, at *4 (9th Cir. July 9, 2018) (citations and quotations omitted).  Such claims typically involve "an insider at a private company who discovers his employer has overcharged under a government contract." United States ex rel. Hopper v. Anton, 91 F.3d 1261, 1266 (9th Cir. 1996).  For example, in United States ex rel. Green v. Northrop Corp., 59 F.3d 953, 956 (9th Cir. 1995), cert. denied, 518 U.S. 1018 (1996), a former employee discovered the defendants had engaged in "double billing" for equipment procured by the Air Force for the B-2 bomber program.  Conversely, Relator's claims, as currently pleaded, do not establish liability under a factually false theory.

Relator argues Ojai misrepresented its services, but the FAC is devoid of any such allegations.  Relator has not alleged that any of the claims submitted by Ojai to CMS were for incorrect goods or services or reimbursement for goods or services never provided.  Relator's claims concern Ojai's allegedly erroneous CAH status and its receipt of funds based on its CAH status, not that the claims themselves are "literally false or fraudulent." Silingo, 2018 WL 3341038, at *4.

2. **False certification theory**

Defendant argues Relator fails to adequately plead the falsity, scienter, and materiality elements of his false certification claims.  (Mot. at 19-22.)  A false certification claim requires (1) a false statement or fraudulent course of conduct, (2) made with requisite scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due. United States v. Corinthian Colleges, 655 F.3d 984, 992 (9th Cir. 2011).  The implied certification theory can be a basis for liability at least where two conditions are satisfied.  First, the claim does not merely request payment, but also makes specific representations about the goods or services provided. United States ex rel. Campie v. Gilead Sciences, Inc., 862 F.3d 890, 902 (9th Cir. 2017) (citing Universal Health Servs., Inc. v. United States ex rel. Escobar, 136 S. Ct. 1989, 2000 (2016)).  Second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or

contractual requirements makes those representations misleading half-truths. Id. (citing Escobar, 136 S. Ct. at 2001).

Relator also asserts a reverse false claim for Ojai's failure to refund overpayments owed to the federal government from 2014 to the present. (FAC at 14-15.) Section 3729(a)(1)(G) imposes FCA liability on a person or entity who, as pertinent here, ". . . knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). Defendant argues that because Relator failed to allege a false certification claim, his reverse false claim must also fail. (Mot. at 22.)

      a.  **Falsity**

Defendant contends Realtor has not alleged any details regarding when false certifications were made to the government or what they contained. (Mot. at 20.) A claim submitted that falsely certifies compliance gives rise to an actionable FCA claim when certification is a prerequisite to obtaining a government benefit. United States ex. rel. Hendow v. Univ. of Phoenix, 461 F.3d 1166, 1171 (9th Cir. 2006). To be false, the claim must be more than a "mere unintentional violation." Id.

Relator relies on Silingo, in which the Ninth Circuit held the relator's allegations sufficient to meet the Rule 9(b) requirements. (Dkt. No. 22 at 3.) There, the relator provided "first-hand experience of the scheme unfolding," and described how the defendants targeted certain populations to fraudulently increase or maintain their capitation payments and certified the data they submitted in their payment requests was truthful. Silingo, 2018 WL 3341038, at *7. The court found "ample circumstantial evidence from which to infer that the defendant organizations" had submitted the false data and certified its validity to CMS. Id. Relator's reliance on Silingo is misplaced, particularly due to the absence of details in the FAC.

Although Relator generally alleges Ojai submitted Form 2552 from 2014 to the present to receive Medicare reimbursements at CAH authorized rates, (FAC ¶ 29), the FAC does not provide sufficient facts to allege the element of falsity in accordance with Rule 9(b)'s pleading requirements. There is a glaring dearth of allegations regarding the fraudulent scheme Relator claims Ojai is engaged in. Relator has not pleaded who submitted the false claims, any specific claims that were submitted to CMS, any actual fraudulent charges Ojai submitted, or why the representations were false. Nor has Relator provided any factual allegations to support the implicit claim that Ojai's documents submitted for CAH designation were falsified or fraudulent. Relator is "not required to allege all facts supporting each and every instance of billing submitted," but Rule 9(b) still requires more specificity than the general scheme Relator alleges. Ebeid, 616 F.3d at 999 (quotations omitted); see also Grubbs, 565 F.3d at 192 (finding relator satisfied Rule 9(b) for his claim against individual doctors by describing "the date, place, and participants, the dinner meeting at which two doctors . . . attempted to bring him into the fold . . . [and] his first-hand experience of the scheme"). In contrast, Relator has not alleged any "reliable indicia" to lead the Court to infer any false claims or documents were actually submitted by Ojai to CMS either initially to obtain its CAH designation or subsequently for

reimbursement. By extension, there are insufficient allegations to support Relator's reverse false claim that alleges Ojai failed to refund the government for overpayments.

