JEFFREY R. MAKIN (SBN 252426)
jeffrey.makin@arentfox.com
ALEXANDER S. BIRKHOLD (SBN 304334)
alexander.birkhold@arentfox.com
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, California 90013-1065
Telephone: 213.629.7400
Facsimile:  213.629.7401

Attorneys for Defendant
OJAI VALLEY COMMUNITY HOSPITAL, a
d/b/a of COMMUNITY MEMORIAL HEALTH
SYSTEM, a California Nonprofit Public Benefit
Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. FRANK ADOMITIS, an individual,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>OJAI VALLEY COMMUNITY HOSPITAL; DOES 1 through 20, inclusive,<br><br>　　　　　　Defendant. | Case No. CV17-06972 JGB (KKx)<br><br>**DEFENDANT OJAI VALLEY COMMUNITY HOSPITAL'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Request for Judicial Notice and [Proposed] Order filed concurrently herewith]<br><br>Judge:　　Hon. Jesus G. Bernal<br>Date:　　 November 5, 2018<br>Time:　　 9:00 a.m.<br>Crtrm:　　1 |

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on Monday, November 5, 2018, at 9:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable Jesus G. Bernal, in Courtroom 1 located at the United States Courthouse at 3470 Twelfth Street, Riverside, California 92501, Defendant Ojai Valley Community Hospital ("OVCH") will and hereby does move to dismiss Counts I through III of Relator Frank Adomitis's Second Amended Complaint for Violation of the Federal False Claims Act (the "FCA").

This motion is made pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6), and is based on the following grounds:

1. Relator failed to state any claim upon which relief can be granted;
2. Relator failed to plead his claims with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure; and
3. The Court lacks subject matter jurisdiction because Relator's claims are subject to the FCA's public disclosure bar, and Relator is not an original source.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on September 7, 2018 and September 11, 2018.

OVCH's Motion to Dismiss is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the pleadings and other records on file in this action, the concurrently filed Request for Judicial Notice, and

///
///
///
///
///

1    on such further evidence and arguments as the Court may consider at or before the

2    hearing on this Motion.

3

4    Dated: September 18, 2018          **ARENT FOX LLP**

5

6                                      By: /s/ Jeffrey R. Makin

                                       JEFFREY R. MAKIN
7                                      ALEXANDER S. BIRKHOLD
                                       Attorneys for Defendant
8                                      OJAI VALLEY COMMUNITY
                                       HOSPITAL, a d/b/a of COMMUNITY
9                                      MEMORIAL HEALTH SYSTEM, a
                                       California Nonprofit Public Benefit
10                                     Corporation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................. 8

II.     BACKGROUND AND STATEMENT OF FACTS ........................... 9

        A.   Procedural Background ............................................... 9

        B.   Relator's Allegations About the Medicare Reimbursement
             Program and the CAH Framework ............................... 9

        C.   Government Reports Have Concluded Most CAHs Do Not Meet
             the Location Requirements ........................................ 10

        D.   Procedures for CAH Approval and Recertification ............ 11

        E.   Relator's Allegations Regarding Ojai Valley Community
             Hospital ............................................................... 12

III.    LEGAL STANDARD ........................................................... 14

        A.   Rule 12(b)(1): Lack of Subject Matter Jurisdiction ........... 14

        B.   Rule (12)(b)(6): Failure to State a Claim ...................... 14

IV.     ARGUMENT ................................................................... 15

        A.   Relator Failed to Plead Any Claims ............................. 15

             1.   Relator Failed to Allege False Certification (Counts I
                  and II) ......................................................... 15

                  a.   Relator Failed to Allege Specific False Statements ...... 16

                  b.   Relator Failed to Allege Scienter ..................... 18

                  c.   Relator Failed to Allege Materiality .................. 20

             2.   Relator Failed to Allege a Reverse False Claim (Count
                  III) ............................................................ 22

        B.   Relator Failed to Plead Any of His Claims With Particularity .... 23

        C.   The Court Lacks Subject Matter Jurisdiction .................. 25

             1.   The FCA's Public Disclosure Bar ........................ 25

             2.   Relator's FCA Claims Were Publicly Disclosed in 2013
                  and 2015 ....................................................... 26

             3.   The Claims in the Reports and Second Amended
                  Complaint are Substantially Similar ....................... 27

             4.   The Government Had Adequate Notice to Investigate .......... 29

             5.   Relator Is Not an Original Source ........................ 30

        D.   Relator Should Not Be Given Leave to Amend Again .......... 31

V.      CONCLUSION ................................................................. 31

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A-1 Ambulance Serv., Inc. v. California,*
202 F.3d 1238, 1245 (9th Cir. 2000) ................................................................. 27

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) ............................................................................. 14, 19

*Balistreri v. Pacifica Police Dep't*
901 F.2d 696, 699 (9th Cir. 1990) ..................................................................... 14

*Baylor Cty. Hosp. Dist. v. Burwell,*
163 F. Supp. 3d 372 (N.D. Tex. 2016), *aff'd sub nom. Baylor Cty.*
*Hosp. Dist. v. Price,* 850 F.3d 257 (5th Cir. 2017) ...................................... 21, 22

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................................ 14

*Bly-Magee v. California,*
236 F.3d 1014, 1019 (9th Cir. 2001) ............................................................ 15, 25

*United States ex rel. Brooks v. Trillium Cmty. Health Plan, Inc.,*
No. 6:14-CV-01424-AA, 2016 WL 1725300 (D. Or. Apr. 29, 2016) ............... 16

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.,*
637 F.3d 1047 (9th Cir. 2011) .............................................................. 15, 16, 23

*United States ex rel. Campie v. Gilead Scis., Inc.,*
862 F.3d 890 (9th Cir. 2017) ....................................................................... 15, 16

*U.S. ex rel. Cericola v. Federal Nat. Mortg. Assoc.,*
529 F. Supp. 2d 1139 (C.D. Cal. 2007) ....................................................... 23, 25

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
598 F.3d 1115 (9th Cir. 2010) ......................................................................... 14

*Foman v. Davis,*
371 U.S. 178 (1962) ........................................................................................ 31

*U.S. ex rel. Grubbs v. Kanneganti,*
565 F.3d 180 (5th Cir. 2009) ........................................................................... 24

*Hagood v. Sonoma Cnty. Water Agency*,
  81 F.3d 1465, 1476 n.18 (9th Cir. 1996)..................................................29

*U.S. ex rel. Harshman v. Alcan Elec. & Eng'g, Inc.*,
  197 F.3d 1014 (9th Cir. 1999)...................................................... 29, 30

