| | |
|---|---|
| 1 | JEFFREY R. MAKIN (SBN 252426) |
|   | jeffrey.makin@arentfox.com |
| 2 | ALEXANDER S. BIRKHOLD (SBN 304334) |
|   | alexander.birkhold@arentfox.com |
| 3 | **ARENT FOX LLP** |
|   | 555 West Fifth Street, 48th Floor |
| 4 | Los Angeles, California 90013-1065 |
|   | Telephone: 213.629.7400 |
| 5 | Facsimile:  213.629.7401 |
| 6 | Attorneys for Defendant |
|   | OJAI VALLEY COMMUNITY HOSPITAL, a |
| 7 | d/b/a of COMMUNITY MEMORIAL HEALTH |
|   | SYSTEM, a California Nonprofit Public Benefit |
| 8 | Corporation |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. FRANK ADOMITIS, an individual, | Case No. CV17-06972 JGB (KKx) |
| Plaintiff, | **DEFENDANT OJAI VALLEY COMMUNITY HOSPITAL'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT** |
| v. | |
| OJAI VALLEY COMMUNITY HOSPITAL; DOES 1 through 20, inclusive, | |
| Defendant. | Judge:  Hon. Jesus G. Bernal |
|   | Date:   November 5, 2018 |
|   | Time:   9:00 a.m. |
|   | Crtrm:  1 |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................... 5
II. ARGUMENT .............................................................................................. 5
   A. Relator Failed to Allege Any Claims................................................ 5
      1. Relator Failed to Allege False Certification (Counts I and II)................................................................................... 5
         a. Relator Failed to Allege Any False Statements ............... 5
         b. Relator Failed to Allege Scienter ..................................... 8
         c. Relator Failed to Allege Materiality ................................ 8
         d. Relator's Reliance on *Rose* Is Misplaced....................... 10
      2. Relator Failed to Allege a Reverse False Claim (Count III)............................................................................... 11
      3. Relator Failed to Allege Any Claim With Particularity ........... 12
   B. The Court Lacks Subject Matter Jurisdiction .................................. 13
      1. The 2013 and 2015 Reports Are Public Disclosures................ 13
      2. Relator Is Not An "Original Source"........................................ 14
   C. Relator Should Not Be Given Leave to Amend Again..................... 16
III. CONCLUSION ......................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*U.S. ex rel. Adomitis v. San Bernardino Mountains Community Hospital District*,
Case No. 5:17-cv-00002-JGB-KK ..............................................................*passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................ 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................ 8

*Bly-Magee v. Cal.*,
236 F.3d 1014 (9th Cir. 2001) ...................................................................... 12

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys.*,
637 F.3d 1047 (9th Cir. 2011) .................................................................. 5, 12

*U.S. ex rel. Cericola v. Federal Nat. Mortg. Assoc.*,
529 F. Supp. 2d 1139 (C.D. Cal. 2007) ........................................................ 12

*U.S. ex rel. Grubbs v. Kanneganti*,
565 F.3d 180 (5th Cir. 2009) ........................................................................ 12

*U.S. ex rel. Harshman v. Alcan Elec. & Eng'g, Inc.*,
197 F.3d 1014 (9th Cir. 1999) ...................................................................... 14

*U.S. ex rel. Hopper v. Anton*,
91 F.3d 1261 (9th Cir. 1996) ......................................................................... 5

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) ...................................................................... 16

*U.S. ex rel. Lee v. Corinthian Colls.*,
655 F.3d 984 (9th Cir. 2011) ......................................................................... 8

*U.S. ex rel. Rose v. Stephens Institute*,
901 F.3d 1124 (9th Cir. 2018) ............................................................ 6, 10, 11

*Schneider v. Cal. Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998) ....................................................................... 7

*U.S. ex rel. Solis v. Millennium Pharm., Inc.*,
 885 F.3d 623 (9th Cir. 2018) .................................................................................. 14

*Ebeid ex rel. U.S. v. Lungwitz*,
 616 F.3d 993 (9th Cir. 2010) .............................................................................. 6, 12

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*,
 136 S. Ct. 1989 (2016) ................................................................................... *passim*

**Statutes**

31 U.S.C. § 3729(b)(4) ................................................................................................ 8

