1   Frank Adomitis, Plaintiff Relator
    In Proper
2   8990 19th Street, #290
    Rancho Cucamonga, California 91701
3   Tel.:  (909) 289-4077
    Email: franksc@startmail.com
4

5

6

7               UNITED STATES DISTRICT COURT

8          FOR THE CENTRAL DISTRICT OF CALIFORNIA

9                     EASTERN DIVISION

10

| 11 | UNITED STATES OF AMERICA ex rel. FRANK ADOMITIS, an individual, | Case No. CV 17-06972 JGB (KKx) |
|---|---|---|
| 12 | | (Hon. Jesus G. Bernal) |
| 13 | Relator, | **LOST OPPOSITON TO MOTION OF ORDER PERMITTING WITHDRAWAL LAW OFFICE OF ESPERANZA CERVANTES ANDERSON; DECLARATION OF FRANK ADOMITIS** |
| 14 | v. | |
| 15 | OJAI VALLEY COMMUNTIY HOSPITAL; DOES 1 through 20, inclusive, | |
| 16 | | |
| 17 | Defendants. | |
| 18 | | |
| 19 | | |

20

21  **I.    FACTUAL BACKGROUND.**

22       The relator's attorney filed a Motion to Withdraw on March 25, 2021. The

23  motion was to be heard on June 7, 2021.  She refused in any way to assist the

24  relator in filing a response.  The relator submitted his Opposition (Exhibit 1) at the

25  intake window at 3470 Twelfth Street, Riverside, CA 92501 on April 14, 2021.  A

26  copy of the Opposition was served on the US attorney, the relator's attorney, and

27  the attorney of the defendant. The clerk at the window said Judge Bernal will be

28  given the Opposition and there was nothing else the relator had to do.  The relator's

1  attorney filed a reply brief on May 24, 2021.  On June 2, 2021, Judge Bernal
2  granted the motion but indicated the motion was **unopposed**.  The relator returned
3  to the intake window on June 9, 2021 and explained that his Opposition was not
4  provided to Judge Bernal.  The clerk did not know what happened to the Opposition
5  and indicated the relator's attorney can only submit documents on PACER.  The
6  clerk indicated that relator's attorney should have assisted the relator in filing his
7  response on PACER.  He instructed the relator to file this document with a copy of
8  the Opposition.

9  **II.    REQUEST**

10      The relator requests the granting of relator's attorney Motion to Withdraw
11  be set aside and a new motion hearing be set and the relator's Opposition be
12  consider by Judge Bernal as part of his decision to grant or deny the Motion to
13  Withdraw.

14

15  DATED: June 11, 2021

16                                    By: /s/ Frank Adomitis

17                                    In Pro per

18

19

20

21

22

23

24

25

26

27

28

-1-

Lost Opposition to Motion To Withdraw And Declaration

# EXHIBIT 1

Relator's Lost Opposition submitted at the Intake Window on April 14, 2021.

1  Frank Adomitis, Plaintiff Relator
   In Proper
2  8990 19th Street, #290
   Rancho Cucamonga, California 91701
3  Tel.:  (909) 289-4077
   Email: franksc@startmail.com
4

5

6

RECEIVED BUT NOT FILED
CLERK, U.S. DISTRICT COURT

APR  1 4 2021

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION      BY DEPUTY

7        UNITED STATES DISTRICT COURT

8   FOR THE CENTRAL DISTRICT OF CALIFORNIA

9              EASTERN DIVISION

10

| 11  UNITED STATES OF AMERICA ex rel. FRANK ADOMITIS, an individual, | Case No. CV 17-06972 JGB (KKx) |
|---|---|
| 12 | (Hon. Jesus G. Bernal) |
| 13        Relator, | **OPPOSITON TO MOTION OF ORDER PERMITTING WITHDRAWAL LAW OFFICE OF ESPERANZA CERVANTES ANDERSON; DECLARATION OF FRANK ADOMITIS** |
| 14        v. | |
| 15  OJAI VALLEY COMMUNTIY HOSPITAL; DOES 1 through 20, inclusive, | |
| 16 | |
| 17        Defendants. | **Date:**      June 7, 2021<br>**Time:**      9:00 a.m.<br>**Courtroom:** 1 via telephonic hearing. |
| 18 | |

19

20          <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

21  I.    **INTORDUCTION AND FACTUAL BACKGROUND.**

22

23        This is a false claims action.  Esperanza Cervantes Anderson (Ms Anderson)

24  was retained to represent Frank Adomitis (Relator) on a case against Ojai Valley

25  Community Hospital on behalf of the United States Government on or about April

26  16, 2016 [Declaration of Frank Adomitis ("Adomitis Decl.") ¶1].  Ms Anderson has

27  now attempted to abandon the case twice. The first time was in July 2018

28  [Adomitis Decl. ¶1.].  Ms Anderson's desire to abandon the case has nothing to do

                              - 0 -

1   with an "irreparable break in the attorney-client relationship." The Relator has
2   done nothing to cause Ms Anderson to attempt to abandon the case and has done
3   nothing to harm the attorney-client relationship. There is no good cause to abandon
4   the case. Instead Ms Anderson wants to abandon the case because she believes she
5   cannot win the case because she believes Judge Bernal is sexist, especially against
6   Latina women, is ignorant, and does not understand materiality [Adomitis Decl.
7   ¶2.]. Because of these unsupported opinions of Judge Bernal, the Relator has been,
8   as a client, very concerned Ms Anderson will no longer try her best to win the case.

9        Up until January 28, 2021 the relationship between Ms Anderson and the
10  Relator was good. Ms Anderson sent the Relator on that day an email stating she
11  wanted to go to lunch. The Relator and Ms Anderson have been to lunch many
12  times [Adomitis Decl. ¶3.]. The next day, January 29, 2021, the Relator sent Ms
13  Anderson an email to obtain assurance that Ms Anderson will do her best to win the
14  case. Ms Anderson responded that she now wants to abandon the case. She
15  confirmed the Relator's fear that she doesn't think she can win the case because of
16  her unsupported opinions of Judge Bernal and will not use her best efforts to win
17  the case [Adomitis Decl. ¶¶ 3 and 4.]. As with her first attempt to abandon the case
18  in 2018 this latest attempt is ridiculous, and she is making statements that are false.
19  Ms Anderson references other emails dated after the January 29, 2021 email, but
20  the January 29, 2021 email caused Ms Anderson to attempt to abandon the case for
21  second time. Emails after January 29, 2021 are about her decision to abandon the
22  case for the second time and cannot be used as justification to abandon the case. If
23  she had not communicated her desire to abandon the case, there would be no
24  subsequent email addressing this issue.

25       The retainer agreement governs when Ms Anderson can abandon the case
26  [Adomitis Decl. ¶5]. Nothing has occurred that allows Ms Anderson to abandon
27  the case. Ms Anderson is owed no money; she has been fully supported; she has
28  never been asked to take any course of action she didn't want to take; and she has

-1-

1  never been asked her to do anything illegal or unethical. Ms Anderson knows this,
2  and this is the reason she does not claim the Relator violated the retainer agreement.
3  However, in one of her emails she did claim the retainer agreement was breached
4  [Adomitis Decl. ¶6], but she has now discarded this claim.

5      The retainer agreement states the client must be truthful [Adomitis Decl. ¶7].
6  The Relator has been truthful and simply wanted assurance Ms Anderson will try
7  her best to win the case even though she believes Judge Bernal is sexist, is ignorant,
8  and does not understand materiality. Given that Ms Anderson wants to abandon the
9  case, the Relator's concerns were correct.

10      Ms Anderson has not indicated she will waive her attorney fees. The Relator
11  believes this latest attempt to abandon the case is an attempt to extract attorney fees
12  [Adomitis Decl. ¶7] by claiming there is good cause to abandon the case. There is
13  no good cause to abandon the case. There is only bad cause, i.e., her unsupported
14  opinions of Judge Bernal. In addition, her prior partner, Lou Dorny, prepared the
15  documents for Ojai case, so there would be no fees owed to Ms Anderson.

16      Ms Anderson has stated the Relator needs to find another attorney [Adomitis
17  Decl. ¶¶ 9 and 10.]. Ms Anderson knows this is impossible given the government
18  has declined to intervene, and there are few Qui Tam attorneys, and even fewer
19  good Qui Tam attorneys. No attorney will take this case on contingency knowing
20  the government has declined to intervene. Her prior partner, Lou Dorny, would not
21  take the case and he authored the documents for the Ojai case. In addition, the
22  Relator has NO MONEY to pay an attorney by the hour and cannot serve as his
23  own attorney in Qui Tam cases. If Ms Anderson's motion is granted the Relator
24  will have to drop the case.