### b. Scienter

To satisfy the FCA's scienter requirement, a relator must show that the defendant acted "knowingly." 31 U.S.C. § 3729(a)(1)(A). Knowingly means the entity "has actual knowledge of the information" or "acts in deliberate ignorance" or "in reckless disregard" of the truth or falsity of that information." 31 U.S.C. § 3729(b)(1)(A). Knowledge does not require "proof of specific intent to defraud." 31 U.S.C. § 3729(b)(1)(B). Knowledge "may be pled generally." United Healthcare Ins. Co., 848 F.3d at 1180. Relator alleges Ojai submitted the false claims for reimbursement as a CAH when it was or should have been aware that it did not meet the distance requirements for CAH designation. (FAC ¶ 38.) Thus, Relator has adequately alleged the scienter requirement.

### c. Materiality

Materiality is defined as having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property. 31 U.S.C. § 3729(b)(4). To establish materiality, the false statement or conduct must be "material to the government's decision to pay out moneys to the claimant." United States ex rel. Hendow v. Univ. of Phoenix, 461 F.3d 1166, 1173 (9th Cir. 2006). The "key question is whether the government is likely to attach significance to the [statutory, regulatory, or contractual] requirement in deciding whether to tender payment." United States v. Celgene Corp., 226 F. Supp. 3d 1032, 1049 (C.D. Cal. 2016) (citing Escobar, 136 S. Ct. at 2002-03 (2016)). The Supreme Court has stated, "A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." Escobar, 136 S. Ct. at 2003). Thus, a "condition of payment" is relevant but not automatically dispositive of materiality. Escobar, 136 S. Ct. at 2001. Nor is it sufficient to allege that the government "would have the option to decline to pay if it knew of the defendant's noncompliance." Id. at 2003.

Relator argues the location requirements are material to payment because they are crucial to CAH designation and CMS Form 2552 specifically asks, "Does this hospital qualify as a [CAH]." (Mot. at 14, 16.) The Court agrees compliance with the location requirements are important to CAH status, as evidenced by the February 2016 certification checklist. (Ex. C. at 2-3 (containing guidance on evaluating the location and distance requirements for CAH recertification and options if a hospital is not compliant). However, the question is whether the location requirements and/or the number of hospital beds are material to the government's payment of the increased CAH rates.

The Court concludes Relator has not pleaded the requisite connection that noncompliance with the location requirements is material to the government's payment decision itself. See Escobar, 136 S. Ct. at 2002–2004. With all reasonable inferences made in Relator's favor, the

FAC alleges that the distance requirements are material to CAH status, but Relator fails to connect their materiality to payment.

First, there are numerous laws and regulations a hospital must comply with to receive and maintain CAH designation, and Relator does not point to a specific regulation, statute, or agreement "explicitly condition[ing]" the payment of claims on the location requirements or number of beds, unlike in Hendow.  In Hendow, the court analyzed an FCA implied false certification claim alleging a university falsely certified its compliance with the incentive compensation ban in order to receive Title IV funds each year while knowingly and intentionally violating that requirement.  461 F.3d at 1169.  In determining the materiality element, the court found the receipt of the Title IV funds was "explicitly conditioned" on compliance with the incentive compensation ban in three different forms- a federal statute, a federal regulation, and the program participation agreement itself.  Id. at 1175-176.  In holding the materiality element was met, the court found these three clauses made compliance a "prerequisite" of funding and the "sine qua non" because "if the [u]niversity had not agreed to comply with them, it would not have gotten paid."  Id. at 1176.  Moreover, the Hendow court distinguished between educational funds and the Medicare context, where regulatory compliance was "ensured by peer review and extensive monitoring."  461 F.3d at 1177; see also U.S. ex rel. Conner v. Salina Regional Health Ctr., Inc., 543 F.3d 1211, 1221 (10th Cir. 2008) (concluding Medicare's regulations providing for a compliance survey and period for a provider to address any deficiencies before revoking billing privileges meant the government did not require perfect compliance with the regulations as a condition of payment for services rendered).

Second, Relator has not pleaded that noncompliance leads the government to "consistently refuse[] to pay claims," reimburse the claims at a lower rate, or seek to retroactively recover payments.  Escobar, 136 S. Ct. at 2003.  There are no factual allegations that noncompliance would have a direct impact on CMS' payment of claims, without prior termination of a hospital's CAH status.  Relator fails to allege that after 2013 and the OIG Report -- which established the government knew certain hospitals did not meet the CAH location requirements—the government denied any claims for payment based on a failure to meet CAH participation requirements.

Thus, whether Relator alleges a factually false claim based upon Ojai's alleged false documents to CMS, or an implied certification claim based upon the Form 2552 submissions, Relator has failed to sufficiently plead either theory of liability.  Defendant's Motion is GRANTED for all Relator's claims.

C. **Leave to Amend**

Relator requests the Court grant him leave to amend for any claims dismissed.  (Opp'n at 18.)  Defendant counters that Relator should not be granted leave to amend because he does not contend that he has new bases on which to properly state any FCA claims against Ojai.  (Reply at 16.)  The Court finds amendment is appropriate here, because Relator may be able to bolster his allegations to create a reasonable inference of Ojai's fraudulent activity and demonstrate

materiality. See Kendall v. Visa USA, Inc., 518 F.3d 1042, 1051 (9th Cir. 2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment.").

### IV. CONCLUSION

Based on the foregoing, the Court GRANTS Defendant's Motion. Relator shall file a second amended complaint, if any, **no later than September 4, 2018.**

**IT IS SO ORDERED.**