*United States ex rel. Hendow v. Univ. of Phoenix*,
  461 F.3d 1166 (9th Cir. 2006)..................................................20

*United States ex rel. Hopper v. Anton*,
  91 F.3d 1261, 1266 (9th Cir. 1996).................................................. 16

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008)..................................................31

*Kokkonen v. Guardian Life Ins. Co.*,
  511 U.S. 375, 377 (1994) ..................................................14

*U.S. ex rel. Lee v. Corinthian Colls*,
  655 F.3d 984, 997 (9th Cir. 2011)..................................................20

*Malhotra v. Steinberg*,
  770 F.3d 853 (9th Cir. 2014)..................................................26

*Malhotra v. Steinberg*,
  No. C09-1618JLR, 2013 WL 441740 (W.D. Wash. Feb. 5, 2013),
  aff'd, 770 F.3d 853 (9th Cir. 2014) ..................................................29

*U.S. ex rel. Mateski v. Raytheon Co.*,
  816 F.3d 565 (9th Cir. 2016)..................................25, 26, 27, 28

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008)..................................................14

*United States ex rel. Meyer v. Horizon Health Corp.*,
  565 F.3d 1195, 1199 (9th Cir. 2009)..................................................26

*U.S. ex rel. Rose v. Stephens Institute*,
  No. 17-15111, 2018 WL 4038194 (9th Cir. Aug. 24, 2018)................. 15, 18, 20

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004)..................................................14

*United States ex rel. Solis v. Millennium Pharm., Inc.*,
  885 F.3d 623 (9th Cir. 2018)..................................................27, 30

*U.S. v. Corinthian Colleges*,
   655 F.3d 984 (9th Cir. 2011) ........................................................... 15, 20

*Ebeid ex rel. U.S. v. Lungwitz*,
   616 F.3d 993 (9th Cir. 2010) ...................................................... 16, 23, 24

*United States v. Celgene Corp.*,
   226 F. Supp. 3d 1032 (C.D. Cal. 2016) ........................................... 20

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
   136 S. Ct. 1989 (2016) ............................................... 15, 16, 18, 20, 22

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ........................................................ 23

**Statutes**

31 U.S.C. § 3729(a)(1)(A) ................................................................. 18

31 U.S.C. § 3729(a)(1)(G) ................................................................. 22

31 U.S.C. § 3729(b)(1)(A) ................................................................. 18

31 U.S.C. § 3729(b)(1)(B) ................................................................. 18

31 U.S.C. § 3729(b)(4) ....................................................................... 20

31 U.S.C. §§ 3730(b)(1) ..................................................................... 25

31 U.S.C. § 3730(e)(4)(A) ........................................................ 25, 26, 29

31 U.S.C. § 3730(e)(4)(B) ................................................................. 30

**Other Authorities**

Federal Rules of Civil Procedure 4(m) ............................................... 9

Federal Rules of Civil Procedure Rule 9 ........................................... 23

Federal Rules of Civil Procedure Rule 9(b) ................................. *passim*

Federal Rules of Civil Procedure Rule 12(b)(1) ............................... 14

Federal Rules of Civil Procedure Rule 12(b)(6) ............................... 14

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Relator Frank Adomitis's Second Amended Complaint for Violation of the Federal False Claims Act ("FCA") against Community Memorial Health System, dba Ojai Valley Community Hospital[1] ("OVCH") should be dismissed for failure to state a claim, failure to plead fraud with particularity, and lack of subject matter jurisdiction. Relator's Second Amended Complaint suffers from the same deficiencies that resulted in this Court dismissing his First Amended Complaint.

Relator still contends that OVCH does not meet the requirements to qualify for Critical Access Hospital ("CAH") certification. From that premise, Relator incorrectly concludes that OVCH must have made unidentified false representations and submitted unidentified false claims to and/or was overpaid by the government in violation of the FCA. But Relator's general, conclusory allegations do not withstand scrutiny. The Second Amended Complaint should be dismissed without leave to amend and with prejudice as to Relator.

First, Relator once again failed to allege the required elements to state a claim upon which relief can be granted under the FCA. He failed to identify any false statements or fraudulent conduct. He also failed to allege both the required scienter and materiality.

Second, Relator failed to allege his claims with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure. Instead, Relator makes general, unspecified, conclusory allegations. Such allegations are insufficient to state a claim under the FCA.

Finally, the FCA's public disclosure bar deprives this Court of subject matter jurisdiction. Relator's allegations were publicly disclosed in 2013 before OVCH

---

[1] In 2006, Ojai Valley Community Hospital, a California Corporation, merged with Community Memorial Health System. Community Memorial Health System is the surviving corporation following the merger.

was certified as a CAH and again in 2015 after OVCH was certified, but before Relator initiated this action. Relator is not an original source. Accordingly, the public disclosure bar applies and deprives this Court of subject matter jurisdiction.

For the foregoing reasons, and as discussed more fully below, Relator's Second Amended Complaint should be dismissed without leave to amend and with prejudice as to Relator.

## II.   BACKGROUND AND STATEMENT OF FACTS

### A.   Procedural Background

Relator filed his original Complaint on September 21, 2017, and the government quickly declined to intervene. *See* Dkt. No. 5. Subsequently, on December 19, 2017, the Court issued an order unsealing the case and ordering Relator to serve the Complaint on OVCH. *See* Dkt. No. 6. Under Federal Rule of Civil Procedure 4(m), Relator had 90 days—i.e., until March 19, 2018—to effect service. On March 20, 2018, Relator requested that the clerk issue a summons, and Relator then served OVCH on March 29, 2018.

On April 19, 2018, OVCH filed a Motion to Dismiss. Dkt. No. 12. Rather than contest the Motion, on May 14, 2018, Relator filed his First Amended Complaint. Dkt. No. 17. On May 29, 2018, OVCH filed a Motion to Dismiss Relator's First Amended Complaint. Dkt. No. 18. On July 30, 2018, this Court granted OVCH's Motion to Dismiss the First Amended Complaint. Dkt. No. 24.

On September 4, 2018, Relator filed his Second Amended Complaint with the same causes of action as the First Amended Complaint. Dkt. No. 25.

### B.   Relator's Allegations About the Medicare Reimbursement Program and the CAH Framework[2]

Relator's core allegation is that OVCH should not have been certified as a CAH under the CAH framework. *See* Dkt. No. 25, Second Am. Compl. ¶¶ 14-27.