31 U.S.C. § 3730(e)(4)(A) ......................................................................................... 14

31 U.S.C. § 3730(e)(4)(B) ......................................................................................... 15

**Other Authorities**

42 C.F.R. § 413.24 (f)(4)(iv) ....................................................................................... 7

Fed. R. Civ. P. 8 .......................................................................................................... 8

Fed. R. Civ. P. 9(b) ................................................................................................... 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Relator Frank Adomitis's Second Amended Complaint for violation of the Federal False Claims Act ("FCA") is substantively unsupported and jurisdictionally defective. On September 27, 2018, in the related case of *U.S. ex rel. Adomitis v. San Bernardino Mountains Community Hospital District*, Case No. 5:17-cv-00002-JGB-KK (herein after "*Mountains*"), this Court dismissed Relator's virtually identical FCA claims against San Bernardino Mountains Community Hospital District with prejudice. The result here should be the same. Relator's conclusory allegations do not withstand scrutiny, and his Opposition to OVCH's Motion to Dismiss does not save his claims. Relator has not alleged, and cannot allege, any FCA claims against OVCH. Relator's Second Amended Complaint should be dismissed without leave to amend and with prejudice.

## II. ARGUMENT

### A. Relator Failed to Allege Any Claims

#### 1. Relator Failed to Allege False Certification (Counts I and II)

##### a. Relator Failed to Allege Any False Statements

In his Second Amended Complaint, Relator failed to allege any false certification claim against OVCH. The *sine qua non* of an FCA cause of action is the submission of a "false or fraudulent" claim for payment. *See U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1057 (9th Cir. 2011). "Violations of laws, rules or regulations alone do not create a cause of action." *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996). Additionally, to pursue a false implied certification theory of liability, as Relator does here, Relator must allege more than "unsavory conduct." *Cafasso*, 637 F.3d at 1058. For a certification "to be 'false' under the Act, it must be an intentional, palpable lie." *Hopper*, 91 F.3d at 1267. Moreover, compliance with a law, rule, or regulation must be a prerequisite to obtaining payment, making the submission of the claim for payment

knowingly false. *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 997-998 (9th Cir. 2010).

Relator failed to identify and allege any specific false statements, misleading half-truths, or fraudulent conduct by OVCH. *See generally* Dkt. No. 25, SAC ¶¶ 28-55. Relator also has not alleged either that compliance is a prerequisite for payment or that noncompliance leads the government to refuse to pay claims, reimburse the claims at a lower rate, or seek to retroactively recover payment. *See Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2003 (2016); *U.S. ex rel. Rose v. Stephens Institute*, 901 F.3d 1124, at *4 (9th Cir. 2018).

Now, in an effort to salvage his Second Amended Complaint, Relator argues that a Critical Access Hospital ("CAH"), like OVCH, cannot have "more than 25 acute care inpatient beds." Dkt. No. 27, Opp., at 10-11 (citing Dkt. No. 25, Second Am. Compl., ¶ 37). He also argues that "OVCH has misled the government as to the nature of the facility for which it is receiving CAH reimbursement" because it "is using all 25 beds as swing beds…" *Id.* at 10. But Relator misrepresents the Second Amended Complaint.[1] The Second Amended Complaint merely claims that OVCH "maintained 91 beds"—without delineating how many of each type of bed. Dkt. No. 25, Second Am. Compl., ¶ 36. Moreover, Relator has not alleged, and cannot allege, that OVCH made any false statement or representation with regard to its beds or the nature of its facility—let alone one that was material under the FCA.

Relator also ignores his Second Amended Complaint and argues that "every time OVCH submitted a CMS Form 2552-10 cost report wherein it answered

---

[1] Paragraph 37 states: "For this reason, Defendants have been using swing beds as additional beds for their SNF and have been receiving 101% of the cost of providing SNF services for Medicare patients in the swing beds. Based on the information in the Hospital's annual cost reports submitted to CMS for years ending 12/31/2014, 12/31/2015, 12/31/2016, and 12/31/2017 this is the number of days Medicare patients stayed in swing beds receiving SNF services out of the total patients receiving SNF services in swing beds…" and lists the alleged number of days patients spent in swing beds. *See* Dkt. No. 25, Second Am. Compl., ¶ 37.