25  **II.  PROCEDURAL HISTORY**

26      Ms Anderson's statements in her motion concerning procedural history appear
27  correct. The Relator is not an attorney, so he asks of the court could verify her
28  statements.

-2-

III.   ANALYSIS

**A. The Retainer Agreement Governs When Ms Anderson Can Abandon the Case and There Has Been No Violation of This Agreement.**

The retainer agreement governs when Ms Anderson can abandon the case, the Relator has not violated the retainer agreement, and Ms Anderson acknowledges this by not claiming the Relator has.  Therefore, there is no basis for her abandonment [Adomitis Decl. ¶ 5].  Instead, she claims Local Rule 83-2.9.2.1 gives her the option to withdraw if there is good cause.  This local rule does not give Ms Anderson the right to withdraw.  It merely states "An attorney may not withdraw as counsel except by leave of the court."   Therefore, she cannot use Local Rule 83-2.9.2.1 as justification to abandon the case. Since she does not indicate the Relator has violated the retainer agreement, she is no basis for her abandonment.

**B. Ms Anderson Has Not Shown Good Cause.**

"An attorney may not withdraw as counsel except by leave of court." C.D. Cal. L.R. 83-2.3.2; see also Darby v. City of Torrance, 810 F. Supp. 275, 276 (C.D. Cal. 1992). "A motion for leave to withdraw must be made upon written notice given reasonably in advance to the client and to all other parties who have appeared in the action . . . and must be supported by good cause." C.D. Cal. L.R. 83-2.3.2. In determining whether good cause is shown, a court may consider: "(1) the reasons why withdrawal is sought; (2) the prejudice withdrawal may cause to other litigants; (3) the harm withdrawal might cause to the administration of justice; and (4) the degree to which withdrawal will delay the resolution of the case." Liang v. Cal-Bay Int'l, Inc., No. 06-cv-1082–WMc, 2007 WL 3144099, at *1 (S.D. Cal. Oct. 24, 2007).

Ms Anderson claims there was an "irreparable break in the attorney-client relationship," yet she provides no support claiming she is limited because of attorney-client privilege. Ms Anderson has NO SUPPORT showing good cause because no support exists showing she has good cause to abandon the case. On the

- 3 -

other hand, the Relator has supplied ample support showing there is no good cause for Ms Anderson's abandonment. In fact, he has shown there is only bad cause. Since the Relator will not be able to find another attorney, the case will have to be dismissed.  The case has been stayed since 2018 and the time spent hopelessly trying to find another attorney will delay the case further.

**C. Ms Anderson Was Sent a Copy This document.**

The Relator sent a copy of this document including his declaration and referenced exhibits to Ms Anderson's office located at 1037 North Allen Ave. Pasadena, Ca 91104-3202 via US First Class Mail.

**IV.   Conclusion**

Ms Anderson's motion should be denied, and she should be required to complete the Ojai case as she agreed to do in the retainer agreement.  The Relator is open to other solutions the court may deem proper and just.

As a side note, Ms Anderson's proof of service is dated March 19, 2019.


DATED: April 14, 2021

By: /s/ Frank Adomitis

In Pro per

Opposition to Motion To Withdraw And Declaration

## **DECLARATION OF FRANK ADOMITIS**

I Frank Adomitis declare as follows:

1.     I have been Ms Anderson's client since April 16, 2016, and as Yogi Berra once said, it is "It's Déjà vu all over again."  This is the second time Ms Anderson has told me she wants to abandon the case. The first time was in July 2018. She called me on the phone and told me "she wants out." I was shocked and did not know what to say. I was on my way to Las Vegas, so I didn't speak to her for about a month. I then receive an email on July 30, 2018 (Exhibit 1). The statements she makes in this email are **ridiculous and false**. She refers to "Lou" in the email. This is her then partner helping her on the cases. His full name is "A. Louis Dorny" and he has an interest in the cases (See Exhibit 2 – the retainer agreement 6(b)). Lou is a partner at Gordon and Rees, and because of Ms Anderson's July 30, 2018 email, he initially wants the cases (Ojai and Mountains) (Exhibit 3), but later he tells me his firm has elected to not take the case (Exhibit 4). It should be noted that Lou wrote the Ojai documents and had intimate knowledge of the case, yet his firm elected to not take the case. After Ms Anderson learned Lou's firm would not be taking the case, she dropped all talk of abandoning the case therefore proving the statements in her July 30, 2018 email were bogus. As a side comment, Ms Anderson told me she could not work with Lou any longer, so he stopped helping us on the cases. This sometime in the second half of 2018.

2.     The real reason Ms Anderson wants to abandon the case has nothing to do with an "irreparable break in attorney client relationship." This is **another ridiculous and false claim**. The real reason Ms Anderson wants to abandon the case is that she does not think she can win the case.  And the reason she does not think she can win the case is because she believes (1) Judge Bernal is sexist especially against Latinas. His machismo will not allow a Latina woman to correct him when he is wrong (Exhibit 5), and (2) Judge Bernal is an idiot and doesn't understand materiality (Exhibit 6). This has been repeated to me over and over:

-5-

1  Judge Bernal is going to dismiss the Ojai case because he is a sexist, an idiot, and

2  does not understand materiality.  Any other reason Ms Anderson would afford as a

3  reason to abandon the case is complete claptrap.  Given the financial resources of

4  the defendant, if she thought she could win the case, there is nothing that could

5  cause Ms Anderson to abandon the case.  It is that simple.  I have been very

6  concerned Ms Anderson will no longer do her best to win the case.  This is a very

7  reasonable position given Ms Anderson's position the case is a forlorn hope.  She

8  has no support staff, is married, and has a daughter in school.  She has a case

9  against Kaiser which is taking all her time (Exhibits 7 and 8).  From her economic

10  standpoint she has only so many hours available, and these need to be spent on

11  cases she believes she can win, e.g., Kaiser, and not on cases she doesn't think she

12  can win, e.g., Ojai.

13      3.    So what brought on this new attempt to abandon the case?  We had a

14  good relationship since 2016.  We went to lunch many times.  I followed her advice

15  every time.  I did not want to appeal the Mountains case, but she convinced me I

16  had to.  I would comment on her documents she prepared but always she had the

17  final say.  The last email before I learned of this new desire to abandon the case was

18  on January 28, 2021 (Exhibit 9).  She concludes this email by saying we should go

19  to lunch.  This indicates that our relationship had not become irreparable broken.

20  Any attempt to point to anything prior to January 28, 2021 should be ignored.  The

21  email I sent the next day, January 29, 2021, is the email that, if Ms Anderson is to

22  be believed, caused "irreparable break in attorney client relationship" (See Exhibit

23  10 my email and her response).  My line states "Think about it this way.  If Tom

24  Brady tells the coach he doesn't think he can win next Sunday against KC, I doubt

25  the coach is going to let him play.  Because if he loses Tom will then tell the coach

26  he was warned.  You are my QB (LOL!)."  What I am trying to obtain here is

27  confirmation Ms Anderson will put out her best efforts and still try to win the case.

28  I don't want to say that even though you think Judge Bernal is sexist, is ignorant,

-6-

1   and doesn't understand materiality, are you still going to try to win the case?" The

2   client has a right to know his attorney will try to win the case, and the attorney has

3   the responsibility to try to win the case even if she is believes she cannot. Note my

4   analysis of materiality.

5       4.    Ms Anderson vehemently disagrees with this position.  She states in

6   her response email "You need a QB to be on your side? I need my client to be on

7   mine. More importantly, I need to stop being put into a position where I am

8   answering for a *judge's opinion on materiality* (emphasis added)." " (See Exhibit

9   10 my email and her response)  There you have it; the real reason she wants to

10  abandon the case. I tried many times to speak to Ms Anderson since January 29,

11  2021, but she refuses.  The so called "Meet and Confer" was an exchange of emails.

12  Ms Anderson believes that if there is any disagreement with her client or she

13  believes the case cannot be won for whatever reason, this then gives her the option

14  to abandon the case.  Given she now has tried to abandon the case twice, I believe

15  she has used this tactic before with other clients.