---

[2] For purposes of its Motion to Dismiss only, and within the confines of the legal standard for a motion to dismiss, OVCH recounts—but does not admit that they are

The U.S. Department of Health and Human Services, through the Centers for Medicare and Medicaid Services ("CMS"), administers the Medicare program, including the CAH framework. *Id.* ¶ 14. In 1997, the Balanced Budget Act created a CAH "certification to ensure that hospital care is accessible to beneficiaries in rural communities." *Id.* ¶ 15. "CAHs are reimbursed differently by Medicare than other acute care hospitals. CAHs receive federal reimbursement incentives designed to attract hospital providers to communities that would otherwise have difficulty receiving hospital care." *Id.* ¶ 16.

Relator alleges that "[h]ospitals must meet specific requirements in order to qualify for the CAH certification and receive the favorable Medicare reimbursements." *Id.* ¶ 18. According to Relator, two of the requirements that CAHs must meet are location-related. CAHs allegedly must be both (1) a minimum distance from other hospitals and (2) in a rural area or in an area that is treated as rural. *Id.* ¶¶ 19-21. Relator contends that hospitals can meet the minimum distance requirement "by being located more than a 35-mile drive from a hospital or another CAH or … by being located more than a 15-mile drive from a hospital or another CAH in areas of mountainous terrain or areas where only secondary roads are available." *Id.* ¶ 20. Relator further alleges that CAHs must meet additional requirements, including, for example, that "CAHs cannot have more than 25 beds that are used for acute care or 'swing-bed' patients." *Id.* ¶ 22.

**C.    Government Reports Have Concluded Most CAHs Do Not Meet the Location Requirements**

Because of a U.S. Department of Health and Human Services' public August 2013 report (the "2013 Report"), it is well known that the majority of CAHs do not meet the alleged location requirements that Relator addresses in his Second Amended Complaint. In August 2013, the Department of Health and Human

accurate or concede to—Relator's allegations.

Services, Office of Inspector General issued a report that most CAHs do not meet the location requirements. *See* Request for Judicial Notice ("Req. Jud. Not."), Ex. A. The 2013 Report found: "Nearly two-thirds of CAHs would not meet the location requirements …. The vast majority of these CAHs would not meet the distance requirement." *Id.* at 12. Based on its findings, the 2013 Report recommended that "CMS should ensure that the only CAHs to remain certified would be those that serve beneficiaries who would otherwise be unable to reasonably access hospital services." *Id.* at "Executive Summary" (second page). The 2013 Report recommended CMS "ensure that it periodically reassesses CAHs for compliance with all location-related requirements." *Id*. An OIG Report from 2015 (the "2015 Report") reiterated the 2013 Report's determination "that nearly two-thirds of CAHs would not meet the location requirement if required to re-enroll; a vast majority would not be able to meet the distance requirement" and "concluded that only CAHs that serve beneficiaries who would be otherwise unable to reasonably access hospital services should remain certified." *See* Req. Jud. Not., Ex. E, at ii, 3.

### D.   Procedures for CAH Approval and Recertification

Hospitals like OVCH do not determine whether they meet the requirements—including the location and distance requirements—to be a CAH. Instead, there is a thorough application, survey, and approval process for a hospital to become a CAH. CMS's regional offices, working with state agencies, determine whether hospitals meet the requirements or otherwise should be certified as a CAH. Req. Jud. Not., Ex. B § 2256 (RO Procedures for CAH Approval). State Operations Manual also provides specific procedures and guidance regarding the regional office's verification of the location and distance requirements *before* approving a hospital as a CAH. *Id.* § 2256A (Note to Verification Criteria). Only after a thorough evaluation of a hospital is a hospital notified that it has been approved as a CAH. *Id.* § 2256B (Notification).

1   Further, there are specific requirements for recertifying a hospital as a CAH,

2   which include the regional office evaluating and verifying the CAH's compliance

3   with the location and distance requirements. A February 12, 2016, memorandum

4   from CMS explains that regional offices determine whether the CAH meets the

5   location and distance requirements or otherwise should be certified as a CAH:

6   Annually, the RO must request from each State

7   Agency (SA) a list of all CAHs expected to undergo a

8   recertification survey over the next 12 months…. Prior to

9   the date of an SA or Accrediting Organization (AO) CAH

10   recertification survey, the RO must determine whether the

11   CAH meets the status and location requirements.

12   Assessing the location requirements must include

13   evaluating the distance of any acute care facilities from

14   that of the CAH…. The RO must complete a CAH

15   Recertification Checklist: Rural and Distance or

16   Necessary Provider Verification (copy attached) for

17   evaluating, determining, and documenting compliance

18   with the CAH location-related Conditions of Participation

19   (CoPs)….

20   Once the RO has made the determination that a

21   particular CAH is in current compliance with the rural

22   status and distance requirements, it must contact the

23   SA/AO to advise them that a recertification or

24   reaccreditation survey may be conducted....

25   Req. Jud. Not., Ex. C, at 2.

26   **E.     Relator's Allegations Regarding Ojai Valley Community Hospital**

27   Against this general backdrop, Relater alleges that in February 2014—at least

28   five months after the 2013 Report that the majority of CAHs did not meet the

location and distance requirements—OVCH was certified as a CAH. Dkt. No. 25, Second Am. Compl. ¶ 31. And OVCH allegedly began holding "itself out to be a CAH serving a rural area in Ojai Valley …." *Id.*

Because Relator believes that OVCH should not have been certified as a CAH, Relator summarily concludes that OVCH must have committed fraud and engaged in fraudulent practices in violation of the FCA. *Id.* ¶¶ 28-55. However, Relator failed to allege anything about the application, survey, and approval process that OVCH completed to become a CAH. Relator does not allege that OVCH made any false statement. Instead, Relator relies on smoke and mirror arguments about the number of days spent in swing beds and recites the questions the government asks hospitals in CMS Form 2552-10. However, Relator does not allege what OVCH disclosed, the representations that it made, or the process that it went through before it was approved as a CAH. *See generally id.* Relator also failed to allege who made any allegedly fraudulent representations or when or how any allegedly fraudulent representations were made. *Id.*

Without specificity, Relator generally alleges that OVCH is not designated as a "necessary provider" CAH, "does not meet the distance requirements for CAH certification," and has too many beds to be a CAH. *Id.* ¶¶ 31-37. Relator includes allegations about the number of days patients stayed in swing beds and concludes CMHS—not OVCH—"has been using the SNF beds as an extension to its SNF unit." *Id.* ¶ 37. Relator also claims that OVCH "maintained 91 beds"—without delineating how many of each type of bed. *Id.* ¶ 36. Critically, Relator does not allege how many swing beds OVCH maintains. *Id.*

Finally, Relator concludes that some unnamed person or persons at OVCH filed allegedly false cost reports and signed standard CMS certification and compliance forms with unidentified false, material representations because OVCH allegedly should not have been certified as a CAH. *Id.* ¶¶ 41-55. According to Relator, OVCH thereby "substantially overcharged, or caused others to overcharge,

1  the Government for inpatient and outpatient services provided to Medicare

2  beneficiaries. As a result of this misrepresentation, the Government overpaid for

3  such services." *Id.* ¶ 52.