affirmatively that it qualified as a CAH, OVCH submitted a false claim for the enhanced payment available only to CAH hospitals." *See* Dkt. No. 27, Opp. at 11. Relator claims "these cost reports were signed by OVCH's officers or administrators warranting the contents as true and correct." *See id*. at 12 (citing Dkt. No. 25, Second Am. Compl., ¶ 46). However, once again, Relator misrepresents the allegations in the Second Amended Complaint, which never alleges that the cost reports were signed by OVCH's officers or administrators—or anyone specific:

> CMS Form 2552-10, which is presented by CAHs also contain an additional certification, in accord with 42 C.F.R. § 413.24 (f)(4)(iv), entitled "Certification By Officer Or Administrator Of Provider(s)," which states as follows…."

Dkt. No. 25, Second Am. Compl., ¶ 46. The paragraph then recites the generic language of the Form.

Relator never alleges that anyone at OVCH ever signed a report that OVCH qualified as a CAH, the contents of any report, or when any report was submitted. In short, Relator failed to allege that OVCH actually completed and submitted any false certification or made any false statement, and Relator's arguments and purported new allegations do not salvage his Second Amended Complaint.[2]

In sum, Relator has not alleged, and cannot allege, that OVCH submitted false certifications of compliance to the government or made any false statements whatsoever to the government. Relator still has not alleged any specific allegations regarding an allegedly fraudulent scheme or that OVCH actually submitted false claims or documents to the government either to obtain its CAH designation or for reimbursement. *See* Dkt. No. 24, Order Granting Motion to Dismiss FAC, at 8-9.

---

[2] Relator cannot avoid dismissal by alleging new facts in an opposition. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

### b. Relator Failed to Allege Scienter

Relator's allegations fall short of plausibly alleging scienter, as required. Although the knowledge or scienter element of a fraud claim need not be stated with particularity, it must still be alleged sufficiently to make entitlement to relief plausible. *See* Fed. R. Civ. P. 8; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). Here, for example, Relator has not alleged specifically who—or that any identifiable person acting on behalf of OVCH—acted with the required scienter. Relator's allegations of scienter simply are insufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (stating that "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertions" devoid of "factual enhancement"); *U.S. ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 997 (9th Cir. 2011) (stating that allegations that a defendant "knew it was not eligible to receive such funds based on its recruiting compensation practices" and that defendants acted "knowingly" or "in deliberate ignorance or reckless disregard" did not sufficiently allege scienter).

### c. Relator Failed to Allege Materiality

Relator also failed to allege that any purported false statement, misleading half-truth, or allegedly fraudulent conduct by OVCH was material to the government. Under the FCA "'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). The Supreme Court has explained that "[a] misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Escobar*, 136 S. Ct. at 2003. A "condition of payment" is not automatically dispositive of materiality. *Id.* at 2001.

Here, according to Relator, OVCH allegedly verified that it qualified as a CAH and "[t]his intentional departure from the truth is plainly material to whether OVCH's medical services at the higher 'CAH' rate were reimbursable…" Dkt. No.

27, Opp., at 12. But for the third time, notwithstanding his unsubstantiated insistence that this is "plainly material," Relator does not allege the requisite connection that noncompliance with the location requirements or any other CAH requirements is material to the government's payment decision itself. *See Mountains*, Dkt. No. 23 at 9 (citing *Escobar*, 136 S. Ct. at 2002-04).

Relator still has not alleged the requisite connection that noncompliance with the location requirements—or any purportedly alleged violation by OVCH—is material to the government's payment decision itself. In his Opposition, Relator suggests CMS issued "a report identifying CAHs that might lose their rural status [which] shows the government considers the distance requirement material enough to insist that CAHs bring themselves into compliance where possible so they won't lose the enhanced CAH rate." Dkt. No. 27, Opp., at 21-22 (citing Second Am. Compl., ¶ 57). But the Second Amended Complaint does not include an allegation that the government actually conditions the enhanced rate on compliance with the distance requirements or refuses to pay if hospitals do not bring themselves into compliance. Rather, Relator only cites to his own unsupported assertion that the government would not pay the CAH rates. *See* Dkt. No. 25, Second. Am. Compl., ¶ 57. As this Court previously explained, however, "there are numerous laws and regulations a hospital must comply with to receive and maintain CAH designation, and Relator does not point to a specific regulation, statute, or agreement 'explicitly condition[ing]' the payment of claims on the location requirements or the number of beds…" Dkt. No. 24, Order Granting Motion to Dismiss FAC, at 10.