16      5.    Whether Ms Anderson should be allowed to abandon the case should

17  only be decided based on our retainer agreement (Exhibit 2).  In this agreement the

18  following specifies valid reasons for Ms Anderson to withdraw (Section 11):

19          "Attorney retains the right to withdraw from handling Client's

20          matter at any time on reasonable notice, if continued representation

21          could involve Attorney in ethical violations, if a lack of cooperation by

22          Client prevents attorney from properly pursing Client's case, or for

23          other good cause such as nonpayment of Attorney's fees and costs. I

24          the need to withdraw arises, or if Client chooses to retain other counsel

25          and discharge Attorney or to drop the case before settlement or

26          judgment, Attorney is entitled to payment for all fees and costs to date

27          at her existing hourly rates regardless of the ultimate outcome of the

28          case."

-7-

1   I have never asked Ms Anderson to do anything unethical or illegal.  Nothing in my
2   January 29, 2021 requests Ms Anderson to do anything unethical or illegal, change
3   any document, and take any position. I have always cooperated with Ms Anderson.
4   Ms Anderson always has always had the final word on the content of documents.
5   How could the relationship last for so long if this were not true?  Finally, I owe Ms
6   Anderson no money.  I always pay her promptly.
7        6.      Even though Ms Anderson does not claim breach of contract in her
8   motion, her March 18, 2021 did say I breached the contract (Exhibit 11):
9             "On January 29 you explained how a coach will not play a quarterback
10            that doesn't think he can win. In other words, you had not apologized.
11            Instead, you want me to change my tune. You want me to pretend all
12            the dismissals and appeal haven't happened, that CMS in California
13            hasn't said they think the violations are not material, and to you the
14            advice you want to hear even if the advice is not supported by facts, law
15            or common sense.  You want me to zealously advance positions that I
16            think are legally or procedurally unsupported and based on alleged
17            comments made by attorneys in other states. That is a violation of our
18            agreement."
19   The Second Amended Complaint was submitted on September 4, 2018.  I love
20   it. My January 29, 2021 email did not ask for any change.  **I simply wanted**
21   **to know that Ms Anderson will still put her best efforts forward even**
22   **though she thinks Judge Bernal is a sexist, is ignorant, and doesn't**
23   **understand materiality.  Her motion is her answer: NO.**
24        7.      Section 4 of the retainer agreement states (Exhibit 2) "Client will
25   be truthful…"  I was truthful and my concern is reasonable.  Ms Anderson
26   does not want her clients to be truthful if that will make her angry.
27        8.      Ms Anderson has not offered to waive her attorney fees.  I believe
28   along with her position she cannot win the case her motion is a disingenuous

1    attempt to try to collect attorney fees claiming my January 29, 2021 email

2    gives her good cause to abandon the case. There is no good cause to abandon

3    the case. Her true reason she wants to abandon the case, i.e., she cannot win

4    because Judge Bernal is a sexist, is ignorant, and does not understand

5    materiality, is bad cause. It is an attempt to dump a case she thinks she cannot

6    win to work on cases she thinks she can win. It is solely for her benefit at the

7    expense of a long-term client and at the expense of the court, for wasting its

8    time.

9           9.    Ms Anderson wants me to find another attorney. She knows this

10   is impossible given the government has declined to intervene. Her prior

11   partner Lou Dorny would not take the case, and he prepared the documents for

12   the Ojai case. She knows this. In addition, I have NO MONEY to pay an

13   attorney by the hour. If Ms Anderson is allowed to withdraw I will be forced

14   to drop the case at no fault of my own.

15          10.   So if we are to understand Ms Anderson I have to find an attorney

16   to take the case on contingency after the government has declined to intervene,

17   a case she believes cannot be won because Judge Bernal is sexist, is ignorant,

18   and doesn't understand materiality so that she can work on her other cases she

19   thinks she can win. This is absurd, but she wants to dupe the court into

20   granting her motion claiming there is good cause but in reality, she wants to

21   abandon the case only for self-interest at the expense of her client.

22          11.   I declare, under the penalty of perjury under the laws of the

23   United States of America and the State of California, that the foregoing is true

24   and correct.

25          Executed on this day 14th day of April 2021 at Rancho Cucamonga,

26   California.

27                           /s/ Frank Adomitis

28                           Frank Adomitis

Opposition to Motion To Withdraw And Declaration

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen and not a party to the within action, and my business address is 100 North Barranca Ave. Suite 700 West Covina, CA 91791 (the "business").

On April 14, 2021, I served the following document(s): **OPPOSITON TO MOTION OF ORDER PERMITTING WITHDRAWAL LAW OFFICE OF ESPERANZA CERVANTES ANDERSON; DECLARATION OF FRANK ADOMITIS; ELEVEN EXHIBITS** on the interested parties in this action by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

**SEE ATTACHED**

_____ BY REGULAR U.S. MAIL: I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service; such correspondence would be deposited with the United States Postal Service the same day of deposit in the ordinary course of business. I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date, following ordinary business practices, in the United States mail at West Covina, California.

___X___ BY E-MAIL: I sent a true and complete copy of the document(s) described above by facsimile transmission to the e-mail addresses set forth opposite the name(s) of the person(s) set forth on the attached service list.

_____ BY FEDERAL EXPRESS OVERNIGHT DELIVERY OR OTHER EXPRESS OVERNIGHT SERVICE: I declare that the foregoing described document(s) was(were) deposited on the date indicated below in a box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express service carrier to receive documents, in an envelope or package designated by the express service carrier with delivery fees paid or provided for, addressed to the person(s) on whom it is to be served, at the address as last given by that person on any document filed in the cause and served on this office.

_____ BY PERSONAL SERVICE: I caused such envelope to be delivered by hand to the above address(es).

___X___ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on April 14, 2021 at West Covina, California.

/s/ Jeff Koehn
Jeff Koehn

Opposition to Motion To Withdraw And Declaration

1

## SERVICE LIST

2

3   Alexander S. Birkhold
    (alexander.birkhold@arentfox.com)

4   ARENT FOX LLP
    555 West Fifth Street, 48th Floor

5   Los Angeles, California 90013-1065

6   Kent A. Kawakami
    (Kent.Kawakami@usdoj.gov)

7   Assistant U.S. Attorney
    United States Attorney's Office

8   Central District of California
    300 N. Los Angeles Street, No. 7516

9   Los Angeles, California 90012

10  Esperanza Cervantes Anderson
    (esperanza@esperanzaanderson.com)

11  Law Office of Esperanza Cervantes Anderson
    1037 North Allen Avenue

12  Pasadena, CA 91104-3202.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Opposition to Motion To Withdraw And Declaration

# EXHIBIT 1

Email from Ms Anderson Communicating She Wanted to Abandon the Case.  This is her first attempt.

**Frank Adomitis**

| | |
|---|---|
| From: | Esperanza Anderson <esperanza@andersonlitigation.com> |
| Sent: | Monday, July 30, 2018 8:06 AM |
| To: | franksc@startmail.com |
| Subject: | Confirming of Discussion re Termination of Representation |

Hi Frank - I am here waiting for the hearing to start.

I saw your email to Lou.  For all the reasons discussed yesterday, including:

(1)     the fact that you have other counsel that is driving the cases;
(2)     my concerns on how the court will ultimately rule on the Ojai case given how                    this judge has approached the Mountains case — as
mentioned to you                    repeatedly, this judge places great store in the fact that you used to work in                    Mountains; and
(3)     your refusal to consider my advice on how to best resolve this with minimal                    risk to you

I will be filing a motion to withdraw as your counsel. If another attorney substitutes in before then, we can take that motion off calendar.

I understand that you are willing to push these cases forward regardless of the risk and that you are willing to pay for an appeal should you receive an unfavorable ruling in the Ojai case. (My retainer agreement never included representing you in an appeal.)  As explained to you yesterday, I am not willing to take that risk with you especially since you appear to be interpreting my continued involvement in your cases as my guaranteeing a favorable result no matter how many warnings I issue saying otherwise.

I will email you and Lou after the hearing,

Espie

Sent from my iPad

1

# EXHIBIT 2

Retainer Agreement

LAW OFFICE OF
ESPERANZA CERVANTES ANDERSON

1037 N. Allen Avenue
Pasadena, California 91104
Tel: (626) 486-2477
Fax: (626) 389-8911
esperanza@andersonlitigation.com

August 22, 2018

**Via E-Mail (franksc@startmail.com)**

Frank Adomitis
7481 Mountain Laurel Drive
Highland, California 92346

Re:     *Amended Retainer Agreement*

Dear Frank:

I appreciate your interest in having the Law Office of Esperanza Cervantes Anderson represent you in the matters we have discussed. This letter sets forth the details of the relationship going forward between you and the Law Office of Esperanza Cervantes Anderson. This agreement supersedes the retainer agreement entered into on or about April 16, 2016 and amended on August 24, 2016.