4  ### III.   LEGAL STANDARD

5  ### A.   Rule 12(b)(1): Lack of Subject Matter Jurisdiction

6  Relator, as the party asserting federal subject matter jurisdiction, "bears the

7  burden of proving its existence." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598

8  F.3d 1115, 1122 (9th Cir. 2010) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511

9  U.S. 375, 377 (1994)). Without subject matter jurisdiction, a federal district court

10  cannot adjudicate the case before it. *See generally id.*

11  "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for*

12  *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack is limited

13  to the complaint, but a factual attack is not. When resolving a factual attack, "the

14  district court may review evidence beyond the complaint without converting the

15  motion to dismiss into a motion for summary judgment. The court need not

16  presume the truthfulness of the plaintiff's allegations." *Id.* (citations omitted).

17  ### B.   Rule (12)(b)(6): Failure to State a Claim

18  If a complaint "lacks a cognizable legal theory or sufficient facts to support a

19  cognizable legal theory," then it should be dismissed. *Mendiondo v. Centinela*

20  *Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citing *Balistreri v. Pacifica*

21  *Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990)). Under Rule 12(b)(6), factual

22  allegations must be enough to "raise a right to relief above a speculative level." *Bell*

23  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[L]abels and conclusions,

24  and a formulaic recitation of a cause of action's elements will not do." *Id.* at 545.

25  "[D]etermining whether a complaint states a plausible claim is context specific,

26  requiring the reviewing court to draw on its experience and common sense."

27  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009).

28

Additionally, "[t]he heightened pleading standard of Rule 9(b) governs FCA claims." *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011) (citing *Bly–Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001)). "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Id.* at 1055. Moreover, "claims of fraud or mistake—including FCA claims—must, in addition to pleading with particularity, also plead plausible allegations." *Id.*

## IV.   ARGUMENT

### A.   Relator Failed to Plead Any Claims

#### 1.   Relator Failed to Allege False Certification (Counts I and II)

Putting subject matter jurisdiction aside for the moment, Relator failed to allege false certification claims under the FCA against OVCH. *See* Dkt. No. 25, Second Am. Compl. ¶¶ 59-68. "The essential elements of an FCA claim are (1) a false statement or fraudulent course of conduct, (2) made with requisite scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *U.S. v. Corinthian Colleges*, 655 F.3d 984, 992 (9th Cir. 2011); *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 902 (9th Cir. 2017) (citing *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2000-02 (2016)). The FCA also recognizes an implied false certification theory as a basis for liability where two conditions are satisfied: First, the defendant "must not merely request payment, but also make specific representations about the goods or services provided." *Campie*, 862 F.3d at 902 (citing *Escobar*, 136 S. Ct. at 2000); *see also U.S. ex rel. Rose v. Stephens Institute*, No. 17-15111, 2018 WL 4038194, at *4 (9th Cir. Aug. 24, 2018). Second, the defendant's "failure to disclose noncompliance with material statutory, regulatory, or contractual

requirements must 'make[] those representations misleading half-truths.'" *Campie*, 862 F.3d at 903 (quoting *Escobar*, 136 S. Ct. at 2000).[3]

Here, Relator failed to allege any FCA false certification claim against OVCH because he failed to allege any specific false statements, scienter, or materiality.

### a.      Relator Failed to Allege Specific False Statements

The *sine qua non* of an FCA cause of action is the submission of a "false or fraudulent" claim for payment. *See U.S. ex rel. Cafasso* at 1057. "The false statement element is the heart of the FCA claim: 'Violations of laws, rules, or regulations alone do not create a cause of action under the FCA. It is the false *certification* of compliance which creates liability when certification is a prerequisite to obtaining a government benefit.'" *United States ex rel. Brooks v. Trillium Cmty. Health Plan, Inc.*, No. 6:14-CV-01424-AA, 2016 WL 1725300, at *6 (D. Or. Apr. 29, 2016) (quoting *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996)) (emphasis in original).

Here, Relator failed to identify and allege any specific false statements, misleading half-truths, or fraudulent conduct by OVCH. Relator also failed to allege that compliance is a prerequisite for payment to CAHs or that noncompliance leads the government to refuse to pay claims, reimburse the claims at a lower rate, or seek to retroactively recover payment. *See Escobar*, 136 S. Ct. at 2003 (2016). Instead, Relator concludes that OVCH has "nearly 3 times *too many* beds allowable under Medicare's [conditions of participation]" because "Defendant maintained 91 beds." Dkt. No. 25, Second Am. Compl. ¶ 36. Relator also claims a CAH may only have "25 or fewer beds used for inpatient care or swing-bed services." *Id*. ¶ 35. But Relator never alleges how many beds OVCH uses for inpatient care or swing-bed

---

[3] The United States' Statement of Interest (Dkt. No. 16) concerning the Supreme Court's ruling in *Escobar* and its impact on *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010) has no bearing on whether Relator properly alleged materiality and scienter in his FCA claims, as discussed more fully below.

services. Nor does Relator claim which Medicare condition of participation OVCH is violating by having 91 beds. And, critically, certain bed types do not count toward the 25 bed requirement for CAHs, but Relator failed to delineate the alleged 91 beds by bed type—e.g., swing beds, examination procedure beds, beds in Medicare certified rehabilitation or psychiatric distinct part units, etc.[4] Ultimately, like Relator's first two complaints, his Second Amended Complaint does not identify any specific false statement attributable to OVCH.

Moreover, the Second Amended Complaint does not allege any details regarding when OVCH made certifications to the federal government, how they were made, or what they contained. This Court explained in its Order dismissing Relator's First Amended Complaint that "Relator has not pleaded who submitted the false claims, any specific claims that were submitted to CMS, any factual fraudulent charges Ojai submitted, or why the representations were false." Dkt. No. 24, at 8. Relator failed to cure these deficiencies in his Second Amended Complaint. Once again, Relator recites Form 2552's language and explains that the Form asks each hospital if it qualifies as a CAH. Dkt. No. 25, Second Am. Compl. ¶¶ 42-43. Relator, however, never alleges who, when, or whether anyone answered this question. As this Court previously noted: "Relator has not alleged any 'reliable indicia' to lead the Court to infer any false claims or documents were actually submitted by Ojai to CMS either to initially obtain its CAH designation or subsequently for reimbursement." Dkt. No. 24, at 8-9.