Further, the government has already made clear that it is willing to pay despite alleged violations of the location and distance rules for CAH certification. *See* Dkt. No. 26, Motion, at 21 (citing Req. Jud. Not., Ex. A, at 17-18) ("For example, CMS could allow CAHs to keep their certifications if they serve communities with high poverty rates, even if they don't meet the location requirements."). Because Relator cannot rebut this argument, he only argues "the

concerns regarding denial of medical services to poor communities does not apply to Ojai Valley." Dkt. No. 27, Opp., at 23. Relator still has not alleged the connection between the location requirements and the government's decision to pay, and he ignores that the government has explained noncompliance is not material to the payment decision itself.

### d.   Relator's Reliance on *Rose* Is Misplaced

Relator repeats, largely verbatim, his argument from *Mountains* that the Ninth Circuit's recent holding in *U.S. ex rel. Rose v. Stephens Institute*, 901 F.3d 1124 (9th Cir. 2018) mandates denial of OVCH's Motion to Dismiss. *See* Dkt. No. 27, Opp. at 12-18; *cf. Mountains*, Dkt. No. 43 at 2-20. This Court, however, already admonished Relator for reading *Rose* too broadly to support his claim of materiality, even before Relator filed this Opposition:

> Relator reads *Rose* too broadly to support his claim of materiality. While *Rose*, in analyzing the materiality of an FCA claim under Title IV of Higher Education Act, did look to conduct other than denial of funding, the relevant government conduct in that case went far beyond the mere publication of an OIG report.

*See Mountains*, Dkt. No. 46 at 12 (citing *Rose* at *7). This Court further explained:

> Even if Relator had alleged that CMS had taken some prior actions to recoup or deny funds based on non-compliance with the location requirement, the Court would still be inclined to dismiss without some allegations as to the seriousness of the underlying violation of the mountainous location provision leading to CMS action. The nature of Defendant's noncompliance with the mountainous location provision appears to be so "minor or insubstantial" as to strongly weigh against materiality.

*Id*. at n.7 (citing *Escobar* at 2003; *Rose* at *8).

Despite the Court's warning, Relator now claims that he has "uncovered evidence [the "Curry Letter"] showing the government is actively seeking to get a handle on noncompliance with the distance requirements by decertifying CAHs that do not meet the distance requirement." Dkt. No. 27, Opp., at 20. But getting "a handle on noncompliance" and possibly decertifying hospitals is not analogous to *Rose*, where non-compliant schools had to pay penalties and where the government recouped funds. The Curry Letter does not establish—or even indicate—that noncompliance leads the government to "consistently refuse[] to pay claims," reimburse the claims at a lower rate, or seek to retroactively recover payments. *Escobar*, 136 S. Ct. at 2003. The Curry Letter also does not prove CMS sought to deny or recoup funds for any degree of non-compliance with the location requirement—or any requirement—where claims were already submitted and previously paid. *See Mountains*, Dkt. No. 46 at 12. Relator has not alleged, and cannot allege, that the government denied any claims for payment based on failure to meet CAH participation requirements after the 2013 and 2015 Reports were published or sought to recoup funds, which this Court has already explained would still not satisfy the materiality requirements here. *Id*.

### 2. Relator Failed to Allege a Reverse False Claim (Count III)

Relator incorrectly contends that he "sufficiently pleaded separate reverse False Claims Act violations" because he "pleaded both that OVCH submitted false claims that resulted in overpayments and failed to return those overpayments." Dkt. No. 27, Opp., at 24. As discussed above, because Relator failed to allege any false certification claims, he also failed to allege that the government overpaid OVCH. Moreover, Relator failed to allege that there was any false statement, misleading half-truth, or fraudulent conduct by OVCH with the required scienter that was material to the government and resulted in any alleged failure by OVCH to refund overpayments to the government.