## LEGAL SERVICES AGREEMENT

1.     **IDENTIFICATION OF PARTIES:** This agreement is made between Frank Adomitis (hereafter referred to as "Client") on the one hand, and the Law Office of Esperanza Cervantes Anderson (hereafter collectively referred to as "Attorney") on the other hand.

2.     **LEGAL SERVICES TO BE PROVIDED:** The legal services to be provided by Attorney to Client are as follows: to represent Client in pursuing claims for violations of the federal and/or state false claims act against Mountains Community Hospital, Ojai Valley Community Hospital and Tahoe Forest Hospital District and related corporate parties.

Attorney will represent Client through trial or arbitration if necessary.  Should this matter proceed to trial or arbitration. Attorney will oppose any motion for a new trial or any other post-trial motion or post-arbitration motions filed by an opposing party, or will make any appropriate post-trial or post-arbitration motions on Client's behalf.

3.     **LIMITATION OF REPRESENTATION:** Legal services for unrelated matters are not contemplated by this contract shall be subject to separate negotiation and agreement and shall not affect or alter the rights of Attorney and Client under this agreement.

Attorney is representing Client only in the matters described in paragraph 2 above.  This Agreement does not cover filing an appeal, representation on appeal or in execution proceedings after judgment.

Additionally, Attorney's representation does not include independent or related matters that may arise, including but not limited to, claims for property damage, workers' compensation claims.

②8/23/18

1

Frank Adomitis
August 22, 2018
Page 2

claims arising under the Federal Earned Retirement Income Security Act ("ERISA"), disputes with a health care provider about the amount owed for their services, or claims for reimbursements (subrogation) by any insurance company for benefits paid under an insurance policy.

This Agreement also does not include defending Client against or representing Client in any claims that may be asserted against Client as a cross-claim or counter-claim in Client's case. If any such matters arise later, Attorney and Client will either negotiate a separate agreement if Client and Attorney agree that Attorney will perform such additional legal work or Client will engage separate counsel with respect to the cross-claim or counter-claim, appeal, collections or additional legal work.

Moreover Attorney is not competent to provide TAX ADVICE and will therefore not provide any such advice to Client. Client is encouraged to consult an attorney with appropriate expertise regarding the potential tax implications of a judgment, award or settlement in Client's favor.

4.     **RESPONSIBILITIES OF ATTORNEY AND CLIENT:** Attorney will perform the legal services called for under this agreement, keep Client informed of progress and developments, and respond promptly to Client's inquiries and communications. Attorney reserves the prerogative to associate or retain the services of outside attorneys to assist in providing services to Client. Any outside attorneys hired or otherwise engaged shall also be granted all of the powers and obligations originating from this agreement that are necessary to enable the outside attorneys to accomplish and carry out the tasks delegated to them. Any such delegations will not affect the attorney fees to be paid under this agreement by Client.

Client will be truthful and cooperative with Attorney, keep Attorney reasonably informed of developments and of Client's address, telephone numbers, and whereabouts, and timely make any payments required by this Agreement. Client will assist Attorney in obtaining any records which Attorney may require to carry out the duties called for by this agreement. Client will execute forms as required and will participate in any publicity deemed helpful or necessary to the case, as directed by Attorney. Client agrees to appear, if Attorney so requests, for all depositions, and court appearances and other such events, and to otherwise and generally cooperate fully with Attorney in all matters related to the preparation and presentation of Client claims.

5.     **RETAINER FOR FEES AND COSTS:** $500 to cover cost of filing and service of summons and complaint due at the time of filing.

6.     **ATTORNEY FEES:**

       (a) Contingent Fee Calculation. Client shall pay to Attorney 50% of all amounts recovered in this case, whether by compromise or judgment after the filing of the Complaint, through trial. This fee ("Contingent Fee") is not set by law but is negotiated between Attorney and Client.


This retainer agreement further authorizes Attorney to receive costs advanced and receive

(2) 8/3/18

2

August 22, 2018
Page 3

her Attorney's fees immediately upon receipt of judgment or settlement payments. Reimbursement of any advanced costs not previously paid by Client will be deducted from the judgment or recovery; Attorney's fees will thereafter be deducted prior to the net distribution of net recoveries to Client. Nothing in this agreement requires Attorney to file an appeal in the event of any adverse decision in this matter, and such appeal, if any, shall be the subject of separate negotiation.

(b)     Referral fee. Client acknowledges and agrees that Attorney will pay A. Louis Dorny a referral fee of 20% of the amount of fees Attorney recovers in this case pursuant to subsection (a) above. This referral fee comes out of Attorney's recovery. Client has no responsibility

(c) Fee Award.  Client may be entitled to have his Attorney's fees paid by his employer under certain circumstances if he prevails at trial ("Fee Award"). Attorney will use her best efforts to have the employer pay Attorney as part of any resolution of Client's claims ("Fee Award"). In the event Client or Attorney is awarded a Fee Award, Attorney shall own and be entitled to the Fee Award or Contingent Fee, whichever is greater. If the Fee Award is less than the Contingent Fee, the Fee Award shall apply as a credit against the Contingent Fee. The Client will not be responsible for paying Attorney Fees or any other amounts to Attorney except amounts specified in section 7. Other Fees and Costs.

(d) Potential Liability for Defense Costs and Fees. Client acknowledges that if he loses his case, whether by summary judgment or at trial, he may be obligated to pay defense costs (e.g., the cost of taking his deposition). Client also acknowledges that in some cases, courts have awarded defense attorneys fees against plaintiffs in false claims act cases where, for example, the court found the case to be frivolous.

(e) Acknowledgment.  Client acknowledges that no promises have been made about the total amount of Attorney's fees that may be incurred under this agreement, except as limited by the contingency fee.

7.     **OTHER FEES AND COSTS:**  Client agrees to pay any and all costs in connection with Attorney's representation under this agreement. Attorney will advance these costs for Client. These costs may include but are not limited to: private mediation fees, filing fees, online legal research, messenger charges, parking charges, faxing, photocopying, telephone, postage, court reporter's fees, court and discovery costs, paralegal fees, the cost of investigation, records, travel and related expenses. Costs advanced by Attorney shall be repaid to Attorney from any recovery. Before travel costs, private mediation fees, arbitration fees, expert fees are incurred the client will be informed of these and will be allowed to pay these either directly or pay the Attorney directly.

8.     **DISCLAIMER OF GUARANTEE:**  Nothing in this Agreement and nothing in Attorney's statements to Client will be construed as a promise or guarantee about the outcome of Client's matter. Attorney makes no such promises or guarantees. There can be no assurance that Client will recover any sum or sums in this matter. Attorney's comments, if any, about the outcome of Client's matter are expressions of opinion only.

℗ 8/23/18

3

Frank Adomitis
August 22, 2018
Page 4

9.   **AUTHORIZATION:** Client authorizes Attorney to file and serve all notices, powers of Attorney, papers and pleadings which the Attorney in her discretion deems reasonable or necessary.

10.   **APPROVAL NECESSARY FOR SETTLEMENT:**   Attorney will not make any settlement or compromise of any nature of any of Client's claims without Client's prior approval as Client retains the absolute right to accept to reject any settlement. Client agrees that Client will not make any settlement or compromise of any nature of any of Client's claims without prior written notice to Attorney. However, if Client rejects a settlement offer that Attorney recommends, Attorney reserves the right to require Client to reimburse out of pocket costs previously incurred and to require Client to submit a cost deposit to go forward with litigation.

11.   **RIGHT TO DISCHARGE/WITHDRAW:** The Attorney-client relationship is one of mutual trust and confidence. Client retains the right to discharge Attorney at any time or written notice. If Attorney is Client's Attorney of record in any proceeding at the time Client discharges it, Client agrees to execute and return a substitution-of-Attorney(s) form immediately upon his receipt from Attorney. Upon such notice, Attorney will immediately stop performing any additional services.

Attorney retains the right to withdraw from handling Client's matter at any time on reasonable notice, if continued representation could involve Attorney in ethical violations, if a lack of cooperation by Client prevents Attorney from properly pursuing Client's case, or for other good cause such as nonpayment of Attorney's fees and costs. If the need to withdraw arises, or if Client chooses to retain other counsel and discharge Attorney or to drop the case before settlement or judgment, Attorney is entitled to payment for all fees and costs to date at her existing hourly rates regardless of the ultimate outcome of the case.