Relator also failed to state an implied false certification theory. The Supreme Court has held that an implied certification theory can be a basis for liability "at least where two conditions are satisfied: first, the claim does not merely request payment, but also makes specific representations about the goods or services

---

[4] *See* Req. J. Not., Ex. F (Appendix W - Survey Protocol, Regulations and Interpretive Guidelines for Critical Access Hospitals (CAHs) and Swing-Beds in CAH) at 100.

1    provided; and second, the defendant's failure to disclose noncompliance with

2    material statutory, regulatory, or contractual requirements makes those

3    representations misleading half-truths." *Escobar*, 136 S. Ct. at 2001. The Ninth

4    Circuit recently determined that "Relators must satisfy *Escobar*'s two conditions to

5    prove falsity, unless and until our court, *en banc*, interprets *Escobar* differently."

6    *U.S. ex rel. Rose v. Stephens Institute*, No. 17-15111, 2018 WL 4038194, at *4 (9th

7    Cir. Aug. 24, 2018).

8            As explained above, Relator does not make any allegations about the specific

9    goods or services provided or any specific claims about alleged misrepresentations

10   that OVCH purportedly made. Instead, Relator relies on generic language from

11   government forms—not the specific services OVCH provided or what

12   representations it actually made in the forms. Relator thus failed to plead the FCA

13   claims and, as discussed below, he cannot meet the pleading requirements of Rule

14   9(b).

15                          **b.      Relator Failed to Allege Scienter**

16           Relator failed to allege that any false statement, misleading half-truth, or

17   fraudulent conduct was made or carried out with the required scienter. To satisfy

18   the FCA's scienter requirement, a relator must allege that the defendant acted

19   "knowingly." *See* 31 U.S.C. § 3729(a)(1)(A), (B). Knowingly means the entity "has

20   actual knowledge of the information" or "acts in deliberate ignorance" or "in

21   reckless disregard" of the truth or falsity of that information." 31 U.S.C.

22   § 3729(b)(1)(A). Knowledge does not require "proof of specific intent to defraud."

23   31 U.S.C. § 3729(b)(1)(B). Here, Relator failed to allege that OVCH was aware or

24   should be been aware that it allegedly did not meet the requirements to be a CAH,

25   especially given the thorough application, survey, and approval process that OVCH

26   went through to become a CAH. *See generally* Dkt. No. 25, Second Am. Compl.;

27   Req. Jud. Not., Ex. B § 2256 (RO Procedures for CAH Approval).

28

With regard to scienter, the Second Amended Complaint contains Relator's conclusory assertions that OVCH:

- "[was] aware or should have been aware that they did not meet the distance requirements given the absence of evidence to trigger the 'mountainous terrain' exception";
- "with actual knowledge, reckless disregard, or deliberate ignorance, made, used, and/or caused to be made or used, false records, statements, and certifications material to false or fraudulent claims"; and
- with actual knowledge, reckless disregard, or deliberate ignorance, received millions of dollars from Medicare to which they were not entitled and which they had an obligation to refund."

*See* Dkt. No. 25, Second Am. Compl. ¶¶ 53, 60, 65, 70. Relator also recites language from Community Memorial Hospital's compliance policy that is "designed . . . with the purpose of preventing fraud and abuse within the Medicare and Medicaid programs. . ." *Id*. ¶ 54. Relator then concludes that OVCH has "no excuse for making the misrepresentations on CMS Form 2552." *Id*. Finally, Relator suggests "[t]he fact that CMHS has a robust compliance program in place to ensure compliance with all...laws, CMHS cannot claim it was unaware of the distance requirement." *Id*. ¶ 58.

But none of the facts in the Second Amended Complaint support Relator's conclusory allegation that OVCH knowingly submitted false claims. A recitation of Community Memorial's compliance policy is not an allegation that anyone at OVCH acted with the required scienter. Similarly, stating CMHS "cannot claim it was unaware" is not an adequate scienter allegation, which requires actual knowledge. Relator's allegations of scienter, unsupported by any alleged facts, are insufficient to survive a motion to dismiss. *See Ashcroft v. Iqbal*, 129 S. Ct.at 1949 (2009) (stating that "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertions" devoid of

1   "further factual enhancement"); *U.S. ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984,

2   997 (9th Cir. 2011) (allegation that defendant "knew it was not eligible to receive

3   such funds based on its recruiting compensation practices" and statement that

4   defendants acted "knowingly" or "in deliberate ignorance or reckless disregard" did

5   not sufficiently plead scienter).

6   ### c.   Relator Failed to Allege Materiality

7   Relator failed to allege that any purported false statement, misleading half-

8   truth, or fraudulent conduct by OVCH was material to the government. Under the

9   FCA "'material' means having a natural tendency to influence, or be capable of

10   influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

11   The false statement or conduct must be "material to the government's decision to

12   pay out moneys to the claimant." *United States ex rel. Hendow v. Univ. of Phoenix*,

13   461 F.3d 1166, 1172 (9th Cir. 2006). The "key question is whether the government

14   is likely to attach significance to the [statutory, regulatory, or contractual]

15   requirement in deciding whether to tender payment." *United States v. Celgene*

16   *Corp.*, 226 F. Supp. 3d 1032, 1049 (C.D. Cal. 2016) (citing *Escobar*, 136 S. Ct. at

17   2002-03). The Supreme Court has explained: "A misrepresentation cannot be

18   deemed material merely because the Government designates compliance with a

19   particular statutory, regulatory, or contractual requirement as a condition of

20   payment." *Escobar*, 136 S. Ct. at 2003. A "condition of payment" is not

21   automatically dispositive of materiality. *Id.* at 2001. As the Ninth Circuit recently

22   explained, "even when a requirement is expressly designated a condition of

23   payment, not every violation of such a requirement gives rise to liability." *Rose*,

24   2018 WL 4038194, at *5 (citing *Escobar*, 136 S. Ct. at 1996).

25   Here, Relator still has not alleged the requisite connection that

26   noncompliance with the location requirements—or any purportedly alleged

27   violation by OVCH—is material to the government's payment decision itself. In

28   fact, the government already explained that compliance with the location

1    requirements should not necessarily impact payment. The 2013 Report notes:

2              To ensure that CMS can evaluate whether these and other

3              CAHs serve beneficiaries who would otherwise be unable

4              to reasonably access hospital services, CMS should

5              include alternative location-related Conditions of

6              Participation by which to further evaluate CAHs that

7              would otherwise lose their certifications because they did

8              not meet the distance or rural requirements. For example,

9              CMS could allow CAHs to keep their certifications if they

10             serve communities with high poverty rates, even if they

11             don't meet the location requirements.