### 3. Relator Failed to Allege Any Claim With Particularity

Relator must point to allegations in the Second Amended Complaint that not only disclose the "who, what, when, where, and how" of any alleged fraud, but also connect those facts to the submission of false claims for payment. *Cafasso*, 637 F.3d at 1055. Because the FCA grants a right of action to private citizens only if they have independently obtained knowledge of fraud, complying with Rule 9(b) should not present a barrier to a legitimate *qui tam* complaint. The requirements of Rule 9(b) "should easily be met in *qui tam* actions because insiders who are privy to fraud, which is the group that the statute encourages to bring these FCA lawsuits, 'should have adequate knowledge of the wrongdoing at issue.'" *U.S. ex rel. Cericola v. Federal Nat. Mortg. Assoc.*, 529 F. Supp. 2d 1139, 1144 (C.D. Cal. 2007) (quoting *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

Allegations like Relator's that identify a general sort of allegedly fraudulent conduct but do not specify particular circumstances of any discrete fraudulent statement are precisely what Rule 9(b) aims to preclude. *Cafasso*, 637 F.3d at 1057. An FCA complaint "must set forth what is false or misleading about a statement, and why it is false." *Ebeid*, 616 F.3d at 998. A relator must either "identify representative examples of false claims to support every allegation" or allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 998-999. For purposes of FCA claims, "reliable indicia" means particularized details of how false claims were likely submitted to the government based on, for instance, dates and descriptions of false records. *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190-191 (5th Cir. 2009); *Ebeid*, 616 F.3d at 998-99 (adopting *Grubbs*).

Here, Relator fails to allege such reliable indicia of any alleged fraud. Relator's Opposition is telling in this regard. As noted above, Relator contends that "[Medicare] cost reports were signed by OVCH's officers or administrators warranting the contents as true and correct." Dkt. No. 27, Opp., at 12 (citing Second

1  Am. Compl. ¶ 46). But the Second Amended Complaint never alleges that an
2  OVCH officer or administrator signed the forms or actually completed the
3  certifications—nor does it identify any individual who allegedly approved any
4  allegedly false statements or certifications or when any such alleged conduct was
5  completed with the required scienter. *See* Dkt. No. 25, Second Am. Compl. ¶¶ 46,
6  47. Because Relator failed to allege any claims with the required particularity, his
7  Second Amended Complaint should be dismissed in its entirety.

### B. The Court Lacks Subject Matter Jurisdiction

Relator incorrectly argues that his claims are not barred by public disclosure because: (1) the U.S. Department of Health and Human Services' public August 2013 Report (the "2013 Report") does not mention OVCH by name and differs, in part, from the Second Amended Complaint; (2) the March 2015 OIG Report (the "2015 Report") does not "suddenly apprise the government of the need to investigate for fraud"; and (3) Relator is an original source. *See* Dkt. No. 27, Opp., at 2-7. These arguments fail for the reasons outlined below.

#### 1. The 2013 and 2015 Reports Are Public Disclosures

The 2013 and 2015 Reports put the government on notice to investigate fraud by allegedly improperly certified CAHs. The 2013 Report concluded that the government could have saved $449 million by reassessing CAH certification based on location. The government recognized that two-thirds of CAHs were receiving reimbursements based on the higher CAH rates even though they were not properly certified as CAHs. *See* Dkt. 26, Motion, at 29-30. Relator does not dispute that this is precisely the purported fraud that he alleges in his Second Amended Complaint.

Instead, Relator argues the public disclosure bar does not apply because OVCH is not specifically named in either report. Relator also lists ways the 2013 Report differs from the Second Amended Complaint. *See* Dkt. 27, Opp. at 3. But under controlling law, a public disclosure need only enable the government to adequately investigate the case. The Second Amended Complaint does not have to

be identical to the public disclosure. *U.S. ex rel. Harshman v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1019-20 (9th Cir. 1999) (discussing 31 U.S.C. § 3730(e)(4)(A)). Here, the 2013 Report shows that the government already knew about—and publicly disclosed—the alleged fraud in the location requirements for CAHs before OVCH was approved as a CAH in 2014. Dkt. No. 25, Second Am. Compl. ¶ 29. The government was thus on notice to investigate before OVCH was approved as a CAH and before Relator filed his initial Complaint.

Relator also argues the 2013 Report is not a public disclosure because "the disclosure cannot predate the fraud." *See* Dkt. 27, Opp., at 3. Yet, Relator acknowledges that "the March 2015 Report does not suddenly apprise the government of the need to investigate for fraud" because it was already aware of the fraud reported in August 2013. *Id.* at 5. Relator admits that the government was on notice both before and after the allegations in the Second Amended Complaint occurred, and both before and after OVCH was certified as a CAH.