12.   **BANKRUPTCY:** By signing this agreement, Client warrants that Client has not filed for Bankruptcy within the last 10 years. Further, Client represents and warrants that Client currently has no intention of filing for Bankruptcy. To the extent that Client subsequently considers filing Bankruptcy while still represented by Attorney under this agreement, Client agrees to first discuss the Bankruptcy filing with Attorney. In the event that Client has filed Bankruptcy within the prior 10 years and has not disclosed the filing to Attorney, or files Bankruptcy while represented by Attorney, then Client agrees that Attorney will be entitled to withdraw as counsel for Client. Further, Client agrees that under these circumstances, all amounts due and owing by Client to Attorney under this agreement will not be dischargeable in Bankruptcy.

13.   **RECEIPT OF PROCEEDS:**   All proceeds of Client's case shall be deposited into Attorney's trust account for disbursement in accordance with the provisions of this agreement.

14.   **MEDIATION OF DISPUTES:** Attorney and Client agree that in the event of any dispute under this agreement, they shall submit such dispute to non-binding mediation before resorting to litigation, and shall use their best efforts to resolve any such dispute through mediation.

15.   **PROFESSIONAL LIABILITY INSURANCE:** Attorney maintains professional

4

Frank Adomitis
August 22, 2018
Page 5

liability insurance.

16.    **FACSIMILE OR ELECTRONIC COPY AS ORIGINAL:** A facsimile or electronic copy of this agreement, when separately executed by all parties, may be used in all respects as an original.

17.    **ENTIRE AGREEMENT:** This agreement contains the entire agreement of the parties. No other Agreement, statement, or promise made on or before the effective date of this Agreement will be binding on the parties.

18.    **SEVERABILITY:** If any provision of this agreement is held, in whole or in part, to be unenforceable for any reason, the remainder of that provision and of the entire agreement will be severable and remain in effect.

19.    **MODIFICATION BY SUBSEQUENT AGREEMENT:** This agreement may be modified by subsequent agreement of the parties only by an instrument in writing signed by both of them or an oral agreement to the extent that the parties carry it out.

20.    **CALIFORNIA LAW:** Client and Attorney agree that California law shall govern the interpretation and enforcement of this agreement. In addition, Client agrees to jurisdiction in California for any disputes arising out of and related to this agreement.

21.    **EFFECTIVE DATE:** This agreement will govern all legal services performed by Attorney on behalf of Client commencing as of the date Attorney and Client both execute the agreement. Even if this agreement does not take effect, Client will be obligated to pay Attorney the reasonable value of any services Attorney may have performed for Client.

**THE PARTIES HAVE READ AND UNDERSTOOD THE FOREGOING TERMS AND AGREE TO THEM AS OF THE DATE ATTORNEY FIRST PROVIDED SERVICES.**

**BY SIGNING BELOW, ATTORNEY AND CLIENT AGREE TO BE LIABLE FOR ALL OBLIGATIONS UNDERTAKEN BY EACH OF THEM PURSUANT TO THIS AGREEMENT. CLIENT SHALL RECEIVE A FULLY EXECUTED COPY OF THIS AGREEMENT.**

Very truly yours,

Esperanza Cervantes Anderson

The foregoing terms and conditions accurately reflect the terms of your engagement and are approved and accepted:

Frank Adomitis

Dated: 8/23/18

# EXHIBIT 3

Email for Louis Dorny (Ammon is his first name) about taking over the case after Ms Anderson threaten to abandon the case the first time. This is her first attempt.

# Frank Adomitis

**From:**      Ammon Dorny <ammon.dorny@gmail.com>
**Sent:**      Wednesday, August 1, 2018 7:20 AM
**To:**        Frank Adomitis
**Subject:**   Re: Confirming of Discussion re Termination of Representation

Thanks for the info. I have to clear my partners on the risk of a contingency matter, which is not necessarily a given, but I am optimistic. Talk to you at 8:30.

Thanks,
Lou

> On Jul 31, 2018, at 8:08 PM, Frank Adomitis <franksc@startmail.com> wrote:
>
> Lou,
>
> I have to say ahead of tomorrow that you made a very cogent argument that I am an original source yet she makes made the following statement:
>
> "my concerns on how the court will ultimately rule on the Ojai case given how      this judge has approached the Mountains case — as mentioned to you repeatedly, this judge places great store in the fact that you used to work in      Mountains"
>
> This was made before there even was a ruling on the OJAI case and apparently she didn't communicate this to you!  She has no basis to make that statement before the judge's ruling.  My Texas attorney is going use your arguments. Next this statement is complete nonsense:
>
> "As explained to you yesterday, I am not willing to take that risk with you especially since you appear to be interpreting my continued involvement in your cases as my guaranteeing a favorable result no matter how many warnings I issue saying otherwise."
>
> Never said this or even thought this.
>
> _____
>
> This entire episode started when she didn't like your opposition and that you waited until too long and didn't include what she thought should be included from the TAC.  She wanted me to try to get you to add more, but I told her I thought it was excellent.  Next she calls me on the Sunday I am going on vacation to Las Vegas explaining she wants out.  I say that is fine please see if Lou will take the case on the same terms.  I was suppose to call her when I got back from Las Vegas, but I had a "spat" with my girlfriend.  She is a super hot, 30 year old Latina.  She thought I cheated on her in Las Vegas. I didn't.  I forgot to call Espy.  Next, Espy sends me a text last Tuesday inviting me to lunch and she makes this statement "No more talking talk about of leaving."  I thought the issue was done.  Oh no.  Late Sunday she calls me and tells me I have to agree drop the Ojai case because it a case for a larger firm.  The case is now too risky for her.  I tell her Im not dropping itm and if she wants off the case she is obligated to find me another attorney on the same terms.   She gets very angry, states she will just withdraw

1

from both cases, and my refusal proves her and I cant work together. I sort laughed and that didn't help either. She said I should email you asking you to take the case. I then send you an email Monday morning. She didn't like the email I sent you either. I recall now that I sent you an earlier email prior to her and I speaking and she was mad about that too. This was before the last Tuesday's text.

^

> It seems lately she is much more busy and she only has only finite amount of time. I think if she can't write everything herself she doesn't want the case. I understand this argument, but it doesn't impact me. It is impossible now to find another attorney for the three cases even if I had lots of free time. I have NADA.

^
^
^
^
^
^
^
^
^

> ------Original Message------
> From: Ammon Dorny <ammon.dorny@gmail.com>
> Sent: Tuesday, July 31, 2018 5:53 PM
> To: Frank Adomitis <franksc@startmail.com>
> Subject: Re: Confirming of Discussion re Termination of Representation
^

> Sorry tied up with family issues (father in hospital). Let's reschedule for tomorrow - say 8:30 am?
^

>> On Jul 31, 2018, at 1:50 PM, Frank Adomitis <franksc@startmail.com> wrote:
>>

>> Thanks. 6 is good and my number is 9092894077
>>
>> --
>> Frank Adomitis
>> -----------
>> sent with R2Mail2
>>
>> ----- Original Message -----
>> From: Ammon Dorny <ammon.dorny@gmail.com>
>> Sent: 7/31/18 - 1:44 PM
>> To: Frank Adomitis <franksc@startmail.com>
>> Subject: Re: Confirming of Discussion re Termination of Representation
>>

>>> What's the best number to call you at and can you talk at 6 PM ?

2

>>>

>>>> On Jul 30, 2018, at 8:33 AM, Frank Adomitis <franksc@startmail.com> wrote:

>>>>

>>>> Absolutely.

>>>> --

>>>> Frank Adomitis

>>>> ------------------

>>>> sent with R2Mail2

>>>>

>>>> ----- Original Message -----

>>>> From: Ammon Dorny <ammon.dorny@gmail.com>

>>>> Sent: 7/30/18 - 9:20 AM

>>>> To: Frank Adomitis <franksc@startmail.com>

>>>> Subject: Re: Confirming of Discussion re Termination of Representation

>>>>

>>>>> Frank,

>>>>>

>>>>> Will call you tomorrow pm if that works for you. I need to ask some questions before I would be willing to consider taking over  the cases.

>>>>>

>>>>> Thank you,

>>>>> Lou

>>>>>

>>>>>> On Jul 30, 2018, at 8:23 AM, Frank Adomitis <franksc@startmail.com> wrote:

>>>>>>

>>>>>> If the judge rules I am not an orginal source ok. Please work with lou.  Thankd

>>>>>> --

>>>>>> Frank Adomitis

>>>>>> ------------------

>>>>>> sent with R2Mail2

>>>>>>

>>>>>> ----- Original Message -----

>>>>>> From: Esperanza Anderson <esperanza@andersonlitigation.com>

>>>>>> Sent: 7/30/18 - 8:06 AM

>>>>>> To: franksc@startmail.com

>>>>>> Subject: Confirming of Discussion re Termination of Representation

>>>>>>

>>>>>>> Hi Frank - I am here waiting for the hearing to start.