12   *See* Req. Jud. Not., Ex. A, at 17-18. Moreover, an OIG Report from 2015 reiterated

13   the 2013 Report's determination that the location requirement was not material to

14   payment or certification: "That report also concluded that only CAHs that serve

15   beneficiaries who would be otherwise unable to reasonably access hospital services

16   should remain certified." *See* Req. Jud. Not., Ex. E, at ii, 3.

17          Simply put, Relator has not alleged, and cannot allege, the connection

18   between the location requirements and the government's decision to pay because

19   the government has already made clear it is willing to pay despite alleged violations

20   of the location and distance rules for CAH certification. Compliance with the

21   alleged location and distance requirements simply is not material.

22          Nevertheless, citing to a Northern District of Texas case, Relator concludes

23   that "CMS has determined the location requirements for CAH status to be material

24   for payment of enhanced rates." Dkt. No. 25, Second Am. Compl. ¶ 56 (citing

25   *Baylor Cty. Hosp. Dist. v. Burwell*, 163 F. Supp. 3d 372, 375 (N.D. Tex. 2016),

26   *aff'd sub nom. Baylor Cty. Hosp. Dist. v. Price,* 850 F.3d 257 (5th Cir. 2017)). But

27   this out-of-circuit case does not even concern the materiality of the location

28   requirements of a CAH to the government's decision to tender payment. Rather, the

case addressed whether a hospital was eligible for CAH status. It did not deal with a hospital that was already designated as a CAH and the hospital's receipt of payments. *See Baylor Cty. Hosp.*, 163 F. Supp. 3d at 377.

In the end, Relator's conclusions and arguments are not sufficient factual allegations necessary to support a conclusion of materiality. Relator has failed yet again to allege how OVCH's unidentified representations were material, especially given the 2013 and 2015 Reports that indicate that CMS may decide to maintain CAHs that do not otherwise meet the program requirements. *See* Req. Jud. Not., Ex. A, at 17-18; Req. Jud. Not. Ex. E, at ii, 3. As the U.S. Supreme Court explained in *Escobar*: "The materiality standard is demanding…A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Escobar*, 136 S. Ct. at 2003. Given the standard, Relator has not alleged, and cannot allege, that noncompliance leads the government to "consistently refuse[] to pay claims," reimburse the claims at a lower rate, or seek to retroactively recover payments. *Id*. at 2003. Further, Relator does not allege the government denied any claims for payment based on failure to meet CAH participation requirements after the 2013 and 2015 Reports were published. Accordingly, Relator failed to allege materiality.

## 2. Relator Failed to Allege a Reverse False Claim (Count III)

Relator also failed to allege a reverse false claim for OVCH's purported failure to refund overpayments owed to the government. Dkt. No. 25, Second Am. Compl. ¶¶ 69-72. The FCA imposes liability on a person or entity who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). Relator purports to allege a reverse false claim for OVCH's purported failure to

refund overpayments owed to the government. Dkt. No. 25, Second Am. Compl. ¶¶ 69-72. But because Relator failed to allege any false certification claim, he also failed to allege that the government overpaid OVCH. Moreover, Relator failed to allege that there was any false statement, misleading half-truth, or fraudulent conduct by OVCH with the required scienter that was material to the government, and resulted in any alleged failure by OVCH to refund overpayments to the government. *See generally id.*

### B. <u>Relator Failed to Plead Any of His Claims With Particularity</u>

All of Relator's claims (Counts I through III) sound in fraud and therefore must meet the heightened pleading standards of Rule 9 of the Federal Rules of Civil Procedure. *See Cafasso,* 637 F.3d at 1054 ("The heightened pleading standard of Rule 9(b) governs FCA claims."); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) ("When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim."). "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso*, 637 F.3d at 1055 (affirming dismissal of complaint). Because the FCA grants a right of action to private citizens only if they have independently obtained knowledge of fraud, complying with Rule 9(b) should not present a barrier to a legitimate *qui tam* plaintiff. *See U.S. ex rel. Cericola v. Federal Nat. Mortg. Assoc.*, 529 F. Supp. 2d 1139, 1144 (C.D. Cal. 2007).

Allegations like Relator's that simply identify a general sort of allegedly fraudulent conduct but do not specify particular circumstances of any discrete fraudulent statement are precisely what Rule 9(b) aims to preclude. *Cafasso*, 637 F.3d at 1057. An FCA complaint "must set forth what is false or misleading about a statement, and why it is false." *Ebeid*, 616 F.3d at 998. In particular, a relator must

either "identify representative examples of false claims to support every allegation" or "allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 998-999. For purposes of FCA claims, "reliable indicia" means particularized details of how false claims were likely submitted to the government based on, for instance, dates and descriptions of false records. *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009); *Ebeid*, 616 F.3d at 998-99 (adopting *Grubbs*).

Here, once again, Relator failed to allege Counts I through III of the Second Amended Complaint with particularity, as required. Relator generally alleges that OVCH does not qualify for CAH certification, submitted CMS Form 2252, received reimbursement as a CAH, and charged the government. *See generally* Dkt. No. 25, Second Am. Compl. Relator has not alleged, and cannot allege, the required who, what, when, where, and how of the purported fraud. Relator's allegations are devoid of the required details and particularity. Relator does not, and cannot, allege that he ever worked at OVCH or observed practices, policies, or procedures at the hospital. He does not, and cannot, allege what representations OVCH made when it was approved as a CAH or why any representations were allegedly false. Relator does not, and cannot, allege who made any allegedly false representations or half-truths, or when such statements were made. He also does not, and cannot, allege who engaged in some unstated, allegedly fraudulent conduct, when that unstated conduct occurred, and why it was fraudulent. He also failed to allege that any false claims were actually submitted or any details of any allegedly false claims. *See generally id.*

For example, Relator does not even allege what OVCH's CMC Form 2552-10 stated. Instead, Relator recites the generic Form's language, leaving placeholders where the alleged misstatements allegedly might have been added. Dkt. No. 25, Second Am. Compl. ¶ 46. There is not a single allegation that the Form was even filled out or signed by OVCH. Instead, Relator merely alleges, "[i]n submitting

1  CMC Form 2552-10 to Medicare for reimbursement, [OVCH] affirmed that it
2  presently qualified as a CAH. Additionally, [OVCH] also affirmed that the
3  information provided therein (including that it qualified as a CAH) was truthful and
4  honest." *Id*. ¶ 47. Even on Relator's third attempt, the Second Amended Complaint
5  does not include any particularities: it does not say who completed the form, what
6  this unnamed person included in the form, or whether they signed it. Without
7  providing any details, Relator merely claims OVCH "filed cost reports
8  affirmatively representing that it qualifies as a CAH even though it does not. . ." *Id*.
9  ¶ 51.