Finally, the claims in the 2013 and 2015 Reports and the Second Amended Complaint are "close enough in kind and degree to have put the government on notice to investigate." *U.S. ex rel. Solis v. Millennium Pharm., Inc.*, 885 F.3d 623, 627 (9th Cir. 2018). Relator's focus on the differences between the Reports and his Second Amended Complaint does not have any bearing on whether the government was on notice to investigate. Accordingly, the public disclosure bar deprives this Court of subject matter jurisdiction over Relator's Second Amended Complaint unless he qualifies as an original source.

### 2. Relator Is Not An "Original Source"

To overcome the public disclosure bar, Relator must be an original source, but he is not. An "original source" is an individual who either (1) before a public disclosure, voluntarily disclosed to the government the information on which FCA allegations or transactions are based, or (2) has knowledge that is independent of

and materially adds to the publicly disclosed allegations or transactions. 31 U.S.C. § 3730(e)(4)(B). Relator does not meet either of these requirements.

First, Relator failed to allege any facts that could give rise to the conclusion that before the public disclosure, he voluntarily disclosed to the government the information on which his claims are based. Relator argues that he "voluntarily disclosed [the allegations] to the Government before commencing this action." Dkt. No. 27, Opp., at 7. But he does not provide any citation to the Second Amended Complaint or a declaration to show that he provided any information to the government before the public disclosures in 2013 or 2015.

Second, Relator does not have any knowledge that is independent of and that materially adds to publicly disclosed information. Relator incorrectly contends that he qualifies as an original source because, "throughout the SAC, he demonstrates his knowledge, and knowledgeable observation" of OVCH's acts, "which he discovered through his own research, and observations." *Id*. at 6. On its face, though, the Second Amended Complaint does not include or materially add to the information that was already in the public domain. Relator does not allege facts showing that he has independent knowledge of the application, survey, and approval process that resulted in OVCH's approval as a CAH. He has not alleged, and cannot allege, anything about the specific disclosures and representations that OVCH made when it was approved as a CAH—or that any of those disclosures and representations were false. Instead, the Second Amended Complaint makes general allegations that simply echo the elements of all FCA claims. No allegation references any of Relator's purported specific observations. Moreover, Relator's assertion that he discovered the alleged FCA violations through his own research— presumably using publicly available sources—undermines Relator's suggestion that he is an original source. *Id.* Because Relator is not an original source, the Second Amended Complaint must be dismissed for lack of subject matter jurisdiction.

### C. Relator Should Not Be Given Leave to Amend Again

Relator asks for leave to amend his Second Amended Complaint if the Court grants OVCH's Motion to Dismiss. Relator, however, does not refute OVCH's argument that he has already failed to cure these same deficiencies from his initial Complaint and his First Amended Complaint. Further, Relator's request to fix the errors in the Second Amended Complaint—without explaining the bases for the allegedly new information—underscores why he should not be given leave to amend yet again. Moreover, notwithstanding any change to the allegations concerning swing beds, Relator does not address how he would resolve the deficiencies concerning materiality, falsity, and particularity that resulted in this Court dismissing his First Amended Complaint. Relator's request for a fourth attempt to properly state a claim is too little too late. Relator's Second Amended Complaint should be dismissed without leave to amend and with prejudice. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) (dismissal without leave to amend is proper if the complaint cannot be saved by amendment).

### III. CONCLUSION

For the reasons set forth above, Relator's Second Amended Complaint should be dismissed for failure to state a claim, failure to plead fraud with particularity, and lack of subject matter jurisdiction. The result here should be the same as the result in *Mountains*. OVCH respectfully requests that the Court dismiss the Second Amended Complaint without leave to amend and with prejudice.

Dated:    October 22, 2018          **ARENT FOX LLP**

By: /s/ Jeffrey R. Makin
JEFFREY R. MAKIN
ALEXANDER S. BIRKHOLD
Attorneys for Defendant
OJAI VALLEY COMMUNITY
HOSPITAL, a d/b/a of COMMUNITY
MEMORIAL HEALTH SYSTEM, a
California Nonprofit Public Benefit
Corporation