>>>>>>>

>>>>>>> I saw your email to Lou.  For all the reasons discussed yesterday, including:

3

>>>>>>> (1)   the fact that you have other counsel that is driving the cases;

>>>>>>> (2)   my concerns on how the court will ultimately rule on the Ojai case given how   this judge has approached the Mountains case — as mentioned to you   repeatedly, this judge places great store in the fact that you used to work in   Mountains; and

>>>>>>> (3)   your refusal to consider my advice on how to best resolve this with minimal   risk to you

>>>>>>> I will be filing a motion to withdraw as your counsel. If another attorney substitutes in before then, we can take that motion off calendar.

>>>>>>>

>>>>>>> I understand that you are willing to push these cases forward regardless of the risk and that you are willing to pay for an appeal should you receive an unfavorable ruling in the Ojai case. (My retainer agreement never included representing you in an appeal.) As explained to you yesterday, I am not willing to take that risk with you especially since you appear to be interpreting my continued involvement in your cases as my guaranteeing a favorable result no matter how many warnings I issue saying otherwise.

>>>>>>>

>>>>>>> I will email you and Lou after the hearing,

>>>>>>>

>>>>>>> Espie

>>>>>>>

>>>>>>>

>>>>>>> Sent from my iPad

>>>>>>

>>>>>

>>>>

>>>

>>

>

# EXHIBIT 4

Email from Louis Dorny (Ammon is his first name) declining to take the case.

**Frank Adomitis**

From:        A. Dorny <ammon.dorny@gmail.com>
Sent:        Monday, August 20, 2018 11:07 AM
To:          Frank Adomitis
Subject:     Hospital Qui Tams

Frank,

As we discussed last week, my firm has elected to decline my representation of the hospital qui tams. I wish it were otherwise. I have put out phone calls to my colleagues to find a possible candidate for assuming handling of your cases, and will alert you as I receive a response. Also, I suggest you submit your name to referral services through the California State Bar website to maximize your limited time. Here is the link. http://www.calbar.ca.gov/Public/Need-Legal-Help/Lawyer-Referral-Service/Los-Angeles-Area.

I wish you the very best in your future.

Best Regards,
Lou
(213) 400-3484

1

# EXHIBIT 5

Email from Ms Anderson explaining Judge Bernal is sexist.

# Frank Adomitis

**From:**      Esperanza Anderson <esperanza@andersonlitigation.com>
**Sent:**      Tuesday, October 16, 2018 7:48 AM
**To:**        Frank Adomitis
**Subject:**   Re: Take On the drive

Totally. The judge did not like being corrected by a woman. Plain and simple. We can be competent, we just can't understand something better.

I should point out, he is a Mexican man, born in Mexico. I am a Mexican woman. Its a cultural thing - machismo.

You forgot to note in your email below, he ignored Baylor. Baylor said that the statute was limited by legislative design. It was never intended to apply to every rural hospital. It was only intended to apply to some. There is a bright line rule and sometimes that bright line rule is harsh as in Baylor where they would have been eligible if the road had been given a different number — JUST A NUMBER!!! But Uncle Sam can't afford it otherwise.

So, we have the Supreme Court rulings re "and" "or" and "and/or" and also a 5th Circuit case that says don't expand.

Sent from my iPad

On Oct 16, 2018, at 7:29 AM, Frank Adomitis <franksc@startmail.com> wrote:

I drove up the 33 and back down the 150 to the 126. Since the surveyors were there only two days they had no time to drive up either road 33 or 150 to thoroughly vet the distance requirement. If somehow they drove up and then down the 150 only they would have been fooled in that 150 is a windy narrow two lane road. If they drove up the 33 I don't know how they could come to the conclusion that there were more than 15 miles of secondary road. Hwy 33 is in a flat valley so there is no issue of being mountainous terrain. Leaving the 101 fwy you enter a four lane freeway, i.e. the Ojai Freeway, and drive 5.6 miles. They simply were lied to and they didn't detect it. Also, they probably didn't understand the distance requirement.

We will need to get all the review documents provided by the hospital to DNV Healthcare (the surveying organization). We may want to depo the surveyor(s) as to how they new Ojai meet the distance requirement.

The more I think about the Mountains ruling the more I think the judge has a "God Complex." He scolded you claiming you "over read" Rose, which you didn't. He superseded CMS's requirement that a letter from Cal Trans was needed and superseded every CMS interpretation that the law says "OR." He supersede the plain reading of the law: more than a 15-mile drive in the case of mountainous terrain or in areas with only secondary roads available. Since hwy 18 has a large section of 4 lane road, the secondary road criteria doesn't apply. But wait, CMS defined in an interpretation, aka "sub regulatory compliance," what a secondary road and primary road is and the judge was OK with CMS definition.

1

Huh? The only way he could have ruled the way he did was if Mountains was able to produce a letter from Cal Trans, which we know doesn't exist.

In Ojai, he has a problem on his hands. He can't claim they meet the distance requirement, we have the concept report he relied on in Mountians, and we provided a case, Curry, and a statement from CMS, Wright. He said he needed a case. In effect we have spelled out the fraud scheme in Ojai than in Mountains. I don't have to be an original source since there is no public disclosure. I did use public documents, but maps, survey docs, cost reports are all public documents. But that is the nature of the cases. You are not going to find emails saying lets cheat Medicare. Really? If we need a name we just use the CEO over and over.

I love what you wrote and don't agree on his interpretation of what an expressed fraud is. It will be interesting what Paul says. Finally, Clinton over plays his hands. This may come back to bite him

This is a quote from Gulliver's Travels. Gulliver is visiting a university.

In the school of political projectors (person who devise political plans and policies), I was but ill entertained; the professors appearing, in my judgment, wholly out of their senses, which is a scene that never fails to make me melancholy. These unhappy people were proposing schemes for persuading monarchs to choose favourites upon the score of their wisdom, capacity, and virtue; of teaching ministers to consult the public good; of rewarding merit, great abilities, eminent services; of instructing princes to know their true interest, by placing it on the same foundation with that of their people; of choosing for employments persons qualified to exercise them, with many other wild, impossible chimeras (wild mental fantasies), that never entered before into the heart of man to conceive; and confirmed in me the old observation, "that there is nothing so extravagant and irrational, which some philosophers have not maintained for truth." Lemuel Gulliver, Gulliver's Travels

2

2

# EXHIBIT 6

Email from Ms Anderson explaining Judge Bernal is an idiot and doesn't understand materiality.

**Frank Adomitis**

| | |
|---|---|
| From: | Esperanza C. Anderson <esperanza@andersonlitigation.com> |
| Sent: | Saturday, April 20, 2019 7:54 AM |
| To: | franksc@startmail.com |
| Subject: | RE: Volume 3 of Excerpts of Record |

Bernal never understood materiality - because of Escobar. He was always confused. How can distance not be material when it's the only characteristic that is different from a regular acute care hospital? Remember we were shocked when he ruled that we had not pled materiality!

He still didn't like it after the Second Amended Complaint - and again, remember how shocked we were. We spelled out that the government would not have paid if they had known. We told him about Question 105. We told him that we were alleging both express and implied false certification.

The Rose case showed that he was an idiot because the district court Rose case - which he cited in his Order dismissing the SAC - effectively gutted all of Clinton's arguments. The Ninth Circuit affirmed. (I didn't know about Rose and was encouraged not to look at it during this time because it did not apply.) When we both saw it, it was right on point. I know why the others would say it didn't - it was in their interest to do so. But the fact that Bernal missed it really highlighted that he is an idiot.

On Sat, 20 Apr 2019 06:42:44 -0700, "Frank Adomitis" wrote:

I read the transcript about mixing and matching. Its gibberish. The argument against mixing and matching is that 1 the statue says "OR" which means either but not both and 2 as you pointed out in Baylor CMS drew a very bright line in what is a primary and secondary road which is technical, and they did the same thing with mixing and matching: CMS since day one has stated mixing and matching is not allowed. Bernal was playing God.

From: Esperanza C. Anderson <esperanza@andersonlitigation.com>
Sent: Friday, April 19, 2019 10:36 AM
To: franksc@startmail.com
Subject: Volume 3 of Excerpts of Record

1

*1*

Law Office of Esperanza C. Anderson | 1037 N. Allen Avenue | Pasadena, CA 91104 | Tel.: (626) 219-6773 | Fax: (626) 389-8911 | Cell: (626) 497-1321

The information contained in this e-mail (including attachments) is only for the personal and confidential use of the sender and recipient named above. If the reader is not the intended recipient, you have received this message in error. Please notify the sender immediately by e-mail and delete or destroy the original message and all copies.