10       The requirements of Rule 9(b) "should easily be met in *qui tam* actions
11  because insiders who are privy to fraud, which is the group that the statute
12  encourages to bring these FCA lawsuits, 'should have adequate knowledge of the
13  wrongdoing at issue.'" *See Cericola*, 529 F. Supp. 2d at (quoting *Bly-Magee v.*
14  *California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). Here, in contrast, Relator has not
15  identified anyone who was involved in the supposed violations, when the supposed
16  violations occurred, or alleged that the Forms were ever filled out with allegedly
17  false information and signed. Because Relator failed to allege any claims with the
18  required specificity and particularity, his Second Amended Complaint should be
19  dismissed in its entirety.

20       **C.**    **The Court Lacks Subject Matter Jurisdiction**

21          **1.**    **The FCA's Public Disclosure Bar**

22       In addition to the foregoing, the Court lacks subject matter jurisdiction over
23  Relator's Second Amended Complaint because the public disclosure bar deprives
24  the Court of jurisdiction. The FCA permits private individuals to bring a *qui tam*
25  suit on the government's behalf against entities that have violated the FCA's
26  prohibitions. 31 U.S.C. §§ 3730 (b)(1). However, the Court "shall dismiss" any *qui*
27  *tam* claim if "substantially the same" allegations were previously publicly
28  disclosed, unless the relator is an original source. 31 U.S.C. § 3730(e)(4)(A); *U.S.*

1  *ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 569 (9th Cir. 2016) ("The FCA's

2  public disclosure bar deprives federal courts of subject matter jurisdiction when a

3  relator alleges fraud that has already been publicly disclosed, unless the relator

4  qualifies as an 'original source.'").

5      The public disclosure bar is triggered if: (1) the disclosure occurred via a

6  means specified in the FCA[5]; (2) the disclosure was public; and (3) the relator's

7  action is based on the publicly-disclosed information. *Id.* at 570; *see also Malhotra*

8  *v. Steinberg*, 770 F.3d 853, 858 (9th Cir. 2014). "[F]or a relator's allegations to be

9  'based upon' a prior public disclosure, 'the publicly disclosed facts need not be

10  identical with, but only substantially similar to, the relator's allegations.'" *Mateski*,

11  816 F.3d at 573 (quoting *United States ex rel. Meyer v. Horizon Health Corp.*, 565

12  F.3d 1195, 1199 (9th Cir. 2009), *overruled on other grounds by U.S. ex rel.*

13  *Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1128 n.6 (9th Cir. 2015)); *see*

14  *also Malhotra v. Steinberg*, at 858 (9th Cir. 2014) (stating that the phrase "based

15  upon" means "substantially similar to").

16        **2.**    **Relator's FCA Claims Were Publicly Disclosed in 2013 and**

17             **2015**

18      Relator's FCA claims here were publicly disclosed in 2013 and 2015 and are

19  therefore barred. Relator filed his initial Complaint on September 21, 2017—more

20  than four years after the U.S. Department of Health and Human Services' public

21  August 2013 Report about CAHs that purportedly did not meet the distance and

22  location requirements to be CAHs. *See* Req. Jud. Not., Ex. A. The 2013 Report fits

23  squarely within the FCA's public disclosure requirements. *See* 31 U.S.C.

24  § 3730(e)(4)(A) (stating that a Federal report, hearing, audit, or investigation

25  qualifies as a public disclosure under the FCA). Additionally, in a 2015 Report—

26  _____

27  [5] The means of disclosure include: "(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional,

28  Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media." 31 U.S.C. § 3730(e)(4)(A).

1   after OVCH was certified as a CAH but before Relator filed this action—the
2   government continued to express concerns that nearly two-third of CAHs would not
3   meet the location requirements. *See* Req. Jud. Not., Ex. E, at ii, 3.

4       **3.    The Claims in the Reports and Second Amended Complaint**
5            **are Substantially Similar**

6            Given the 2013 Report, when OVCH was approved as a CAH in 2014, the
7   government knew about, and publicly disclosed, the alleged issues that Relator
8   raises in his Second Amended Complaint. And those same alleged issues were
9   again disclosed in the 2015 Report—after OVCH was certified as a CAH but before
10  Relator filed his original Complaint. "A prior disclosure and an allegation may be
11  substantially similar when the prior public disclosure put the government 'on notice
12  to investigate the fraud before the relator filed his complaint.'" *United States ex rel.*
13  *Solis v. Millennium Pharm., Inc.*, 885 F.3d 623, 626 (9th Cir. 2018) (quoting *U.S.*
14  *ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 574 (9th Cir. 2016)). "The absence
15  of any explicit allegation of wrongdoing in the prior public disclosure 'is simply of
16  no moment' so long as 'the material transactions giving rise to the [defendant's]
17  allegedly unlawful . . . schemes were publicly disclosed.'" *Id*. at 627 (quoting *A-1*
18  *Ambulance Serv., Inc. v. California*, 202 F.3d 1238, 1245 (9th Cir. 2000)).

19           Here, Relator's claims in the Second Amended Complaint are substantially
20  similar to the prior public disclosures. In addition to the 2013 Report, the Regional
21  Inspector General, Office of Evaluation and Inspections, spoke with the 2013
22  Report's legal program analyst, Brian Jordan, in a public interview in 2013. *See*
23  Req. Jud. Not., Ex. D (Transcript for audio podcast: Critical Access Hospital
24  Designations). Because nearly two-thirds of existing CAHs would not have met the
25  CAH location requirements in 2011, Mr. Jordan noted "Medicare and beneficiaries
26  could have saved more than 1.3 million dollars for each dedesignated critical access
27  hospital. By dedesignating critical access hospitals less than 15 miles from the
28  nearest hospital, Medicare would have saved 449 million dollars." *Id*. Mr. Jordan

also "recommend[ed] that CMS periodically check if each critical access hospital still provides services that rural beneficiaries can't easily get somewhere else, and therefore deserves the increased financial support from Medicare and beneficiaries." *Id*. Finally, Mr. Jordan told the Regional Inspector General that necessary providers be required to meet the distance requirement. *Id*. These disclosures and recommendations are also consistent with the 2015 Report, which explained "[o]ver the last couple of years, the Office of Inspector General has performed several reviews at CAHs. In one such review [the 2013 report]. . . . [we] concluded that Medicare and beneficiaries would have saved $449 million if Congress granted [CMS] the authority to reassess whether all CAHs should maintain their certification based on location and distance requirements…." *See* Req. Jud. Not., Ex. E at ii, 3.