2

# EXHIBIT 7

Email from Ms Anderson explaining her Kaiser case and the amount of work she is doing.

**Frank Adomitis**

From:         Esperanza Anderson <esperanza@esperanzaanderson.com>
Sent:         Tuesday, March 10, 2020 9:35 AM
To:           Frank Adomitis
Subject:      Re: Lunch Tomorrow and I Love This Case

You decide. I have been eating terribly with the stress of preparing for the Kaiser trial. So perhaps someplace where I can get a good salad with good protein – like grilled chicken or steak.

Yep, I love Godecke. I cited to it. Clinton then wrote that "sur-reply" where he claimed that Godecke did not support us. But then the Court of Appeal struck back allowing me more words. And I nailed him again.

PS he filed something letting the Court know about Liberty. Its totally not allowed for him to keep doing this. It was last week. Should I file something short pointing out that his argument that you are filing numerous merit-less lawsuits is his invitation once again to have the Court accept his unsupported factual allegations as true (1. He cites absolutely no evidence for the proposition that the lawsuit is meritless or that the CAH in Liberty complies) and asking the Court to draw negative inferences against you based on those unsupported factual allegations.

Or should I let it lie?

Ask Paul. I'll forward you the link so that you can send on to him.

E S P E R A N Z A / A N D E R S O N

1037 N Allen Avenue
Pasadena, California 91104
T (626) 219-6773
F (626) 389-9911
C (626) 497-1321

The information contained in this e-mail (including attachments) is only for the personal and confidential use of the sender and recipient named above. If the reader is not the intended recipient, you have received this message in error. Please notify the sender immediately by e-mail and delete or destroy the original message and all copies.

1

From:: Frank Adomitis <franksc@startmail.com>
Date: Tuesday, March 10, 2020 at 6:20 AM
To: Esperanza Anderson <esperanza@esperanzaanderson.com>
Subject: Lunch Tomorrow and I Love This Case
Resent-From: Proofpoint Essentials <do-not-reply@proofpointessentials.com>
Resent-To: <esperanza@esperanzaanderson.com>
Resent-Date: Tuesday, March 10, 2020 at 6:16 AM

I love this case.  I cites the Rose case, ByBee was one of the judges, and makes clear what is scienter.  The TAC doesn't need to be modified.  The facts alleged, if taken as true, are sufficient to move forward with the case.  Yes you could have included the 2002 concept report but without a letter there is no proof any part of the road is mountainous terrain.  Our assertion that there is none is all that is needed.  You could have put in the actual application, but you explained clearly what was on the application.

Bernal turned the phase into a judge Judy, cheesy small claims case.  As for lunch, what type of food do you want, e.g. Italian?   Let me know and I will find a place today.  And I just may cross the line tomorrow.

2

# EXHIBIT 8

Email from Ms Anderson explaining her Kaiser case and the amount of work she is doing.

**Frank Adomitis**

From:       Esperanza Anderson <esperanza@esperanzaanderson.com>
Sent:       Saturday, March 21, 2020 7:31 AM
To:         franksc@startmail.com
Subject:    A moment to be grateful.

My Kaiser opposing counsel are crazy and aggressive. They go out of their way to be unreasonable and unaccommodating. Its the Kaiser playbook - make litigation so damn hard that people will think twice about suing them. I asked for a trial continuance in early Feb to ease at least some of the burden and expense of being forced to take all remaining depos in Feb. And also the burden of completing all other trial docs. They VIGOROUSLY opposed it and kept the March trial date.

NOW, I'm grateful because given their unreasonableness, I was FORCED to work like a dog from Jan 3 through March 5. I was FORCED to get everything done before our March 6 final status conference for the March 9 trial.

SO, now that we have an emergency - I am all set. I am reading nightmare stories from other plaintiffs' firms about being unable to serve documents, or being unable to take a deposition in person given the lockdown and these firms being terrified because the deadlines haven't been moved. Will they get relief because they can't oppose a motion because they couldn't take a deposition? I am So happy that I have none of that to worry about. All my work is done. Nothing for me to do but prepare for the trial which I would have done at home anyway. I am so grateful that I dodged the billion bullets from all the games Kaiser would have been able to fire my way had the pretrial discovery and trial filings not been TOTALLY finished.

Also, I am grateful that they were insistent that I agree to electronic service back in Feb. I note, they initially refused to accept electronic service of documents thinking that it would drive up my costs. But, when they realized that I don't mind driving the 10 minutes through beautiful San Marino to get to their office, they asked the Court to order electronic service of documents. Now, I don't have to deal with any shenanigans to the extent they've closed their offices to the outside.

AND, I am grateful the Ninth Circuit ordered the oral argument for Feb. 14. Believe me, I would have given anything to have it postponed until April or May because of my Kaiser case. But thank God!!! That I didn't get what I want.

AND lastly, I am super grateful that I have a FULLY-FUNCTIONING home office and that I also work alone in my little office. I am seeing zero disruption to my ability to work - other than the fact that I now have to police my daughter's home-schooling and also keep on eye on my mom because I asked her caregiver to stay home.

1

In sum - all is good in Espie's world!!!

Get Outlook for iOS

2

# EXHIBIT 9

Email from Ms Anderson sent January 28, 2021 asking to go to lunch

**Frank Adomitis**

From:       Esperanza Anderson <esperanza@esperanzaanderson.com>
Sent:       Thursday, January 28, 2021 9:13 PM
To:         franksc@startmail.com
Subject:    We're fine

Frank -

We're fine but there is nothing to do in California.

Bernal dismissed. He said it was not material. We appealed. The 9th Circuit affirmed solely on scienter and didn't touch materiality.

What I've always told you is that California is not friendly. Move forward in other states that are likely to give better rulings, especially as the world opens up from Covid.

Then, come back to California and stir things up with Ojai cause right now, Ojai is stayed. Its on ice. Bernal has forgotten about it. So have the attorneys for Ojai. Let it remain on ice while things move forward in the other states.

What we always discussed is that when Bernal remembers and the stay is lifted, he is likely to do what he did in Mountains. Then we'd be back before the 9th Circuit. We don't want them to issue a ruling that perhaps may be negative re materiality.

Again, what I've always said is that whichever State speaks first in a final way (which Mountains was not because of the weird landscape) is the State that is going to lead on materiality.

Nothing has changed on my end in California. I'm wondering why you suddenly became concerned.

I'm easy. Buy me lunch and we're so good. : )

Get Outlook for iOS

1

# EXHIBIT 10

Email from Ms Anderson sent January 29, 2021 communicating she is abandoning the case

**Frank Adomitis**

From:      Esperanza Anderson <esperanza@esperanzaanderson.com>
Sent:      Friday, January 29, 2021 1:08 PM
To:        Frank Adomitis
Subject:   Find Another Attorney

Frank – seriously? What you are telling me is that I have to be a cheerleader the entire time regardless of how the courts are ruling. I can't see how they're ruling and work that into my strategy. You can't argue with the judge so you are always arguing with me. What do you want me to say? You are putting me in the judge's positions and arguing with me about why you think they were wrong. What am I supposed to do with that? Re-write their opinions.

It's unacceptable to get an email like this after the years of working on this case for free and all the briefs I have written. I have to withdraw. Find another attorney. You said you were thinking about it for a long time. You have one month. If I do not receive any substitution papers, I'm going to move to withdraw.

You need your QB to be on your side? I need my client to be on mine. More importantly, I need to stop being put in a position where I am answering for a judge's opinion on materiality.

Espie

E S P E R A N Z A / A N D E R S O N

1037 N Allen Avenue
Pasadena, California 91104
T (626) 219-6773
F (626) 389-8911
C (626) 788-7627

The information contained in this e-mail (including attachments) is only for the personal and confidential use of the sender and recipient named above. If the reader is not the intended recipient, you have received this message in error. Please notify the sender immediately by e-mail and delete or destroy the original message and all copies.