Relator's allegations are not "different in kind" from the foregoing public disclosures. Both before and after OVCH was certified as a CAH, the 2013 and 2015 Reports directly and explicitly alerted the government to allegations of the same specific area of purported fraud that Relator has raised in his various Complaints, namely that hospitals that did not meet the distance requirements for CAH certification nonetheless benefitted from CAH's reimbursement rate.[6] Relator's allegations concerning OVCH are not "genuinely new" and do not contain "material information of fraud" never before publicly alleged. *Mateski*, 816 F.3d at 579.

Additionally, pursuant to CMS's policies and procedures, OVCH would have been approved as a CAH only after the regional office and state agency independently confirmed that OVCH met all the conditions of participation to the government's satisfaction. *See* Req. Jud. Not., Ex. B § 2256 (RO Procedures for

---

[6] *See* Req. Jud. Not., Ex. D (Transcript for audio podcast: Critical Access Hospital Designations) (explaining CAH-designated hospitals receive higher Medicare reimbursements for most services compared to regular hospitals and are paid 101 percent of their costs).

CAH Approval). Moreover, during every recertification, the regional office determines whether a CAH like OVCH "is compliant with the CAH location and distance requirements" to the government's satisfaction. *Id.* § 2256A at Note; *see also* Req. Jud. Not., Ex. C. This all occurs within the context and backdrop of the 2013 and 2015 Reports.

Here, Relator's allegations are not merely substantially similar to the 2013 and 2015 Reports; they are nearly identical. The publicly-disclosed Reports are the bases and framework for Relator's Second Amended Complaint. Relator does not possess any non-public information to support his claims. Relator does not allege, and cannot allege, that he worked at OVCH or has any insider information. He simply has not made any allegations that are not based on publicly available and disclosed information.

### 4.     The Government Had Adequate Notice to Investigate

Under controlling law, a public disclosure need only enable the government to adequately investigate the case. *U.S. ex rel. Harshman v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1019 (9th Cir. 1999) (discussing 31 U.S.C. § 3730(e)(4)(A)). This test is "not hard to meet, and has been described as a 'quick trigger to get to the more exacting original source inquiry.'" *Malhotra v. Steinberg*, No. C09-1618JLR, 2013 WL 441740, at \*5 (W.D. Wash. Feb. 5, 2013), aff'd, 770 F.3d 853 (9th Cir. 2014) (quoting *Hagood v. Sonoma Cnty. Water Agency*, 81 F.3d 1465, 1476 n.18 (9th Cir. 1996)).

This Court previously determined Relator's claims were not substantially similar to the 2013 Report because it "does not contain allegations of fraudulent overcharging to Medicare." *See* Dkt. No. 24, at 6. But the 2013 Report concluded that the government could have saved $449 million by reassessing CAH certification based on location. The government recognized that two-thirds of CAHs were receiving reimbursements based on the higher CAH rates even though

they were not properly certified as CAHs. This is precisely the purported fraud that Relator alleges in his Second Amended Complaint.

The 2013 and 2015 Reports need not include specific allegations of fraudulent overcharging to Medicare or specific claims that CAHs used fraudulent documents to receive the designation. Rather, the public disclosure need only "enable the government to adequately investigate the case." *U.S. ex rel. Harshman v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, at 1019 (9th Cir. 1999). As Relator alleges in his Second Amended Complaint, "[t]he findings within the report are shocking. If CAHs were to undergo a re-certification examination today, nearly two-thirds would not meet the location requirement. . . ." Dkt. No. 25, Second Am. Compl. ¶¶ 25-26. Here, as demonstrated by the 2013 and 2015 Reports, the government was on notice to investigate this "shocking" allegation of fraud before, when, and after it certified OVCH as a CAH. The claims in the 2013 and 2015 Reports, interview, and the Second Amended Complaint are "close enough in kind and degree to have put the government on notice to investigate" before Relator filed this action. *United States ex rel. Solis v. Millennium Pharm., Inc.*, 885 F.3d 623, 627 (9th Cir. 2018). Accordingly, the public disclosure bar deprives this Court of subject matter jurisdiction over Relator's Second Amended Complaint unless he qualifies as an original source.

### 5.   Relator Is Not an Original Source

To be an original source, Relator must meet the requirements of 31 U.S.C. § 3730(e)(4)(B), but he does not. An "original source" is an individual who either (1) before a public disclosure, voluntarily disclosed to the government the information on which FCA allegations or transactions are based, or (2) has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions. *See* 31 U.S.C. § 3730(e)(4)(B). Relator does not meet either of these requirements.

1    Relator wholly failed to allege any facts that could give rise to the conclusion

2    that he is an original source. He has not alleged, and cannot allege, that he has any

3    knowledge of the application, survey, and approval process that resulted in

4    OVCH's approval as a CAH. He has not alleged, and cannot allege, anything about

5    the specific disclosures and representations that OVCH made when it was approved

6    as a CAH. Relator has not alleged anything but generally available, public

7    information. Accordingly, Relator is not, and cannot be, an original source.

8        **D.**    **<u>Relator Should Not Be Given Leave to Amend Again</u>**

9    Relator has now had three chances to state claims against OVCH, and he

10   should not have a fourth attempt. *See Foman v. Davis*, 371 U.S. 178, 182 (1962)

11   (explaining district courts should consider repeated failure to cure deficiencies by

12   previous amendment when deciding whether to grant leave to amend). "Dismissal

13   without leave to amend is proper if it is clear that the complaint could not be saved

14   by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008).

15   Accordingly, Relator's Second Amended Complaint should be dismissed without

16   leave to amend and with prejudice as to Relator.

17   **V.**    **<u>CONCLUSION</u>**

18   For the reasons set forth above, Relator's Second Amended Complaint

19   should be dismissed for failure to state a claim, failure to plead fraud with

20   particularity, and lack of subject matter jurisdiction. OVCH respectfully requests

21   that the Court dismiss the Second Amended Complaint without leave to amend and

22   with prejudice as to Relator.

23   Dated:  September 18, 2018

                      **ARENT FOX LLP**

24                By: /s/ Jeffrey R. Makin

25                   JEFFREY R. MAKIN
                ALEXANDER S. BIRKHOLD

26                   Attorneys for Defendant
                OJAI VALLEY COMMUNITY

27                   HOSPITAL, a d/b/a of COMMUNITY
                MEMORIAL HEALTH SYSTEM, a

28                   California Nonprofit Public Benefit
                Corporation