**From:** Frank Adomitis <franksc@startmail.com>
**Date:** Friday, January 29, 2021 at 6:58 AM
**To:** Esperanza Anderson <esperanza@esperanzaanderson.com>
**Subject:** RE: We're fine

1

My concern: I want to win and I want you to think we can.  You need to make some money out of this.  That rat bastard Clinton is the only one that has made any money.  Mountains was so unique, i.e. combination of mountainous terrain and primary road, no letter from DOT, and the crazy claim they didn't know is was not mountainous terrain.  There is no way that case is a model for other cases.  Mendenhall didn't thinks so and another attorney I trying to take a case in Colorado didn't think so *The Law Firm of Michael S. Porter, LLC | False Claim Act Law Firm (michaelsporterlaw.com)).  Both are aware of the 9th circuit ruling and all the machinations of Mountains.

The standard for materiality is whether the government would pay if they knew of the violation.  It is not whether they are actively looking for fraud.  The never do.  Bernal said there was not a single case where the government tried to decertify a CAH due to the distance violation.  We now two, Curry and the other hospital.  These are hard to find because decertification is not publicized.  Finally, I did a FOIA request for Ojai asking for all the survey documents for Ojai.  Lets see what was done about the distance requirement given now it is to be verified each survey.  Bernal has initially ruled that there is scienter.  I should get the documents soon.

The benefit of Mountains is that no other case where mountainous terrain is the issue will be taken.  The defense will always be "we are to stupid to know the road was not mountainous terrain."

Think about it this way.  If Tom Brady tells the coach he doesn't think he can win next Sunday against KC, I doubt  the coach is going to let him play.  Because if he loses Tom will then tell the coach he was warned.  You are my QB (LOL!).

The case in Texas could be unsealed by early March.  The US attorney in the case in Texas that was dropped said they had checked with CMS.  The only reason the government didn't take the case is the road had a gate!  Paul would not have filed the second case if the US attorney told him CMS doesn't care.


From: Esperanza Anderson <esperanza@esperanzaanderson.com>
Sent: Thursday, January 28, 2021 9:13 PM
To: franksc@startmail.com
Subject: We're fine

Frank -

We're fine but there is nothing to do in California.

Bernal dismissed. He said it was not material. We appealed. The 9th Circuit affirmed solely on scienter and didn't touch materiality.

What I've always told you is that California is not friendly. Move forward in other states that are likely to give better rulings, especially as the world opens up from Covid.

2

Then, come back to California and stir things up with Ojai cause right now, Ojai is stayed. Its on ice. Bernal has forgotten about it. So have the attorneys for Ojai. Let it remain on ice while things move forward in the other states.

What we always discussed is that when Bernal remembers and the stay is lifted, he is likely to do what he did in Mountains. Then we'd be back before the 9th Circuit. We don't want them to issue a ruling that perhaps may be negative re materiality.

Again, what I've always said is that whichever State speaks first in a final way (which Mountains was not because of the weird landscape) is the State that is going to lead on materiality.

Nothing has changed on my end in California. I'm wondering why you suddenly became concerned.

I'm easy. Buy me lunch and we're so good. : )

Get Outlook for iOS

3

# EXHIBIT 11

Email from Ms Anderson claiming Frank Adomitis breached the retainer agreement.

**Frank Adomitis**

From:         Esperanza Anderson <esperanza@esperanzaanderson.com>
Sent:         Thursday, March 18, 2021 4:37 PM
To:           Frank Adomitis
Subject:      Re: Abandoning the Ojai Case

Where are you moving to? Part of our agreement is that you keep me apprised of your location.

A motion to withdraw does not require your agreement. That's why it's a motion.

Thanks,

Espie

1037 N Allen Avenue
Pasadena, California 91104
T (626) 219-6773
F (626) 389-8911
C (626) 788-7627

The information contained in this e-mail (including attachments) is only for the personal and confidential use of the sender and recipient named above. If the reader is not the intended recipient, you have received this message in error. Please notify the sender immediately by e-mail and delete or destroy the original message and all copies.

On 3/18/21, 4:35 PM, "Frank Adomitis" <franksc@startmail.com> wrote:

I don't agree to you abandoning the case. I am under no obligation to do anything. I have not breached our agreement. This is between you and Bernal. As of 1/28 you were fine. I have the email. On 1/29 you got mad and are now trying to abandoned the case. This is the second time. What am I missing?

If Lou would not take the case no one will. He helped write it. You have stated repeatly Bernal is going to dismiss the case due to materiality. Be honest. That is what you think. I have the emails!

I am moving and have no time to deal with this.

1

Frank Adomitis
-------------------------
sent with R2Mail2

----- Original Message -----
From: Esperanza Anderson <esperanza@esperanzaanderson.com>
Sent: 3/18/21 - 3:29 PM
To: Frank Adomitis <franks:@startmail.com>
Subject: Re: Abandoning the Ojai Case

> Frank,
>
> Your email is troubling in that it completely misrepresents the background of the cases. It crystalizes why I have to withdraw. I will not rehash the entire history of the cases. I will simply remind you that on January 28, you told me to find you a different attorney. You said it was something you had been thinking about for a while – showing that the email was not sent in haste. I attach your email again.
>
> After you sent this email, you called me repeatedly causing me to think that you were apologizing for the email or letting me know that it was a joke. I accepted what I thought was the apology and I repeated the procedural and substantive stance with the Ojai case.
>
> On January 29, you explained how a coach will not play a quarterback that doesn't believe he can win. In other words, you had not apologized. Instead, you want me to change my tune. You want me to pretend all the dismissals and appeal haven't happened, that CMS in California hasn't said they think the violations are not material, and to give you the advice you want to hear even if the advice is not supported by facts, law or common sense. You want me to zealously advance positions that I think are legally or procedurally unsupported based on alleged comments made by attorneys in other states. That is a violation of our agreement.
>
> It is not my responsibility or duty to find you an attorney. It is not my responsibility or duty to oppose my own motion. You clearly disagree with my legal analysis sufficient to tell me you wanted me off the case. See your January 28 email again.
>
> The Ojai case is still intact. My removal will leave you with the freedom to go in the direction you want. There are thousands of lawyers in California. Warner Mendenhall or Paul Creech or the other attorney in Colorado that you mention when you disagree with my analysis are all capable of appearing here if they get one attorney to sponsor their pro hac vice application. Perhaps a call to them will help resolve the situation.
>
> Since you sent this email (Feb. 12) I have become aware that you reached out to other lawyers. I decided to give you time to substitute another attorney. Since you have not done so, I must move forward. I will be filing my motion in the next week. It will be filed with more than two months' notice to give you time to address it. Because of Covid, the hearing will be telephonic. Per the Court's website, the clerk of court will call all interested persons the day before with the call-in number. All of this information will be in the notice of motion.
>

2

2

> If anything changes before next Wednesday, please let me know.
>
> Thanks,
>
> Espie
>
>
>
>
>
> [signature_892907066]
>
> 1037 N Allen Avenue
> Pasadena, California 91104
> T (626) 219-6773
> F (626) 389-8911
> C (626) 788-7627
>
> The information contained in this e-mail (including attachments) is only for the personal and confidential use of the sender and recipient named above. If the reader is not the intended recipient, you have received this message in error. Please notify the sender immediately by e-mail and delete or destroy the original message and all copies.
>
> From: Frank Adomitis <franksc@startmail.com>
> Date: Friday, February 12, 2021 at 5:16 AM
> To: Esperanza Anderson <esperanza@esperanzaanderson.com>
> Subject: Abandoning the Ojai Case
>
> Hi Espy,
>
> As I understand this is our status of the Ojai case:
>
>
> 1.  As of 1/29/2021 you decided you wanted to abandon the Ojai case. Up until 1/28/2021 we had a very good and productive approximately four year relationship. I don't know the reasons for your abandonment.  I have not violated our agreement, I owe you no money,  and you understand this abandonment will put me in jeopardy, which is a violation of our agreement.
> 2.  I have informed you many times since then I don't want you to abandon the case and I don't want to dismiss the Ojai case.

3



3

> 3.  I have informed you I cannot find another attorney, but given that you want to abandon the case you are responsible for finding me another attorney. You wanted to abandon the case before, I think in 2018, and you referred me to your then friend Lou Dorny who then worked for Gordon and Rees.  As you know he didn't take the case.  You also know he assisted you in preparing the documents for Ojai.

> 4.  You know that finding an attorney to take a case given the government has declined to intervene is next to, if not, impossible.

> 5.  You have informed me you will file a motion to ask Judge Bernal for permission to abandon the case.   The motion will be heard on 3/29/2021 in Riverside.  I have received no official notice of this hearing.

> 6.  I will respond to your motion and attend the hearing.  I don't know how to do this and I need your assistance.  I want to let Judge Bernal resolve the matter.   Your abandonment cannot harm my interests in the case or put me in any form of jeopardy.

>

> Thank You.

>

> Frank Adomitis

>

>

4